UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   14 CV 927
TREVOR MURRAY,

                Plaintiff,

        - against -                           **COMPLAINT**

UBS SECURITIES, LLC and UBS AG,       **JURY DEMANDED**

                Defendants.
-------------------------------------------------------------------X

        Plaintiff Trevor Murray ("Plaintiff"), by his attorneys, Broach & Stulberg, LLP, respectfully alleges as follows:

## NATURE OF THE ACTION

        1.      Plaintiff is a former Senior CMBS (Commercial Mortgage-Backed Security) Strategist at Defendant UBS Securities LLC ("UBS Securities"). As set forth below, Plaintiff submits this Complaint because Defendants illegally retaliated against Plaintiff for exercising his legally-protected rights to inform his supervisors about, and refuse to participate in, conduct that he reasonably believed violated (a) laws and rules designed to protect consumers from fraudulent practices in connection with the sale of securities, and (b) laws, rules, orders, standards, or prohibitions subject to the jurisdiction of, or enforceable by the United States Consumer Financial Protection Bureau.

        2.      As a Senior CMBS Strategist for UBS Securities, Plaintiff was responsible for performing research and creating reports about CMBS products that were distributed to Defendants' current and potential clients, and in which UBS Securities held trading positions. Plaintiff was the target of a concerted effort by members of UBS Securities involved in CMBS trading and commercial mortgage origination to skew his research to appear more favorable to

UBS Securities' CMBS products and trading positions. Plaintiff refused to produce any report that was inconsistent with his own research, and, on several occasions, complained to his supervisors at UBS Securities that he was being pressured to produce misleading reports. Defendants did not take any corrective action in response to his complaints, but instead, approximately one month after his most recent complaint, terminated his employment. Plaintiff seeks all appropriate relief stemming from Defendants' retaliatory termination of his employment.

## APPLICABLE LAW

3.  Plaintiff submits this Complaint pursuant to 18 U.S.C. § 1514A (a), which states:

No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o (d)) including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company, or nationally recognized statistical rating organization (as defined in section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c), [1] or any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—

> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—
>
>> (A) a Federal regulatory or law enforcement agency;
>>
>> (B) any Member of Congress or any committee of Congress; or
>>
>> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or
>
> (2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer)

relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

4. Plaintiff also submits this Complaint pursuant to 12 USC § 5567(a), which states:

No covered person or service provider shall terminate or in any other way discriminate against, or cause to be terminated or discriminated against, any covered employee or any authorized representative of covered employees by reason of the fact that such employee or representative, whether at the initiative of the employee or in the ordinary course of the duties of the employee (or any person acting pursuant to a request of the employee), has—

> (1) provided, caused to be provided, or is about to provide or cause to be provided, information to the employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of this title or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau;
>
> (2) testified or will testify in any proceeding resulting from the administration or enforcement of any provision of this title or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau;
>
> (3) filed, instituted, or caused to be filed or instituted any proceeding under any Federal consumer financial law; or
>
> (4) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by, the Bureau.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court over Plaintiff's claims is invoked pursuant to 18 U.S.C. § 1514A(b)(1)(B), 12 U.S.C. § 5567(c)(4)(D), and 28 USC § 1331.

6. Venue is proper within this district, pursuant to 28 U.S.C. § 1391(b)(2), in that "a substantial part of the events or omissions giving rise to the claim occurred" in New York, New York.

## THE PARTIES

7. Plaintiff Trevor Murray is a former employee of UBS Securities. He worked for UBS Securities from approximately May 2007 to September 2009 and from approximately May 2011 to on or about February 6, 2012. Plaintiff worked for UBS Securities primarily at its offices located at 1285 Avenue of the Americas, New York, New York. One to one-half days per week, Plaintiff worked at UBS Securities' office in Stamford, Connecticut. He resides in Los Angeles, California.

8. Defendant UBS AG is a Switzerland corporation that conducts business in New York, New York. Upon information and belief, UBS AG is required to file reports with the United States Securities and Exchange Commission ("SEC") under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o (d)). Upon information and belief, UBS AG has a class of securities that must be registered pursuant to section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l).

9. Defendant UBS Securities is a Delaware corporation and a wholly owned subsidiary of UBS AG. UBS Securities maintains an office in New York, New York and conducts business in New York as a foreign limited liability company. UBS Securities is registered with SEC as a broker-dealer. Upon information and belief, UBS Securities has a class of securities that must be registered pursuant to section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l).

## STATEMENT OF FACTS

10. Plaintiff was originally employed by UBS Securities as a Director from approximately May 2007 to approximately September 2009 in the Mortgage Strategy Group and

then, beginning in late 2008, in the Special Assets Group ("StabFund"). In or around September 2009, Plaintiff was laid-off from UBS Securities.

11.     In or around October 2009, Plaintiff joined CapRok Capital LLC ("CapRok") as a Managing Director and Commercial Mortgage-Backed Security ("CMBS") strategist and trader.

12.     In or around early 2011, UBS Securities solicited Plaintiff to return. Senior employees of UBS Securities assured Plaintiff that that the company was fully committed to the CMBS business, and that Plaintiff would be an integral member of that business as it grew in the coming years. In particular, persons recruiting Plaintiff to return to UBS Securities pointed to the concurrent hiring of Ken Cohen, formerly of Lehman Brothers, and most of his former team to run UBS Securities' CMBS trading desk and commercial mortgage originations.

13.     On or about April 26, 2011, Plaintiff received a formal offer letter from UBS Securities. In or around May, 2011, Plaintiff resigned his position at CapRok and re-joined UBS Securities as a Senior CMBS Strategist and Executive Director (a position more senior than his previous position with UBS). Plaintiff's starting base salary was $250,000. He was repeatedly advised in advance by agents of UBS Securities that his incentive compensation would very likely range from approximately three-quarters of his base salary in difficult years to twice his base salary in strong, profitable years. Plaintiff was to receive benefits commensurate with those normally provided to an employee of his senior status.

14.     In his new position at UBS Securities, Plaintiff was responsible for performing research and creating reports about UBS Securities' CMBS products that were distributed to UBS's current and potential clients. After re-joining UBS Securities, Plaintiff received nothing but positive reviews, and was never reprimanded, officially or unofficially, for any disciplinary or job-related issue whatsoever.

15. Plaintiff was, however, the target of a concerted, extended effort by UBS Securities, through Mr. Cohen, as well as others reporting to Mr. Cohen, to influence Plaintiff to skew his published research in ways designed to support UBS Securities' ongoing CMBS trading and loan origination activities.

16. In June 2011 Mr. Cohen implored Plaintiff, in words or effect, to help "improve conditions in the CMBS market" because this was to be a "significant revenue generator" for the investment bank at UBS Securities. In or around September 2011, Mr. Cohen, along with the head CMBS trader, sat directly next to Plaintiff and told him that a person from the market had approached Mr. Cohen about Plaintiff's research. Mr. Cohen stated that he disagreed with Plaintiff's research, and asked Plaintiff, so as not to "confuse" the market, to inform the head CMBS trader about his research ideas prior to publication in order to maintain "consistency" between what he and they were saying about UBS Securities' CMBS products and trading positions.

17. On one occasion after the meeting in or around September 2011, Plaintiff spoke with David McNamara, the head CMBS trader, and Jamarr Delaney, another CMBS trader, about his view that certain CMBS bonds were overvalued. Mr. Delaney and Mr. McNamara told him not to publish anything negative about those bonds because the trading desk had just purchased them. In or around December 2011, after Plaintiff published his 2012 CMBS outlook article, Mr. Cohen stopped Plaintiff in the hallway and admonished him for publishing an article that Mr. Cohen found "too bearish."

18. In or around January 2012, Mr. Cohen told Plaintiff that UBS Securities would be coming to market likely sometime in the first half of 2012 with an asset securitization for a loan on a Miami hotel. Plaintiff expressed concern about the outlook in the hotel sector, but Mr.

Cohen directed him not to publish anything negative about the hotel sector because of UBS Securities' exposure. Despite the pressure placed on Plaintiff to skew his research to be more favorable to UBS Securities, he did not publish any report that was inconsistent with his own research.

19.   In or around January 2012, Plaintiff learned from junior members of the CMBS trading desk that Mr. Cohen and his team had arranged a long series of important client meetings in connection with a high-profile commercial mortgage conference in Miami. Even though Plaintiff was the lead CMBS strategist for UBS Securities and the author of UBS Securities' research for precisely such clients, he was neither invited to these meetings nor informed about them in advance. Instead, Plaintiff attended unannounced. At those meetings, Plaintiff heard Mr. Cohen relate to those current and prospective clients assessments about the commercial mortgage and CMBS market that Mr. Cohen knew to be inconsistent with Plaintiff's assessments, and in a manner that portrayed Mr. Cohen's assessments as if they were those of the firm as a whole.

20.   Plaintiff repeatedly told his superiors at UBS Securities about these egregiously improper attempts to influence his published research. In or around December 2011 and in or around January 2012, Plaintiff told his manager, Mike Schumacher, about Mr. Cohen's and his team's negative response to his research, including his comment that Plaintiff's published articles were "too bearish" and "off message" with the strategy of the trading desk and overall commercial mortgage group. In or around January 2012, Plaintiff told Jeff Ho, a Managing Director at UBS Securities, that Mr. Cohen only interacted with Plaintiff to criticize his research and attempt to manipulate his reports. In his meetings with Mr. Schumacher and Mr. Ho, Plaintiff gave examples about how Mr. Cohen and members of his team had excluded him from

meetings, and pressured him to skew his research, but Mr. Schumacher and Mr. Ho did not respond. At no point did anyone at UBS Securities take any action to stop the interference with Plaintiff's research.

21. When Plaintiff made each of the complaints referenced in paragraph 18 above, he reasonably believed that he was being pressured to produce ostensibly objective research reports about its securities products that were, by commission or omission, false or misleading, and intended to favor UBS Securities' products and trading positions, in violation of federal laws relating to fraud against shareholders, including, but not limited to, SEC Rule 10b-5 (17 C.F.R. § 240.10b-5).

22. In or around January 2012, Plaintiff received yet another spotless review. At that review, Plaintiff expressed concern that he had been given limited technical and staff resources to perform his research. Mr. Schumacher responded that he was aware of those limitations, and stated, in words or effect, that Plaintiff should write "what the business line wanted" irrespective of the resources available.

23. Shortly after his review, Plaintiff asked Mr. Cohen to share the cost of a new data feed from Mr. Cohen's departmental budget. Mr. Cohen responded that he would agree to share that cost, so long as various members of the trading desk and loan originations also had access to the new service so as to "stay on message."

24. On February 6, 2012, Plaintiff was advised by Mike Schumacher and UBS Securities human resources staff that, despite his impeccable record, his employment was being terminated. He learned shortly thereafter that his immediate superiors had appealed to Mr. Cohen personally and to members of his team to retain Plaintiff, given his importance to the business and his stellar record. According to Mr. Schumacher, Mr. Cohen refused that appeal.

## AS AND FOR A FIRST CAUSE OF ACTION

25.     Plaintiff repeats and realleges the allegations in paragraphs 1 to 24 as if fully set forth herein.

26.     Defendants have violated Section 806 of the Sarbanes Oxley Act of 2002 ("Sarbanes Oxley Act") (18 U.S.C. § 1514A) because their decision to terminate Plaintiff's employment was motivated, in part, by his providing information to his supervisors about conduct that he reasonably believed violated federal laws designed to protect shareholders.

27.     Defendant UBS AG is covered by the Sarbanes Oxley Act because, upon information and belief, it (a) has "a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l)"; and (b) it "is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o (d))" 18 U.S.C. § 1514A (a).

28.     Defendant UBS Securities is covered by the Sarbanes Oxley Act because, upon information and belief it has "a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l)." 18 U.S.C. § 1514A (a). Defendant UBS Securities is also covered by the Sarbanes Oxley Act because it is an affiliate of UBS AG, which is covered by 18 U.S.C. § 1514A, for the reasons set forth in paragraph 25 above.

29.     Plaintiff engaged in activity that is protected by 18 U.S.C. § 1514A when he informed his supervisors at UBS Securities about conduct that he reasonably believed violated "provision[s] of Federal law relating to fraud against shareholders," including, but not limited to, SEC Rule 10b-5 (17 C.F.R. § 240.10b-5), which prohibits UBS Securities from making false statements or engaging in deceptive practices in connection with the sale of securities. 18 U.S.C. § 1514A (a)(1)(C).

30.     Approximately two months after Plaintiff informed his supervisors about this conduct, UBS Securities terminated his employment. Defendants have violated 18 U.S.C. § 1514A because Plaintiff's protected activity was a contributing factor in their decision to terminate his employment.

31.     On August 2, 2012, Plaintiff submitted a Complaint to the United States Department of Labor ("USDOL"), alleging that Defendants' termination of Plaintiff's employment violated 18 U.S.C. § 1514A. USDOL has not issued a final decision as to that claim within 180 days of the filing of the Complaint, and Plaintiff submits the instant Complaint pursuant to 18 U.S.C. § 1514A(b)(1)(B).

## AS AND FOR A SECOND CAUSE OF ACTION

32.     Plaintiff repeats and realleges the allegations in paragraphs 1 to 31 as if fully set forth herein.

33.     Plaintiff is a "covered employee" within the meaning of 12 U.S.C. § 5567(b) because when he was employed by Defendants he was an "individual performing tasks related to the offering or provision of a consumer financial product or service."

34.     Defendants have violated 12 U.S.C. § 5567 because their decision to terminate Plaintiff's employment was motivated, in part, by his objection to, and refusal to participate in, an "activity, policy, practice, or assigned task that [he] reasonably believed to be in violation of any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by" the United States Consumer Financial Protection Bureau, which is authorized to enforce "Federal consumer financial law for the purposes of ensuring that, with respect to consumer financial products and services . . . consumers are protected from unfair, deceptive, or abusive acts and practice." 12 U.S.C §§ 5511(b)(2), 5567(a).

35. On August 2, 2012, Plaintiff submitted a Complaint to USDOL, alleging that Defendants' termination of Plaintiff's employment violated 12 U.S.C. § 5567. USDOL has not issued a final order as to Plaintiff's claims under 12 U.S.C. § 5567 within 210 days of the filing of the Complaint, and Plaintiff submits the instant Complaint, pursuant to 12 U.S.C. § 5567(c)(4)(D)(i).

**WHEREFORE** Plaintiff seeks judgment against Defendants:

A. Awarding Plaintiff "all relief necessary to make [him] whole" (18 U.S.C. § 1514A(c)(1); 12 U.S.C. § 5567(c)(4)(D)(ii)), including, but not limited to:

1. Reinstating Plaintiff to his position at UBS Securities with the same seniority status that he would have had but for the discrimination and retaliation (18 U.S.C. § 1514A(c)(2)(A); 12 U.S.C. § 5567(c)(4)(D)(ii)(I));

2. Awarding Plaintiff back pay, with interest (18 U.S.C. § 1514A(c)(2)(B); 12 U.S.C. § 5567(c)(4)(B)(i)(II));

4. Compensating Plaintiff for all special damages sustained as a result of the discharge, discrimination and retaliation, including litigation costs, expert witness fees, and reasonable attorney fees (18 U.S.C. § 1514A(c)(2)(B); 12 U.S.C. § 5567(c)(4)(D)(ii)(III));

3. Awarding Plaintiff compensatory damages stemming from Defendants' unlawful conduct (18 U.S.C. § 1514A(c)(2); 12 U.S.C. § 5567(c)(4)(D)(ii));and

   B. Granting such other and further relief as deemed appropriate.

Dated: February 12, 2014
   New York, New York

            Respectfully submitted,

            BROACH & STULBERG, LLP

            By: _____
              Robert B. Stulberg
            Counsel for Plaintiff
            One Penn Plaza, Suite 2016
            New York, New York 10119
            (212) 268-1000