UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\--------------------------------------------------------x
                                                    :
TREVOR MURRAY,                                      :
                                                    :
                          Plaintiff,                :
                                                    :
          -against-                                 :          Civil Action No. 14 Civ. 0927 (KPF)
                                                    :
UBS SECURITIES, LLC and UBS AG,                     :
                                                    :
                          Defendants.               :
                                                    :
\--------------------------------------------------------x


# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS
## <u>OR, IN THE ALTERNATIVE, TO STAY</u>

Eugene Scalia (*Admitted Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

Gabrielle Levin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 48th Floor
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Defendants*

June 16, 2014

## TABLE OF CONTENTS

Page No.

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 1

ARGUMENT .............................................................................................................. 3

I.     THIS ACTION SHOULD BE DISMISSED AS DUPLICATIVE ..................... 3

II.    IN THE ALTERNATIVE, THE PRESENT LITIGATION SHOULD BE STAYED
       PENDING ARBITRATION .............................................................................. 5

III.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE
       CONSUMER FINANCIAL PROTECTION ACT ("CFPA")............................. 9

       A.    The Amended Complaint Fails To Allege That Plaintiff And UBS Are
             Covered By The CFPA ........................................................................... 10

       B.    The Amended Complaint Fails To Plausibly Allege That Plaintiff "Reasonably
             Believed" That His Research Reports Violated A Law Subject To The
             Jurisdiction Of The Bureau of Consumer Financial Protection.................... 15

CONCLUSION.......................................................................................................... 16

## **TABLE OF AUTHORITIES**

Page No.

**Cases**

*Am. Stock Exch., LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002) ............................................................................ 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 9

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976) ............................................................................................... 3

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012) ............................................................................................. 8

*Curtis v. Citibank, N.A.*,
    226 F.3d 133 (2d Cir. 2000) ............................................................................ 3, 4

*DiGennaro v. Whitehair*,
    467 F. App'x 42 (2d Cir. 2012) ............................................................................ 5

*DirecTV, Inc. v. Huynh*,
    503 F.3d 847 (9th Cir. 2007) .............................................................................. 13

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987) ................................................................................. 8

*Gonino v. UNICARE Life & Health Ins. Co.*,
    2005 WL 608158 (N.D. Tex. Mar. 16, 2005) ...................................................... 6

*Hamburg-American Line v. United States*,
    291 U.S. 420 (1934) ............................................................................................. 12

*Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*,
    2009 WL 2850230 (S.D.N.Y. Aug. 28, 2009) ................................................... 14

*Kothe v. AIMCO*,
    2009 WL 1788412 (D. Kan. June 23, 2009) ........................................................ 6

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................................................... 6

*Lexico Enters., Inc. v. Cumberland Farms, Inc.*,
    686 F. Supp. 2d 221 (E.D.N.Y. 2010) ................................................................. 5

*Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
    2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011) ..................................................... 7

*Murray v. UBS Sec., LLC*,
  2014 WL 285093 (S.D.N.Y. Jan. 27, 2014) ....................................................... 2, 5

*Murray v. UBS Sec., LLC*,
  No. 12 CV 5914 (S.D.N.Y. Aug. 2, 2012) ................................................... 1, 2, 6

*National Cable v. Telecommunications Ass'n v. Brand X Internet Services*,
  545 U.S. 967 (2005) ................................................................................................ 12

*Neal v. Asta Funding, Inc.*,
  2014 WL 131770 (D.N.J. Jan. 6, 2014) .............................................................. 8, 9

*United States v. Haytian Republic*,
  154 U.S. 118 (1894) .................................................................................................. 5

*Waldman v. Vill. of Kiryas Joel*,
  207 F.3d 105 (2d Cir. 2000) .................................................................................... 4

*Willey v. J.P Morgan Chase, N.A.*,
  2009 WL 1938987 (S.D.N.Y. July 7, 2009) ........................................................ 14

*Wu v. Pearson Educ., Inc.*,
  2010 WL 3791676 (S.D.N.Y. Sept. 29, 2010) ...................................................... 6

**Statutes**

12 U.S.C. § 5481(14) ................................................................................................ 17

12 U.S.C. § 5481(15)(A) ........................................................................................... 11

12 U.S.C. § 5481(15)(A)(viii) ............................................................................. 15, 16

12 U.S.C. § 5481(15)(A)(xi) ................................................................................ 12, 13

12 U.S.C. § 5481(26) ................................................................................................ 17

12 U.S.C. § 5481(5) ............................................................................................ 11, 16

12 U.S.C. § 5481(6) .................................................................................................. 17

12 U.S.C. § 5491(a) .................................................................................................. 14

12 U.S.C. § 5511(a) .................................................................................................. 14

12 U.S.C. § 5517(i)(1) .............................................................................................. 15

12 U.S.C. § 5531 ....................................................................................................... 18

12 U.S.C. § 5536(a)(1)(A) ........................................................................................ 17

12 U.S.C. § 5567 ................................................................................... 2, 11, 14, 15, 17

15 U.S.C. § 78u-6(h)(1) .............................................................................................. 2

18 U.S.C. § 1514A ...................................................................................................... 2

9 U.S.C. § 3 ............................................................................................................. 6, 9

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ................................................................................ 3, 9

FINRA Code of Arbitration Procedure for Industry Disputes,
    Rule 13302 ....................................................................................................... 6

JAMS Employment Arbitration Rules & Procedures,
    Rule 5 .............................................................................................................. 6

**Regulations**

17 C.F.R. §§ 229.1100 - 229.1123 .................................................................... 13

**Other Authorities**

Examination of the Proposals to Enhance the Regulation of Credit Rating Agencies: Hearing
    Before the S. Committee on Banking, Housing & Urban Affairs,
    111 Cong. 104 (2009) ..................................................................................... 13

Sen. Rep. 111-176 ............................................................................................. 13

## INTRODUCTION

Defendants UBS Securities LLC and UBS AG (collectively, "defendants" or "UBS") hereby move the Court to dismiss this action as duplicative or, in the alternative, to stay the action pending arbitration in the related case of *Murray v. UBS Securities, LLC*, No. 12 CV 5914 (KPF) (S.D.N.Y. Aug. 2, 2012).  At minimum, the Court should dismiss plaintiff's claim under the Consumer Financial Protection Act.

Plaintiff has elected to litigate his claims in a piecemeal fashion.  He proceeded first with his Dodd-Frank claim, despite his agreement to arbitrate that claim and despite the longer statute of limitations governing the claim.  He took a wait-and-see approach toward his Sarbanes-Oxley and Consumer Financial Protection Act claims, choosing not to join them with his prior action once the statutorily prescribed waiting period had run.  Then, after arbitration was ordered on the Dodd-Frank claim, plaintiff split his claims and filed his Sarbanes-Oxley and Consumer Financial Protection Act claims as an entirely new action, seeking to engage in piecemeal litigation of overlapping claims in a manner that directly conflicts with courts' established aversion to claim-splitting and duplicative litigation.  Having chosen to proceed in this fashion, plaintiff must face the consequences:  His Sarbanes-Oxley and Consumer Financial Protection Act claims should be dismissed, or stayed pending arbitration of his Dodd-Frank claims.

If the Court does not dismiss or stay this case in full, it should at minimum dismiss plaintiff's claim under the Consumer Financial Protection Act, because plaintiff has not (and cannot) properly allege that he and UBS are covered by that law.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was let go from UBS on February 6, 2012 in a reduction-in-force.  He claims he was fired for being a "whistleblower."

On August 2, 2012, plaintiff filed a complaint in this Court against UBS, alleging a single cause of action under the anti-retaliation provision of the Dodd-Frank Act of 2010 ("Dodd-Frank"), 15 U.S.C. § 78u-6(h)(1).  *Murray v. UBS Sec., LLC*, No. 12 CV 5914 (S.D.N.Y. Aug. 2, 2012).  Plaintiff simultaneously filed a separate and virtually identical complaint with the U.S. Department of Labor, asserting claims under the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A, and the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5567.  Am. Compl. ¶¶ 34, 41 [Dkt. No. 23].

Plaintiff originally represented that he would seek to amend his Dodd-Frank complaint to add his SOX and CFPA claims once the statutorily-prescribed waiting periods for those claims expired.  *See* No. 12 CV 5914 (KPF), Dkt. No. 1 at 1 n.1.  Plaintiff was entitled to remove his SOX case to federal court as of January 29, 2013, 18 U.S.C. § 1514A(b)(1)(B), and his CFPA case as of February 28, 2013, 12 U.S.C. § 5567(c)(4)(D)(i).  But instead, he chose to continue to prosecute his Dodd-Frank claim before this Court and his SOX and CFPA claims before the U.S. Department of Labor.

On January 27, 2014, this Court granted UBS's motion to compel arbitration of plaintiff's Dodd-Frank claim, and stayed all court proceedings in the action.  *Murray v. UBS Sec., LLC*, 2014 WL 285093 (S.D.N.Y. Jan. 27, 2014).  Two weeks later, on February 13, and virtually a full year after plaintiff first could have brought his SOX and CFPA claims to federal court, plaintiff filed this new federal court action asserting the SOX and CFPA claims.  [Dkt. No. 2].  He filed an Amended Complaint on April 18 [Dkt. No. 23], and on May 15 the Court held a pre-motion conference, at which defendants were granted leave to file this motion.  *See* Declaration of Gabrielle Levin, dated June 16, 2014 ("Levin Decl."), Ex. A (transcript of May 15, 2014 conference).

Plaintiff's Dodd-Frank, SOX, and CFPA claims all seek redress for plaintiff's separation of employment from UBS and are based on the *exact same* underlying factual allegations. Arbitration of plaintiff's Dodd-Frank claim and litigation of his SOX and CFPA claims would involve nearly complete duplication in documents produced, witness testimony, and other evidence.

## ARGUMENT

This entire action should be dismissed as duplicative of the prior action asserting the Dodd-Frank claim.  Plaintiff could have asserted his SOX and CFPA claims in the prior action— as he originally said he would—and the Second Circuit has instructed courts to dismiss duplicative suits that are based on impermissible "claim splitting."

In the alternative, the Court should stay this action pending arbitration of plaintiff's Dodd-Frank claim.  The Federal Arbitration Act ("FAA") requires a stay of litigation where, as here, it involves an issue that the parties agreed to arbitrate.  Moreover, this Court has inherent power to manage its docket by staying an action pending arbitration of duplicative, overlapping matters in view of the efficiencies to be gained and to avoid potentially inconsistent results.

Plaintiff's CFPA claim is separately dismissible pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Therefore, the Amended Complaint should be dismissed or, in the alternative, this action should be stayed pending arbitration of plaintiff's Dodd-Frank claim.  At minimum, the CFPA claim should be dismissed.

## I.   THIS ACTION SHOULD BE DISMISSED AS DUPLICATIVE

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S.

800, 817 (1976) (federal courts should undertake "to avoid duplicative litigation").  The power to dismiss a duplicative lawsuit is meant "to protect parties from the vexation of concurrent litigation over the same subject matter," the Second Circuit has explained.  *Curtis*, 226 F.3d at 138 (internal quotation marks omitted).

Dismissal of a duplicative suit is particularly appropriate where, as here, there is a possibility of inconsistent rulings.  *See Curtis*, 226 F.3d at 138 (dismissal is appropriate "[b]ecause of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending").  A duplicative lawsuit violates the "well-established" rule against claim splitting, which provides that "a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories," *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000), but rather "must bring in one action all legal theories arising out of the same transaction or series of transactions," *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (citing *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001)).

Plaintiff made a calculated decision to press his Dodd-Frank claim in court first, notwithstanding the fact that Dodd-Frank has a limitations period of as long as six years. Plaintiff could have added his SOX and CFPA claims to his Dodd-Frank suit as early as February 2013, as he concedes.  *See* Transcript, Levin Decl., Ex. A. at 15:13-18.  He failed to do so, and instead, virtually a year later, and only after being ordered to arbitrate the claims he had elected to press first, did he file a separate suit on his SOX and CFPA claims.  Dismissal is appropriate because "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  *Curtis*, 226 F.3d at 139.

To the extent plaintiff argues that this action should not be dismissed because his SOX claim is not "duplicative" of his Dodd-Frank claim, he is incorrect. Claims do not need to be "identical" to be dismissed as "duplicative." Rather, suits are duplicative when "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits." *Lexico Enters., Inc. v. Cumberland Farms, Inc.*, 686 F. Supp. 2d 221, 224 (E.D.N.Y. 2010) (citation omitted); *see also United States v. Haytian Republic*, 154 U.S. 118, 125 (1894) (The rule against claim-splitting requires that two causes of action must be joined in one suit if "the evidence necessary to prove one cause of action would establish the other"). The Second Circuit has affirmed dismissal of a second action as duplicative when it "would necessarily involve findings on the exact same facts required to resolve the claims in the first action." *DiGennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012).

Here, and as discussed in further detail in the next Section, the suits are based on *identical* factual allegations, will require the same witnesses and documentary evidence, and implicate numerous overlapping legal issues. They are clearly duplicative and this action should be dismissed.[1]

## II.  IN THE ALTERNATIVE, THE PRESENT LITIGATION SHOULD BE STAYED PENDING ARBITRATION

Alternatively, this case should be stayed pending arbitration. A stay is appropriate for two, independent reasons: *First*, a stay is required by Section 3 of the FAA, and *second*, the Court should issue a stay pursuant to its inherent power to control its docket.

---

[1] Plaintiff is incorrect to suggest that the Court cannot find this case duplicative because the Court previously concluded that SOX and Dodd-Frank are "separate pieces of federal legislation, each of which provides a party with distinct rights and responsibilities." *Murray*, 2014 WL 285093, at *8. As explained above, whether a second case is unacceptably duplicative turns principally on the factual overlap with the first-filed case; that is an entirely different question than whether the ban on pre-dispute arbitration agreements for SOX claims applies to claims under the Dodd-Frank Act.

The FAA requires a court to stay an action if the parties have agreed to arbitrate "any issue" underlying the action.  9 U.S.C. § 3.  The Court must stay this case on this basis alone, since the Court already has determined that some of the principal "issue[s]" here are subject to arbitration, including plaintiff's claims that he "blew the whistle" on purported misconduct and that this (not a reduction-in-force) was the reason his employment was ended.  It is irrelevant that no arbitration proceedings currently are underway.  *See Wu v. Pearson Educ., Inc.*, 2010 WL 3791676, at *4 (S.D.N.Y. Sept. 29, 2010) (rejecting the proposition that Section 3 of the FAA permits a stay only after arbitration proceedings have been initiated).[2]

In addition, under its inherent power to manage its docket, a court may stay a case pending a separate arbitration when the arbitration may determine issues involved in the case, and a stay is warranted to promote judicial economy and may avoid inconsistent results.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with

---

[2]  At the May 15 pre-motion conference, the Court inquired whether UBS could initiate arbitration proceedings for the Dodd-Frank claim.  Levin Decl., Ex. A at 2:9-13.  The parties' arbitration agreement places the burden for initiating and prosecuting a claim on Mr. Murray.  *See* No. 12 CV 5914 (KPF), Dkt. No. 29-2 at 2 ("To initiate arbitration, *you* must send a written request for arbitration . . . .") (emphasis added).  Moreover, both the Financial Industry Regulatory Authority ("FINRA") Code of Arbitration Procedure for Industry Disputes and JAMS Employment Arbitration Rules & Procedures provide for the claimant to initiate an arbitration by filing a statement of claim or demand for arbitration.  *See* FINRA Code of Arbitration Procedure for Industry Disputes, Rule 13302; JAMS Employment Arbitration Rules & Procedures, Rule 5.

Moreover, at the pre-motion conference, plaintiff declared that *he* intends to eventually commence arbitration proceedings.  Levin Decl., Ex. A. at 12:22.  His failure to do so yet is but another manifestation of the disjointed, duplicative, and costly manner in which he has elected to prosecute his dispute with UBS.  Ultimately, this Court has the discretion to dismiss the Dodd-Frank case for want of prosecution.  *See, e.g.*, *Kothe v. AIMCO*, 2009 WL 1788412, at *2-3 (D. Kan. June 23, 2009) (dismissing case for want of prosecution where no arbitration had been filed more than two years after court order compelling arbitration); *Gonino v. UNICARE Life & Health Ins. Co.*, 2005 WL 608158, at *2-3 (N.D. Tex. Mar. 16, 2005) (dismissing action where plaintiff had not initiated arbitration 19 months after court ordered arbitration and stayed the case).

6

economy of time and effort for itself, for counsel, and for litigants."). In *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011), for example, the court granted a stay pending arbitration even though the arbitration was not "controlling" of the court action. *Id.* at *5. There were sufficient grounds for a stay, the court said, given "the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Id.*

Here, there can be no doubt that a stay will avoid extensive duplication of discovery, briefing, and the presentation of evidence, and will avert potentially inconsistent rulings in the two cases. Plaintiff's claims are based on the *exact same* underlying factual allegations and would require nearly complete duplication in document production and witness testimony. Both the arbitration and this litigation will center on the reasons for plaintiff's separation, including the reduction-in-force ("RIF") UBS conducted, how personnel were selected for the RIF, why plaintiff was selected, and his position and role within UBS. This will require testimony from personnel in two and quite possibly three separate work groups at UBS: personnel in plaintiff's management chain who selected him for the RIF, personnel in a separate group whom he allegedly "blew the whistle" on, and (possibly) human resources personnel who helped implement the RIF. Both cases will also focus on plaintiff's allegations that three different UBS employees attempted "to influence [him] to skew his published research" so as to "support UBS Securities' ongoing CMBS trading and loan origination activities," and thereafter engaged in a pattern of conduct motivated by bias against plaintiff. Am. Compl. ¶ 17. Briefing in the two cases would overlap extensively, and the Dodd-Frank and SOX claims will require consideration of the same underlying issue: whether plaintiff "reasonably believed" he was being urged to produce research reports that were false or misleading in violation of SEC Rule 10b-5. *Id.* ¶ 23.

And to the extent there are differences between the two cases, the arbitration will, at the very least, narrow the issues and inform the analyses in this action, thus warranting a stay.

Plaintiff has suggested that because his SOX and CFPA claims are statutorily barred from being subject to a binding pre-dispute arbitration agreement, those claims cannot be stayed in favor of arbitration of his Dodd-Frank claim.  Plaintiff is mistaken.  As noted, Section 3 of the FAA *requires* this Court to stay all proceedings so that arbitration can proceed.  9 U.S.C. § 3; *see also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987) (Section 3 of the FAA is "mandatory" and staying litigation of non-arbitrable claims pending arbitration).  In any event, plaintiff chose to proceed first on the arbitrable Dodd-Frank claim—despite its longer statute of limitations—and sought litigation of his SOX and CFPA claims in federal court only after arbitration of the Dodd-Frank claim had been ordered.  Having pressed his arbitrable claim first and been ordered to arbitrate, plaintiff must now live with the consequences of the litigation strategy he chose.

Plaintiff also is mistaken in suggesting that staying this action while his Dodd-Frank claim is arbitrated would improperly "consign[]" his SOX and CFPA claims to arbitration.  Only plaintiff's Dodd-Frank claim would be arbitrated, not the other claims, and nothing in SOX or the CFPA overrides Section 3 of the FAA or courts' inherent powers to issue stays in deference to arbitration.  Had Congress intended to prohibit courts from staying SOX and CFPA claims pending arbitration of other claims, it could have done so.  It did not.  *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 672-73 (2012) (noting that where Congress "has restricted the use of arbitration . . . , it has done so with . . . clarity").  Indeed, another court recently ordered the relief defendants seek here in comparable circumstances, staying SOX and CFPA claims pending arbitration of arbitral claims.  *Neal v. Asta Funding, Inc.*, 2014 WL 131770 (D.N.J. Jan. 6, 2014).

Relying on both Section 3 of the FAA and courts' inherent power to stay proceedings pending arbitration, the court granted a stay because the issues "subject to being decided in arbitration are intertwined with the claims asserted" in the litigation "and may affect their resolution." 2014 WL 131770, at *4. As is the case here, a stay was appropriate in the interest of efficiency because the issues in arbitration were "related" (but not necessarily "strictly dispositive of") the issues before the court. *Id.*

*        *        *

Plaintiff has sought to litigate his dispute with UBS in a disjointed, piecemeal fashion that imposes unnecessary costs on the Court and litigants and conflicts with courts' aversion to duplicative litigation in any circumstances, most especially when elements of the parties' dispute are arbitrable. The parallel, largely duplicative proceedings plaintiff proposes are wasteful and untenable—this case should be either dismissed or stayed.

## III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE CONSUMER FINANCIAL PROTECTION ACT ("CFPA")

At minimum, the Court should dismiss plaintiff's CFPA claim pursuant to Rule 12(b)(6).

To survive a motion to dismiss, the Amended Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and must contain more than "conclusory statements" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). To state a claim under the CFPA, plaintiff must allege that he is a "covered employee," that UBS is a "covered person or service provider," and that it terminated him because he "objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any law, rule, order,

standard, or prohibition, subject to the jurisdiction of, or enforceable by, the Bureau [of

Consumer Financial Protection]."  12 U.S.C. § 5567(a).

As shown below, plaintiff's claim does not get out of the starting gate because he has not

(and cannot) allege that his work involved a product or service regulated by the Bureau of

Consumer Financial Protection (the "CFPB" or "Bureau").  Because he has failed to allege that

he dealt with a "covered product," he has failed to allege that he and UBS are covered by the

CFPA.  Finally, he has failed to allege that he "reasonably believed" there was a violation of a

law administered by the Bureau.

### A.    The Amended Complaint Fails To Allege That Plaintiff And UBS Are Covered By The CFPA

The CFPA prohibits "retaliation" against a "covered employee," which is defined as "any

individual performing tasks related to the offering or provision of a *consumer financial product*

*or service*."  12 U.S.C. § 5567(b) (emphasis added).  A "consumer financial product or service"

includes "any financial product or service that is described in one or more categories under [12

U.S.C. § 5481(15)(A)] and is offered or provided for use by consumers primarily for personal,

family, or household purposes."  12 U.S.C. § 5481(5).

12 U.S.C. § 5481(15)(A) defines ten specific types of consumer financial products or

services for purposes of the CFPA.  Plaintiff does not allege that the products he wrote reports

about for UBS—commercial mortgage-backed securities, or "CMBS"—fall within any of these

ten categories.  Instead, he admittedly and exclusively relies on a final, "catch-all" provision for

*additional* consumer financial products as so defined by the Bureau.  *See* 12 U.S.C.

§ 5481(15)(A)(xi); Am. Compl. ¶ 15.  In his pre-motion letter to the Court and during the May

15 conference before the Court, plaintiff made clear that this catch-all provision is the sole

asserted basis for CFPA coverage.  *See* Dkt. No. 28; Levin Decl., Ex. A at 22:14-17 (plaintiff's

counsel stating at pre-motion conference, "we allege that Mr. Murray is a covered employee under the law because he was engaged in reports about financial services or products which fit within that general catch-all definition").  *See also* the Court and parties' discussion of this contention at Levin Decl., Ex. A at 8:19-12:4, 21:3-25:8.

> The catch-all at 12 U.S.C. § 5481(15)(A)(xi) defines a "financial product or service" as:
>
> *such other financial product or service as may be defined by the Bureau, by regulation, for purposes of this title, **if** the Bureau finds* that such financial product or service is—
>
> (I) entered into or conducted as a subterfuge or with a purpose to evade any Federal consumer financial law; or
>
> (II) permissible for a bank or for a financial holding company to offer or to provide under any provision of a Federal law or regulation applicable to a bank or a financial holding company, and has, or likely will have, a material impact on consumers.

12 U.S.C. § 5481(15)(A)(xi) (emphasis added).

Thus, under the plain language of this provision, for CMBS to be a "financial product or service," there must be a Bureau "regulation" defining them as such, and the regulation must be accompanied by a Bureau "finding" that CMBS meet certain statutory criteria.

The Amended Complaint cites no such regulation, definition, or findings, and there are none.  That should be the end of plaintiff's CFPA claim.  But instead, plaintiff offers a novel reading under which *any* product or service falls within the catch-all if it conceivably *could* be defined as a consumer financial product by the Bureau.  Levin Decl., Ex. A. at 23:10-13 (plaintiff's counsel stating at pre-motion conference, "[w]e read this statute not to require that there be a regulation in place at the time the case is brought").  Under this reading, if the Bureau *could* define CMBS as a "financial product or service," then CMBS *are* a "financial product or service"—even if the Bureau never promulgates a rule or makes the required findings, and even if it does not intend to or even want to do so.

Plaintiff's interpretation conflicts with the plain language of the statute and would produce absurd results.  By its plain terms, the catch-all at 12 U.S.C. § 5481(15)(A)(xi) means that the Bureau "may" define additional consumer financial products or services "if" it issues a "regulation" with the appropriate "findings."  The Act uses the phrase "as may be defined" to indicate (as Congress has elsewhere) a delegation of authority to an agency to issue regulations. In *National Cable v. Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005), for example, the statute in issue authorized an agency "to prescribe such rules and regulations as *may* be necessary"; the Supreme Court recognized this as giving the agency "the authority to promulgate binding legal rules." *Id.* at 980-81 (emphasis added).  Similarly, in *Hamburg-American Line v. United States*, 291 U.S. 420 (1934), the Court found that a statutory exception for "such classes of cases and under such conditions as *may* be by regulations prescribed," did not apply to circumstances that did not fall within the regulations.  *Id.* at 423-24 (emphasis added).

The catch-all provision in the CFPA is not, as plaintiff would have it, a license for litigants and courts to imagine what findings the Bureau *might* make, and what regulations it *might* therefore issue, and on that basis to proceed as if the Bureau actually *had* defined some new consumer financial product or service.  This would be an entirely unadministrable and speculative application of the CFPA:  How can third parties divine what regulations the Bureau "might" adopt, or what findings it "might" make?  Plaintiff's approach would also nullify the central requirement of the catch-all, namely, that there *be* a Bureau regulation, and a finding that certain statutory requirements are satisfied.

Defendants' reading of the catch-all provision at 12 U.S.C. § 5481(15)(A)(xi) is confirmed by the text of the statute as a whole.  The definition of "financial product or service"

at issue here does not only apply to the anti-retaliation provision.  Rather, it serves a broad and general purpose throughout the entire CFPA, including defining the jurisdiction of the Bureau. *See, e.g.*, 12 U.S.C. §§ 5491(a), 5511(a).  Plaintiff's boundless definition of "financial product or service" would therefore cause confusion across a range of matters, including the authority of the Bureau to regulate certain products and the applicability of the consumer protection laws to certain products.

For this reason, plaintiff cannot dodge the problems with his statutory interpretation by arguing that it is sufficient for him to "reasonably believe" that something is a consumer financial product.  12 U.S.C. § 5567(a).  Rather, for plaintiff and UBS even to be covered by the CFPA, there must be a consumer financial product or service.  12 U.S.C. § 5567(b).  Plaintiff cannot invoke his purportedly "reasonable belief" to conjure statutory coverage where none exists.[3]

Finally, even if plaintiff's interpretation of the catch-all were correct, his Amended Complaint would fail to adequately allege statutory coverage because it suffers a fatal flaw under *Twombly/Iqbal*:  The allegations simply "parrot the language" of the statute and are therefore "not well-pleaded facts."  *DirecTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).  A side-by-side comparison illustrates the Amended Complaint's deficiencies:

---

[3]  The statute and legislative history indicate that the Bureau could not define CMBS as consumer financial products even if it chose to, because CMBS already are regulated by the SEC, *see* 17 C.F.R. §§ 229.1100 - 229.1123.  The CFPA's definitional section at 12 U.S.C. § 5481(15)(A) excludes "services relating to securities provided by a person regulated by the [Securities and Exchange] Commission" from the definition of a "financial product or service" under the Act.  12 U.S.C. § 5481(15)(A)(viii).  And a separate section of the CFPA states:  "The Bureau shall have no authority to exercise any power to enforce this title with respect to a person regulated by the Commission."  12 U.S.C. § 5517(i)(1).  *See also* the Senate Report to Dodd-Frank, which states that "persons regulated by the SEC are not covered by the Bureau."  Sen. Rep. 111-176, at 170; Examination of the Proposals to Enhance the Regulation of Credit Rating Agencies: Hearing Before the S. Committee on Banking, Housing & Urban Affairs, 111 Cong. 104 (2009).

| Allegation in Amended Complaint | Statutory Text |
|---|---|
| CMBS are "offered or provided to high net worth individuals primarily for personal or family purposes" (Am. Compl. ¶ 15) | Consumer financial product is one "offered or provided for use by consumers primarily for personal, family, or household purposes" 12 U.S.C. § 5481(5). |
| CMBS "had, or likely would have, a material impact on consumers" (Am. Compl. ¶ 15) | Product "has, or likely will have, a material impact on consumers" 12 U.S.C. § 5481(15)(A)(viii). |

There are *no* facts alleged in the Amended Complaint to substantiate these assertions or to establish that CMBS were in fact offered to high net worth individuals, or addressing whether CMBS were offered for "personal" or "family use" or how CMBS have a material impact on consumers or are likely to have a material impact.  Indeed, plaintiff's perfunctory allegations virtually confess that he *does not know* the facts of his case and what he is alleging:  UBS "offered *or* provided" CMBS, he says, parroting the statute without indicating *which* of those circumstances exist here.  These CMBS were primarily for "personal *or* family purposes," he alleges, again with no evident factual basis to believe it is one or the other.  CMBS had "or likely would have" a material impact on consumers, he says, again indicating that he is merely reciting the statute without any knowledge of *what* facts he purports to allege.  This is plainly deficient. *See, e.g.*, *Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 2009 WL 2850230, at *3-4 (S.D.N.Y. Aug. 28, 2009) (dismissing amended complaint that simply restated the statutory language without alleging any facts to support its new allegations); *Willey v. J.P Morgan Chase, N.A.*, 2009 WL 1938987, at *4 (S.D.N.Y. July 7, 2009) (dismissing complaint that contained only "formulaic recitations" of claim's elements and "ipse dixit pleading").

The Amended Complaint similarly has only conclusory allegations that UBS is a "covered person" or "service provider" (12 U.S.C. §§ 5481(6), 5481(26); Am. Compl. ¶¶ 8, 9, 37) and fails to identify any specific "consumer financial product or service" that is offered by

14

UBS.  Instead, the only purported "financial product or service" in the Amended Complaint are CMBS, but for reasons discussed above, plaintiff does not and cannot allege that CMBS are a "consumer financial product or service" under the CFPA.

> **B.  The Amended Complaint Fails To Plausibly Allege That Plaintiff "Reasonably Believed" That His Research Reports Violated A Law Subject To The Jurisdiction Of The Bureau of Consumer Financial Protection**

For protection under the CFPA's anti-retaliation provision, plaintiff must have "reasonably believed" there was a "violation of any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by, the Bureau [of Consumer Financial Protection]." 12 U.S.C. § 5567(a).  The most plaintiff can muster in the Amended Complaint is an allegation that he "reasonably believed" there was a violation of 12 U.S.C. § 5536.  Am. Compl. ¶ 24.  That provision makes it "unlawful" for a "covered person or service provider" to:  (1) "offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law;" or (2) "engage in any unfair, deceptive, or abusive act or practice."  12 U.S.C. § 5536(a)(1)(A).  The Amended Complaint does not identify a "Federal consumer financial law"—as that term is defined in the Act (12 U.S.C. § 5481(14))—that plaintiff allegedly "believed" was being violated.  Nor does the Amended Complaint contain any specific, plausible allegations explaining how the conduct plaintiff complains of constituted an "unfair, deceptive, or abusive act or practice" under the applicable statutory and regulatory definitions.  *See* 12 U.S.C. § 5531.  For this reason too, the Amended Complaint does not survive the requirements of Rule 12(b)(6).

## <u>CONCLUSION</u>

The entirety of the action should be dismissed or stayed pending arbitration.  At

minimum, the Amended Complaint's second cause of action against defendants should be

dismissed with prejudice for failure to state a claim.


Dated:   June 16, 2014                          GIBSON, DUNN & CRUTCHER LLP

                                                By:   /s/ Gabrielle Levin
                                                         Gabrielle Levin
                                                         200 Park Avenue, 48th Floor
                                                         New York, New York 10166
                                                         Telephone:  212.351.3901
                                                         Facsimile:  212.351.5301

                                                         Eugene Scalia (*Admitted Pro Hac Vice*)
                                                         1050 Connecticut Ave., NW
                                                         Washington, District of Columbia 20036
                                                         Telephone:  202.955.8206
                                                         Facsimile:  202.530.9606

                                                         *Attorneys for Defendants*