UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TREVOR MURRAY,

                        Plaintiff,                      12 Civ. 5914 (KPF)


            - V. -


UBS SECURITIES, LLC and UBS AG,

                        Defendants.
-------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE STAY THE AMENDED COMPLAINT**


Dated: July 24, 2014
      New York, New York

BROACH & STULBERG, LLP
Attorneys for Plaintiff
By:    Robert B. Stulberg
        Amy F. Shulman
One Penn Plaza, Ste. 2016
New York, New York 10119
(212) 268-1000

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................... 1

II. FACTUAL BACKGROUND ................................................... 2

III. LEGAL STANDARDS ........................................................ 6
    A.    The Rule Against Impermissible Claim-Splitting .......................... 6

    B.    Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ....................... 7

IV. ARGUMENT ................................................................ 7

    POINT I
    DEFENDANTS' MOTION TO DISMISS ON THE GROUND OF IMPERMISSIBLE
    CLAIM-SPITTING SHOULD BE DENIED ................................... 7

        A.    No Impermissible Claim-Splitting Has Occurred as a Factual Matter ... 8

        B.    Defendants' Argument is Erroneous as a Matter of Law ............. 13

            1.    Defendants' Argument Fails Because the SOX/CFPA Claims are
                Not Arbitrable ........................................ 13

            2.    Defendants' Argument Fails Because the Court Lacked Jurisdiction
                over the SOX/CFPA Claims when Plaintiff Commenced 12 CV
                5914 ................................................ 15

        C.    Alternatively, the Equities Favor Allowing the SOX/CFPA Claims to
            Proceed ................................................... 16

    POINT II
    DEFENDANTS' REQUEST TO STAY THIS ACTION SHOULD BE DENIED ..... 17

        A.    The FAA Precludes, Not Requires, a Stay of this Action ............ 17

        B.    The Court Should Deny Defendants' Request for a Discretionary Stay . 18

    POINT III
    DEFENDANTS' MOTION TO DISMISS THE CFPA CLAIM
    SHOULD BE DENIED ................................................... 20

# TABLE OF AUTHORITIES

**Federal Cases**

Am. Stock Exch. v. Mopex, 215 F.R.D. 87 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Barrett v. United States, 462 F.3d 28, 37 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . .  6, 16

Bergman v. Spruce Peak Realty, LLC, 847 F.Supp.2d 653, 664-665

(D. Vt. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,11, 13, 14, 15, 17

Best Payphones, Inc. v. City of New York, 01 CV 3934 (JG)(KAM), 2006 WL 845506
(E.D.N.Y. March 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Candler v. URS Corp., 13CV 306, 2013 WL 5353433 (N.D. Tex. Sept. 25, 2013)

Curtis v. Citibank, N.A., 226 F.3d 133, 140 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Danny's Construction Co., Inc. v. Birdair, Inc., 136 F.Supp.2d 134, 145-46
(W.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 14, 15, 17

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) . . . . . . . . . . . . . . . 13, 14, 15, 17

DiGennaro v. Whitehair, 467 F. App'x 42 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . .  17

Grant v. United Federation of Teachers, 12 CV 2149, 2014 WL 978444

(E.D.N.Y. Mar. 12, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Hamburg-American Line v. United States, 291 U.S. 420 (1934) . . . . . . . . . . . . . . . . . . . . .  24

Hard Rock Café Int'l v. Hard Rock Hotel Holdings, LLP, 808 F.Supp.2d 552, 564

(S.D.N.Y. July 11, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Kanciper v. Suffolk County Soc'y for the Prevention of Curelty to Animals, Inc., 722 F.3d 88, 92

(2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kramer v. Trans-Lux Corp., 11 CV 1424 (SRU), 2012 WL 4444820, *5

(D. Conn. Sept. 25, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Leonard v. Stemtech Int'l, Inc., Cv. No. 12-86 (LPS)(CJB), 2012 WL 3655512
(D.Del. Aug. 24, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 11

Lexico Enterprises, Inc. v. Cumberland Farms, Inc., 686 F.Supp.2d 221 (E.D.N.Y. 2010) . . . . . 8

Nat'l Cable v. Telecommunications Ass'n, 545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . . . . 24

Neal v. Asta Funding, Inc., CV. No. 13-3438 (KM)(MAH) 2014 WL 131770
(D.N.J. Jan. 6, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Nick's Garage, Inc. v. Progressive Casualty Ins., CV-12-777, 2013 WL 718457 (N.D.N.Y. Feb.
27, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Nilson v. Prudential-Bache Securities, 761 F.Supp. 279, 288 (S.D.N.Y. 1991) . . . . . . . . . . . . 18

Rabbani v. Fisch, 1998 WL 175924, *2 n. 3 (S.D.N.Y. Apr. 15, 1998) . . . . . . . . . . . . . . . . . . 9

Schlaifer Nance & Co. v. Estate of Warhol, 764 F.Supp. 43, 46-47 (S.D.N.Y. 1991) . 6, 13-15, 17

S.W. Bach & Co., RBC Dain Correspondent Servs., 425 B.R. 78 (S.D.N.Y. 2010) . . . . . . . . . 17

Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 17

Stewart v. Doral Fin. Corp., 13 CV 1349, 2014 WL 661587 (D.P.R. Feb. 21, 2014) . . . . . . . . . 19

Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Waldman v. Village of Kiryas Joel, 207 F.3d 105 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 8, 11

Williams v. E.F. Hutton, 753 F.2d 117, 119 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wu v. Pearson Educ., Inc., 09 CV 6557, 2010 WL 3791676 (S.D.N.Y. Sept. 29, 2010) . . . 17, 18

Wong v. CKX, Inc., 890 F.Supp.2d 411, 419 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . 10, 11, 15, 16

**Federal Statutes**

7 U.S.C. § 913 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

9 U.S.C. § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17-18

12 U.S.C. § 5567 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 21, 22

12 U.S.C. § 5481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-24

12 U.S.C. § 5517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

12 U.S.C. § 5536 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

15 U.S.C. § 78u-6(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 12

18 U.S.C. § 1514A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 9, 15

49 U.S.C. § 5303(e)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

49 U.S.C. § 47124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Federal Regulations**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7, 20

29 C.F.R. § 1980.103(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 15

**Federal Register**

Consumer Financial Protection Act of 2010, 49 Fed. Reg, 18630, 18638 (Apr. 3, 2014) . . . . . . 19

**Other Authorities**

The American Heritage College Dictionary 839 (3d Eds. 1993). . . . . . . . . . . . . . . . . . . . . . . . 23

## PRELIMINARY STATEMENT

Plaintiff Trevor Murray ("Plaintiff") submits this Memorandum of Law in opposition to Defendants' June 17, 2014 Motion to Dismiss or in the Alternative to Stay the Amended Complaint. Defendants' motion is groundless and should be denied in its entirety.

The Amended Complaint [Dkt. No. 25] ("Am. Compl.") alleges that Defendants unlawfully retaliated against Plaintiff in violation of the Sarbanes Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A, and the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5567 (collectively, "SOX/CFPA claims"). Defendants move to dismiss the SOX/CFPA claims on the erroneous ground that Plaintiff has engaged in "impermissible claim-splitting" by alleging, in a related lawsuit that has been stayed pending arbitration (12 CV 5914), claims for violations of the Dodd-Frank Act of 2010, 15 U.S.C. § 78u-6(h) ("Dodd-Frank"). Defendants speciously mislabel Plaintiff's commencement of two actions as "impermissible claim-splitting," while ignoring the procedural history, facts and law which demonstrate that no "impermissible claim-splitting" has occurred and that no grounds exist to dismiss the Amended Complaint.

No impermissible claim splitting has occurred because (a) there is no active "duplicative" action in this Court; (b) there has been no surprise assertion of the SOX/CFPA claims; (c) there has been no attempt to avoid the res judicata effects of the Dodd-Frank claim; (d) the SOX/CFPA claims are exempted from the parties' arbitration agreement and, therefore, the parties are deemed, as a matter of law, to have agreed to separately adjudicate those claims; and (e) the Court did not have jurisdiction over the SOX/CFPA claims at the time that 12 CV 5914 was commenced. Alternatively, to the extent that the Court determines that claim-splitting has occurred, the balance of equities weighs in favor of allowing this action to proceed.

Defendants alternatively contends, erroneously, that under the Federal Arbitration Act

("FAA"), 9 U.S.C. § 3, the SOX/CFPA claims must be stayed pending arbitration of the Dodd-Frank claim or that the Court should exercise its discretion to stay this action.  To the contrary, the FAA precludes, not requires, a stay of this action, and no basis exists for a discretionary stay because (a) there is no pending arbitration of the Dodd-Frank claim; (b) the SOX/CFPA claims are exempted from the parties' arbitration agreement, and, therefore, the parties are deemed, as a matter of law, to have agreed to separately adjudicate those claims; (c) Defendants have failed to meet their heavy burden to demonstrate that a stay is appropriate; and (d) a stay would contravene the purposes of the statutory prohibition on mandatory arbitration of the SOX/CFPA claims.

Finally, Defendants' motion to dismiss the CFPA claim under Fed. R. Civ. P. 12(b)(6) should be denied because Plaintiff has alleged facts sufficient to state a CFPA claim.

## FACTUAL BACKGROUND

Defendants' Memorandum of Law [Dkt. No. 33] misstates the relevant procedural history and improperly asserts allegations that are outside the four corners of the Amended Complaint. For instance, Defendants' Memorandum states that Plaintiff was "let go ... in a reduction-in-force," even though the Amended Complaint does not allege a reduction in force.  (Dkt. No. 33, at 1, 7).  Defendants' attempt to put before the Court allegations outside of the Amended Complaint should be rejected.  The relevant procedural history, facts, and allegations are accurately set forth in the Amended Complaint (Annexed to the accompanying Declaration of Robert B. Stulberg ["Stulberg Decl."] as Exhibit A and in the Stulberg Declaration.)

On August 2, 2012, Plaintiff filed a Complaint ("the OSHA Complaint") with OSHA alleging that Defendants had violated SOX and the CFPA by retaliating against him for engaging in protected activity, namely objecting to and refusing to participate in violations of SOX and

CFPA. (Stulberg Decl. at ¶ 3). Plaintiff filed the SOX/CFPA claims at OSHA because, in order to assert claims under SOX and CFPA in federal court, a party must first exhaust his administrative remedies by filing a complaint with OSHA. 29 C.F.R. § 1980.103(c); 18 U.S.C. § 1514A(b)(1)(A). (Id.) On the same day he filed his OSHA Complaint, Plaintiff also commenced 12 CV 5914, in which he alleged that Defendants had violated Dodd-Frank by unlawfully retaliating against him for engaging in protected activity within the meaning of that law.[1] (Stulberg Decl. at ¶ 4). The Dodd-Frank Complaint noted that Plaintiff had filed his SOX/CFPA claims with OSHA that same day. (12 CV 5914, Dkt. No. 1 at fn. 1).

On August 18, 2012, OSHA served Defendants with a copy of the OSHA Complaint. (Stulberg Decl. at ¶ 5). On September 21, 2012, Defendants moved to dismiss the Dodd-Frank Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (12 CV 5914, Dkt. No. 13). On October 9, 2012, an OSHA investigator interviewed Plaintiff. (Stulberg Decl. at ¶ 6). On November 5, 2012, Defendants filed a position paper with OSHA. (Stulberg Decl. at ¶ 7).

In or around January 2013, Plaintiff spoke with the OSHA investigator concerning inaccuracies in Defendants' position paper. (Stulberg Decl. at ¶ 8). That same month, the OSHA investigator advised Plaintiff's counsel that OSHA would be continuing its investigation of Plaintiff's claims and, as part of that investigation, would be requesting documents from Defendants. (Id.). Based on that information, Plaintiff decided to not immediately invoke his rights under the "kick out" provisions of SOX and CFPA, which entitle a party to assert in federal court SOX and CFPA claims filed with OSHA if the United States Secretary of Labor has not reached a decision on those claims within 180 and 210 days, respectively (in Plaintiff's case, January 29, 2013 for his SOX claim and February 28, 2013 for his CFPA claim). 18 U.S.C. §

---

[1] Under Section 922(a) of Dodd- Frank, a plaintiff can assert claims directly in court for unlawful retaliation for engaging in protected activity within the meaning of Dodd-Frank. 15 U.S.C. §78u-6(h).

1514A(b)(1)(B); 12 U.S.C. § 5567(c)(4)(D)(i). (Id.).  In or around March 2013, the OSHA investigator advised Plaintiff's counsel that he had not yet requested documents from Defendants but that he would do so as soon as possible.  (Stulberg Decl. at ¶ 9).

On May 21, 2013, the Court denied Defendants' motion to dismiss the Dodd-Frank Complaint.  (12 CV 5914, Dkt. No. 22). On or about May 23, 2013, Defendants submitted a supplemental position paper to OSHA.  (Stulberg Decl. at ¶ 11). On or about May 30, 2013, Plaintiff's counsel spoke with the OSHA investigator concerning inaccuracies in Defendants' supplemental position paper. (Id.)

On June 14, 2013, more than ten months after Defendants filed their motion to dismiss the Dodd-Frank Complaint, Defendants moved to compel arbitration of the Dodd-Frank Complaint.  (12 CV 5914, Dkt. No. 27).   Although Defendants could have brought their motion to compel arbitration when they moved to dismiss the Dodd-Frank Complaint, Defendants instead chose to litigate their motions in piecemeal fashion.  (Stulberg Decl. at ¶ 12).

Defendants' motion to compel arbitration contended that the Dodd-Frank claim was subject to the mandatory arbitration provisions of an arbitration agreement that required the parties to arbitrate "any employment-related disputes," except where "prohibited by applicable law," and that incorporated Defendants' Employment Arbitration Procedures.  (12 CV 5914, Dkt. No. 36, at 1, 3). The Employment Arbitration Procedures provided that "claims arising under the Sarbanes-Oxley Act of 2002…are not covered by these procedures and will continue to be addressed in accordance with applicable law.'" (Id.).

In or around September of 2013, the OSHA investigator advised Plaintiff's counsel that, due to an agency staff shortage and resulting case backlog, the investigation of Plaintiff's case had been delayed. (Stulberg Decl. at ¶ 14).

On or about January 17, 2014, the OSHA investigator advised Plaintiff's counsel that there were many cases ahead of Plaintiff's, that the investigator was only then issuing document requests in another case that was more than two years old, and that the investigator could not estimate when he would be able to turn his attention to Plaintiff's case. (Stulberg Decl. at ¶ 15). Based on that information, Plaintiff decided to invoke his rights under the "kick out provisions" of SOX and CFPA (Id.).

By Order dated January 27, 2014 (the "Jan. 2014 Order"), the Court granted Defendant's motion to compel arbitration of the Dodd-Frank Complaint and stayed 12 CV 5914 pending arbitration. The Court held that, although the parties' arbitration agreement is "expansive," it "expressly" exempts "'[c]laims arising under the Sarbanes-Oxley Act of 2002" from these procedures ....." (Jan. 2014 Order, at 15). The Court held that, because the Dodd-Frank claim did not "aris[e]..." under SOX, the Dodd-Frank claim was subject to mandatory arbitration. (Jan. 2014 Order, at 16-23).

On February 12, 2014, Plaintiff commenced this action. [Dkt. Nos. 1-2]. On April 18, 2014, Plaintiff filed an Amended Complaint. [Dkt. Nos. 23-26]. Plaintiff asserted the SOX/CFPA claims in this action, rather than moving to amend the Dodd-Frank Complaint, because 12 CV 5914 was stayed and placed on the suspense docket. (Jan. 2014 Order, at 18-20).

The Amended Complaint alleges that Defendants illegally retaliated against Plaintiff for informing his supervisors about, and refusing to participate in, conduct that he reasonably believed violated (a) laws and rules designed to protect against fraudulent practices in connection with the sale of securities, in violation of SOX, and (b) laws, rules, orders, standards, or prohibitions subject to the jurisdiction of, or enforceable by, the United States Consumer Financial Protection Bureau ("CFPB"), in violation of the CFPA. (Stulberg Ex. A [Am.

5

Compl.]).

No arbitration of the Dodd-Frank claims has been commenced.

## LEGAL STANDARDS

### A. The Rule Against Impermissible Claim-Splitting.

The rule against improper claim-splitting provides that a party cannot split his claims into different lawsuits in order to avoid the effects of res judicata. Best Payphones, Inc. v. City of New York, 01 CV 3934 (JG)(KAM), 2006 WL 845506 (E.D.N.Y. March 2006); Danny's Construction Co., Inc. v. Birdair, Inc., 136 F.Supp.2d 134, 145-46 (W.D.N.Y. 2000). Improper claim-splitting occurs when a party files successive lawsuits in order to circumvent an order denying the party's request to add the claims to the first lawsuit or to allege claims that should have been but were not filed in the first lawsuit in order to avoid the effects of res judicata. Leonard v. Stemtech Int'l, Inc., Cv. No. 12-86(LPS)(CJB), 2012 WL 3655512 (D.Del. Aug. 24, 2012); Danny's Construction Co., Inc., 136 F.Supp.2d at 145-46.

While, as a general matter, the rule against impermissible claim-splitting prevents a party from bringing duplicative claims in successive or separate lawsuits in the same court against the same defendants, Kanciper v. Suffolk County Soc'y for the Prevention of Cruelty to Animals, Inc., 722 F.3d 88, 92 (2d Cir. 2013), as a matter of law, that rule does not preclude successive or simultaneous lawsuits where, inter alia, (a) the claims asserted in the separate lawsuits must be accorded different treatment under the terms of the parties' arbitration agreement, Bergman v. Spruce Peak Realty, LLC, 847 F.Supp.2d 653, 664-665 (D.Vt. 2012); Schlaifer Nance & Co. v. Estate of Warhol, 764 F.Supp. 43, 46-47 (S.D.N.Y. 1991); or (b) where the court did not have jurisdiction over the claims in the second lawsuit at the time that the first was filed, Barrett v. United States, 462 F.3d 28, 37 (1st Cir. 2006).

B. **Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6).**

As the Court noted during the May 15, 2014 pre-motion conference, a "motion to dismiss is a very difficult thing to meet." (Stulberg Ex. B [Tr.] at 32). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must be denied when a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

The court "'must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.'" Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) ("We take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiffs."). Thus, the issue at this juncture is "'not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support her claims.'" Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001). Moreover, courts in the Second Circuit should take extra care to avoid hastily dismissing a pleading alleging civil rights violations. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

## ARGUMENT

## POINT I

## DEFENDANTS' MOTION TO DISMISS ON THE GROUND OF IMPERMISSIBLE CLAIM-SPLITTING SHOULD BE DENIED.

Defendants erroneously argue that this action should be dismissed because Plaintiff has

engaged in impermissible claim-splitting by asserting the SOX/CFPA claims in this case, while asserting the Dodd-Frank claims in 12 CV 5914.  In so arguing, Defendants speciously mislabel Plaintiff's commencement of two actions as impermissible claim-splitting, while ignoring the procedural history, facts and  law which demonstrate that no impermissible claim splitting has occurred.

**A. No Impermissible Claim-Splitting Has Occurred as a Factual Matter.**

Despite Defendants'  attempt to ascribe a nefarious "claim-splitting" motive to Plaintiff's filing the SOX/CFPA claims in this action, there has been no impermissible duplicative litigation or claim splitting.

First, there are no active, pending "duplicative" proceedings in this Court. Rather, 12 CV 5914 has been stayed and placed on the suspense docket pending arbitration, and no fact discovery has occurred.[2]  This case is thus entirely distinguishable from the cases upon which Defendants rely ((DiGennaro v. Whitehair, 467 F. App'x 42 (2d Cir. 2012); Curtis v. Citibank, N.A., 226 F.3d 133, 140 (2d Cir. 2000); Waldman v. Village of Kiryas Joel, 207 F.3d 105 (2d Cir. 2000); Lexico Enterprises, Inc. v. Cumberland Farms, Inc., 686 F.Supp.2d 221 (E.D.N.Y. 2010); Am. Stock Exch. v. Mopex, 215 F.R.D. 87 (S.D.N.Y. 2002)), in which a plaintiff filed a second complaint while the first was being actively litigated.[3]

---

[2] Plaintiff's SOX claim also is not "duplicative" of his Dodd-Frank claim.  In 12 CV 5914, Defendants contended, in their reply papers in support of their motion to compel arbitration, that "Dodd-Frank and SOX claims are different, and are subject to different procedural requirements."  The Jan. 2014 Order agreed, holding that, because SOX and Dodd-Frank "are separate pieces of federal legislation, each of which provides a party with distinct rights and responsibilities," the Dodd-Frank claim must be arbitrated separately from his other claims against Defendants.  Plaintiff's rights under SOX are thus "distinct."

[3] To the extent Defendants argue that the non-arbitrable SOX/CFPA claims are "duplicative" of the arbitrable Dodd-Frank claim or a future arbitration of that claim, the proper inquiry (which must be answered negatively, as explained below) is whether the non-arbitrable claims should be stayed pending arbitration, not whether they should be dismissed. Williams v. E.F. Hutton, 753 F.2d 117, 119 (D.C. Cir.

Second, claim-splitting occurs when a party files successive lawsuits alleging previously unasserted claims to avoid the res judicata effects of the first lawsuit, or a merits-related order prohibiting a party from adding claims to the first lawsuit. Grant v. United Federation of Teachers, 12 CV 2149, 2014 WL 978444 (E.D.N.Y. Mar. 12, 2014); Leonard, 2012 WL 3655512, *8. Here, there has been no surprise assertion of the SOX/CFPA claims and no attempt to evade the res judicata effects of the Dodd-Frank claims or a merits-related order in 12 CV 5914. Plaintiff filed his SOX/CFPA claims and Dodd-Frank claims on the same day (August 2, 2012) - - the SOX/CFPA claims with OSHA, per 29 C.F.R. § 1980.103(c) and 18 U.S.C. § 1514A(b)(1)(A), and the Dodd-Frank claim with this Court in 12 CV 5914. Between August 2, 2012 and February 12, 2014, Defendants were fully aware that Plaintiff had asserted and was prosecuting the SOX/CFPA claims, and actively participated in the investigations of those claims before OSHA. (Stulberg Decl. at ¶¶ 5, 7, 11). In January 2014, when Plaintiff learned that the processing of his OSHA complaint would be delayed indefinitely, due to the agency's backlog, Plaintiff decided to invoke the "kick out provisions" of SOX and CFPA by asserting those claims in federal court. (Stulberg Decl. at ¶ 15).

Thus, between August 2, 2012 and February 12, 2014, Defendants knew about and simultaneously litigated the Dodd-Frank and SOX/CFPA claims. Having litigated the SOX/CFPA claims since August 2012, Defendants cannot now claim that they should be dismissed, simply on the ground that Plaintiff has exercised his statutory right to assert them in federal court. Defendants are in no materially different position than they would have been had the SOX/CFPA claims remained at OSHA, regardless of whether the Dodd-Frank claims are arbitrated. The only conceivable reason for Defendants to object to Plaintiff's filing the

---

1985)(arbitration cannot be raised as a bar to claims falling outside the scope of an arbitration agreement); Rabbani v. Fisch, 95 CV 9194, 1998 WL 175924, *2 n. 3 (S.D.N.Y. Apr. 15, 1998).

SOX/CFPA claims in federal court is that Defendants will no longer be able to take advantage of the delayed adjudication of Plaintiff's SOX/CFPA claims at OSHA.  Plaintiff's statutory right to assert his SOX/CFPA claims in federal court, however, cannot be denied on that basis.  Candler v. URS Corp., 13 CV 13-6, 2013 WL 5353433 (N.D. Tex. Sept. 25, 2013)(plaintiff's right to invoke the "kickout" provisions of SOX cannot be denied based upon length of time the SOX claim was at OSHA); Wong v. CKX, Inc., 890 F.Supp.2d 411, 419 (S.D.N.Y. 2012)(same).

Moreover, the only reason that Plaintiff filed a new action to assert the SOX/CFPA claims, rather than  moving to amend the Dodd-Frank Complaint to add those claims, is that, at the time Plaintiff exercised his statutory rights under the "kick out provisions," 12 CV 5914 had been stayed and placed on the suspense docket pending arbitration.   (Stulberg Decl. at ¶ 17). The fact that the Dodd-Frank claim was stayed when Plaintiff exercised his rights under the "kickout provisions" of SOX and CFPA cannot preclude Plaintiff from exercising those rights. See, e.g., Candler, 2013 WL 5353433; Wong, 890 F.Supp. at 419.

Indeed, the Jan. 2014 Order noted that, because Defendants filed successive motions to dismiss and then to compel arbitration of the Dodd-Frank Complaint, the Court had not held any initial pretrial conference or issued any pre-trial scheduling orders in 12 CV 5914. (Jan. 2014 Order, at 6-7). Under the Court's standard initial pre-trial conference order, the presumptive deadline for filing motions to amend is thirty days after an initial pre-trial conference. (Civil Case Management Plan and Scheduling Order of Honorable Katherine Polk Failla, "1/17/2014 Version").  Thus, it is contemplated that motions to amend pleadings may be filed after an initial case management conference is held.  Had the Court denied Defendants' motion to compel arbitration, the Court would have scheduled a future pre-trial conference in this case, and Plaintiff would have had until thirty days after that conference to move to amend the Dodd-Frank

Complaint. The fact that the Court instead granted Defendants' motion and stayed 12 CV 5914 before any initial pre-trial conference was held does not automatically bar Plaintiff from asserting the SOX/CFPA claims that he otherwise would have been entitled to assert. See, e.g., Candler, 2013 WL 5353433; Wong, 890 F.Supp. at 419.

On these facts, there has been no impermissible claim-splitting warranting dismissal of this action. See, e.g., Leonard, 2012 WL 3655512; Bergman, 847 F.Supp.2d at 664-665. This case simply is not the type that the claim-splitting rule is designed to avoid. The cases cited by Defendants, for instance, involved surprise successive lawsuits filed to (a) assert claims that could have been asserted in a prior lawsuit in order to avoid the res judicata effects of the first lawsuit or (b) circumvent a scheduling or merits-related order in the first lawsuit. (Waldman, 207 F.3d 105; Curtis, 226 F.3d at 140.

Defendants mistakenly argue that Plaintiff should have filed the SOX and CFPA claims in court in January and February 2013, respectively (the earliest dates when Plaintiff could have invoked the "kickout provisions" of SOX and CFPA), and that Plaintiff engaged in piecemeal litigation by not doing so.   First, the "kickout provisions" permit a plaintiff to assert SOX and CFPA claims in court at any time after the complaint has been pending at OSHA for 180 days and 210 days, respectively (up until the point at which the Secretary of Labor issues a decision on the OSHA complaint). See, e.g., Candler, 2013 WL 5353433; Wong, 890 F.Supp. at 419. There is no outer limit on that right, and, as there was no order in 12 CV 5914 setting a deadline for amending the pleadings, Plaintiff was not required and could not be required to assert his SOX/CFPA claims in court, whether as a matter of docket management or otherwise, before he did so. Candler, 2013 WL 5353433; Wong, 890 F.Supp. at 419.

Second, the Dodd-Frank Complaint was the subject of (a) Defendants' motion to dismiss

for failure to state a claim until May 2013, when that motion was decided in Plaintiff's favor; and (b) Defendants' motion to compel arbitration until January 27, 2014.   Plaintiff was not required to move to amend a complaint that was the subject of such motions, as doing so could reasonably have been viewed as a waste of judicial resources.   Indeed, as stated above, because of Defendants' successive motion practice, the Court did not hold a pre-trial conference or set deadlines for amending the pleadings while Defendants' motions were pending.   Third, as explained above, Plaintiff exercised his rights under the "kickout provisions" because OSHA was unable to process the SOX/CFPA claims due to a substantial backlog, not due to some nefarious scheme.(Stulberg Decl. at ¶ 15).   Defendants' resorting to such ad hominem attacks underscores the lack of validity of their arguments.   Those attacks are also curious, given that Defendants filed piecemeal motions to dismiss and to compel arbitration, when they could have filed both motions in September 2012.

Defendants' argument that Plaintiff should have waited to file his Dodd-Frank claim in court until after he exhausted his administrative exhaustion process at OSHA also is misplaced. Dodd-Frank expressly permits a plaintiff to promptly assert Dodd-Frank claims, including Dodd-Frank claims for retaliation for assertion of rights protected under SOX, without any administrative exhaustion requirement. 15 U.S.C. § 78u-6(h).   Congress did not impose an administrative exhaustion requirement on Dodd-Frank claims in order to expand whistleblowers' rights. See Kramer v. Trans-Lux Corp., 11 CV 1424 (SRU), 2012 WL 4444820, *5 (D. Conn. Sept. 25, 2012)(attributing differences in administrative exhaustion requirements and statutes of limitations between SOX and Dodd-Frank to intent to expand whistleblower rights).   Requiring a plaintiff to wait to bring Dodd-Frank claims in court until the OSHA process concludes would deprive a plaintiff of his Dodd-Frank rights and undermine Dodd-Frank's statutory intent by

effectively adding an administrative exhaustion requirement to the statute.

As no impermissible "claim-splitting has occurred, Defendants' motion should be denied.

**B. Defendants' Argument is Erroneous as a Matter of Law.**

Defendants' argument also fails as a matter of law.

### 1. Defendants' Argument Fails Because the SOX/CFPA Claims Are Not Arbitrable.

The rule against impermissible claim-splitting does not apply where a plaintiff files separate actions to assert arbitrable and non-arbitrable claims, respectively. Bergman, 847 F.Supp.2d at 664-665; Schlaifer, 764 F.Supp. at 46-47. Courts have held that this is so because, where parties agree to exclude certain claims from the scope of an arbitration agreement, the parties are deemed, as a matter of law, to have agreed to adjudicate the arbitrable and non-arbitrable claims separately. Bergman, 847 F.Supp.2d at 664-665; Schlaifer, 764 F.Supp. at 46-47. In such cases, a plaintiff is entitled to pursue the non-arbitrable claims in court, even if the arbitrable claims are the subject of a separate action in the same court or arbitration. Bergman, 847 F.Supp.2d at 664-665; Schlaifer, 764 F.Supp. at 46-47; Danny's, 136 F.Supp.2d at 146; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)(arbitration agreements must be strictly enforced, even piecemeal litigation results).

Moreover, any potential for parallel proceedings in such circumstances does not require a different result. Bergman, 847 F.Supp.2d at 664-665; Schlaifer, 764 F.Supp. at 46-47; Danny's, 136 F.Supp.2d at 146; see also Dean Witter, 470 U.S. at 221. To the contrary, courts have held that, where the parties agree to exclude claims from an arbitration agreement, the carve-outs must be given full effect, regardless of the potential for parallel or piecemeal litigation. Bergman, 847 F.Supp.2d at 664-665; Schlaifer, 764 F.Supp. at 46-47; Danny's, 136 F.Supp.2d at 146; Dean Witter, 470 U.S. at 221. For instance, in Bergman, 847 F.Supp.2d 653, the plaintiffs

brought two actions arising from the same set of facts against the same defendants because the claims in the two lawsuits were subject to different arbitration provisions, respectively. Bergman, 847 F.Supp.2d at 658.  The claims in the first action were subject to a mandatory arbitration clause, while the claims in the second were not. Id., at 664-65. After the first action was stayed pending arbitration, the court considered whether the second action should be dismissed as duplicative under the doctrine of impermissible claim-splitting. Id. The court held that, even though the plaintiffs had filed two actions arising from a common set of facts, no impermissible claim-splitting had occurred because the second action asserted claims that were exempted from the parties' arbitration agreements.  Id. The court held that, by exempting the non-arbitrable claims from the arbitration agreement, the parties had implicitly agreed to split the claims, and that the non-arbitrable claims should be allowed to proceed, even if piecemeal litigation resulted. Id. (citing Schlaifer, 764 F.Supp. at 46; Dean Witter, 470 at 221.  To hold otherwise, the court ruled, would contravene the provisions of the arbitration agreement explicitly providing that the arbitrable and non-arbitrable claims would be adjudicated separately.  Bergman, 847 F.Supp.2d at 665.

The Jan. 2014 Order held that the Dodd-Frank claim is governed by the parties' arbitration agreement, granted Defendants' motion to compel arbitration of the Dodd-Frank claim, and stayed 12 CV 5914 pending arbitration.  (Jan. 2014 Order, at 14-31). The arbitration agreement, however, explicitly excludes SOX and CFPA claims (exempting from arbitration SOX claims and any other claims for which arbitration is prohibited by law).  (Jan. 2014 Order, at 3). As a matter of law, the parties are deemed to have agreed that the SOX/CFPA claims would be adjudicated separately from the claims covered by the arbitration agreement, and in federal court.  Bergman, 847 F.Supp.2d at 664-665; Schlaifer, 764 F.Supp. at 46-47; Danny's,

136 F.Supp.2d at 146; see also Dean Witter, 470 U.S. at 221.  Contrary to Defendants'
piecemeal litigation arguments, Plaintiff is thus entitled to maintain this separate action to assert
his non-arbitrable SOX/CFPA claims, regardless of whether and when Plaintiff arbitrates the
Dodd-Frank claims.  Bergman, 847 F.Supp.2d at 664-665; Schlaifer, 764 F.Supp. at 46-47;
Danny's, 136 F.Supp.2d at 146; see also Dean Witter, 470 U.S. at 221.

Moreover, dismissing this lawsuit would effectively consign Plaintiff to having his
SOX/CFPA claims resolved through arbitration of his Dodd-Frank claim. That is, if this lawsuit
is dismissed, Plaintiff's only avenue of redress regarding his unlawful termination in violation of
SOX and the CFPA would be a future arbitration of his Dodd-Frank claims.  Dodd-Frank,
however, (a) explicitly amended SOX to preclude mandatory arbitration of SOX claims, Wong,
890 F.Supp.2d at 421, (b)  provides that CFPA claims are not subject to mandatory arbitration,
and (c) is intended to augment, not replace, the SOX procedures for asserting violations of SOX,
see Kramer, 2012 WL 4444820 (Dodd-Frank is intended to expand the protections of SOX).
Dismissing the SOX/CFPA claims, thus, would be violate the letter and intent of Dodd-Frank.

### 2. Defendants' Argument Fails Because the Court Lacked Jurisdiction over the SOX/CFPA Claims when Plaintiff Commenced 12 CV 5914.

As a matter of law, the rule against impermissible claim-splitting does not preclude a
plaintiff from filing a second lawsuit to assert claims that are subject to pre-filing administrative
exhaustion requirements and over which the court did not have jurisdiction at the time the
plaintiff filed the first lawsuit. Barrett, 462 F.3d at 37.  This Court lacked jurisdiction over the
SOX/CFPA claims when Plaintiff filed 12 CV 5914, Wong, 890 F.Supp.2d at 417, because those
claims were subject to an administrative exhaustion requirement. 29 C.F.R. § 1980.103(c); 18
U.S.C. § 1514A(b)(1)(A).  Thus, the rules against impermissible claim splitting do not preclude

Plaintiff from filing the SOX/CFPA claims in this action. Barrett, 462 F.3d at 37. Moreover, when Plaintiff invoked his rights under the "kickout provisions" of SOX and the CFPA, the SOX/CFPA claims could not be asserted in 12 CV 5914 because it was stayed pending arbitration.  The rules against impermissible claim-splitting do not and should not preclude Plaintiff from asserting his SOX/CFPA claims in this lawsuit in those circumstances.

**C.   Alternatively, the Equities Favor Allowing the SOX/CFPA Claims to Proceed.**

Alternatively, even if the Court finds that this action and 12 CV 5914 are impermissibly duplicative, the court must consider the "equities of the situation" in fashioning a remedy. Curtis, 226 F.3d at 140.  The equities here weigh against dismissal and in favor of allowing the SOX/CFPA claims to proceed because: (a) there has been no surprise assertion of the SOX/CFPA claims; (b) there has been no attempt to circumvent the effects of res judicata or any deadlines or merits-related order in 12 CV 5914; (c) Plaintiff filed the SOX/CFPA claims in a new action only because 12 CV 5914 was stayed pending arbitration; (d) between January 2013 and January 27, 2014, when Plaintiff could have moved to add the SOX/CFPA claims to 12 CV 5914, the Dodd-Frank Complaint was the subject of successive motions to dismiss and compel arbitration; and (e) the law did not require Plaintiff to file the SOX/CFPA claims in court earlier he did, Candler, 2013 WL 5353433; Wong, 890 F.Supp. at 419.

Further, dismissing this action will severely and unfairly prejudice Plaintiff by precluding him from asserting his SOX/CFPA claims in any forum.  In contrast, regardless of whether Plaintiff commences arbitration of the Dodd-Frank claims, Defendants are and/or will be in no materially different situation than they would have been had the SOX/CFPA claims remained at OSHA, i.e.,  they still would be litigating the SOX/CFPA claims separately from the Dodd-Frank claim.

## POINT II

## DEFENDANTS' REQUEST TO STAY THIS ACTION SHOULD BE DENIED

Defendants erroneously contend that the Court is "required" to stay this action under the FAA and that alternatively the Court should exercise its discretion to stay this action pending arbitration. These contentions must fail, as the FAA precludes, not requires, a stay of the SOX/CFPA claims and no discretionary stay should be imposed.

### A.    The FAA Precludes, Not Requires, a Stay of this Action.

While Section 3 of the FAA requires a stay of arbitrable claims, neither the FAA nor any other law requires that non-arbitrable claims be stayed. S.W. Bach & Co., RBC Dain Correspondent Servs., 425 B.R. 78 (S.D.N.Y. 2010); see also Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991)(authority to stay non-arbitral claims does not stem from the FAA).[4] Rather, courts regularly hold that, where an arbitration clause specifically excludes certain claims, the agreement, as a matter of law, reflects the parties' agreement to have the non-arbitrable claims adjudicated independently in court. Bergman, 847 F.Supp.2d at 664-665; Wu v. Pearson Educ., Inc., 09 CV 6557, 2010 WL 3791676 (S.D.N.Y. Sept. 29, 2010); Schlaifer, 764 F.Supp. at 46-47; Danny's, 136 F.Supp.2d at 146; see also Dean Witter, 470 U.S. at 221. These courts have held further that, under the FAA, the agreement to allow the non-arbitrable claims to proceed independently of arbitrable claims should be given full effect by refusing to stay the non-arbitrable claims. Hard Rock Café Int'l v. Hard Rock Hotel Holdings, LLP, 808 F.Supp.2d 552, 564 (S.D.N.Y. July 11, 2011); Nilson v. Prudential-Bache Securities, 761 F.Supp. 279, 288 (S.D.N.Y. 1991). This is so because any potential for parallel arbitrable and court proceedings is

---

[4] Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987), cited by Defendants, does not state otherwise.

outweighed by the need to give effect to the parties' agreement to litigate the arbitrable and non-arbitrable claims in two fora. Nilson, 761 F.Supp. at 288; Wu, 2010 WL 3791676. A stay is particularly inappropriate where there is a "strong regulatory policy in favor of allowing a party to litigate [the non-arbitrable claims] in a judicial forum. See, e.g., Nilson, 761 F.Supp. at 288.

The parties' arbitration agreement explicitly excludes SOX and CFPA claims from the arbitration agreement. (Jan. 2014 Order at 3). As a matter of law, the parties are deemed to have contracted to allow the SOX/CFPA claims to proceed in court independently of any arbitration. Nilson, 761 F.Supp. at 288; Wu, 2010 WL 3791676; Hard Rock Café, 808 F.Supp.2d at 564. Because, under the FAA, full effect must be given to the parties' arbitration agreement, the SOX/CFPA claims must proceed without a stay. Nilson, 761 F.Supp. at 288; Wu, 2010 WL 3791676; Hard Rock Café, 808 F.Supp.2d at 564. This is particularly so given, as discussed below, the federal law and policy precluding arbitration of SOX/CFPA claims. See, e.g., Nilson, 761 F.Supp. at 288.

## B.    The Court Should Deny Defendants' Request for a Discretionary Stay.

The Court should also deny Defendants' request for a discretionary stay.

First, as stated above, where, as here, the non-arbitrable claims are explicitly carved-out of the parties' arbitration agreement, courts refuse to issue discretionary stays of non-arbitrable claims, in order to give the parties' arbitration agreement full effect, despite any potential for parallel proceedings. Nilson, 761 F.Supp. at 288; Wu, 2010 WL 3791676; Hard Rock Café, 808 F.Supp.2d at 564.

Second, a party seeking a stay of non-arbitrable claims pending arbitration "'bears a heavy burden of showing necessity' by demonstrating, among other things, that there will be no 'undue hardship imposed on the opposing party.'" Hard Rock Café, 808 F.Supp.2d at 564.

Defendants cannot meet this heavy burden. Staying the SOX/CFPA claims, regardless of if and when any arbitration is commenced, would impose an undue hardship on Plaintiff by extensively delaying Plaintiff's ability to exercise his right to assert his SOX/CFPA claims in court, to obtain documentary and testimonial evidence regarding his SOX/CFPA claims, and to seek remedies under SOX and the CFPA for his unlawful termination. Staying the SOX/CFPA claims in the absence of a pending arbitration also would allow the SOX/CFPA claims to languish on the Court's docket, depriving Plaintiff of his rights under SOX and the CFPA and wasting judicial resources.

Third, a stay of the SOX and CFPA claims would effectively tie resolution of those claims to conclusion of an arbitration of the Dodd-Frank claims. The purpose of the "kickout provisions," however, was to provide plaintiffs with SOX and CFPA claims quicker access to decisional resolution of those claims. See Procedures for Handling Retaliation Complaints Under the Employee Protection Provision of the Consumer Financial Protection Act of 2010, 49 Fed. Reg, 18630, 18638 (Apr. 3, 2014).

Fourth, Defendants' assertion that a stay will avoid potentially inconsistent rulings is misplaced, because of Dodd-Frank's statutory prohibition on mandatory arbitration of SOX and CFPA claims and exclusion of those claims from the parties' arbitration agreement. Given the statutory prohibition and the contractual exclusion, the CFPA/SOX claims cannot be brought in any arbitration of the Dodd-Frank claim. As a result, rulings in any arbitration of the Dodd-Frank claim would not have a preclusive effect on Plaintiff's SOX/CFPA claims. See Stewart v. Doral Fin. Corp., 13 CV 1349, 2014 WL 661587 (D.P.R. Feb. 21, 2014)(where breach of contract claim and SOX claim arose from common nucleus of operative facts, compelling arbitration of breach of contract claim would frustrate prohibition on mandatory arbitration of

SOX claims).  Thus, for this reason as well, the possibility of inconsistent rulings is irrelevant.

Defendants erroneously argue that the statutory bar against arbitration of SOX and CFPA claims is irrelevant because plaintiff "chose to proceed first on the Dodd-Frank claim …." As Defendants well know, Plaintiff filed the SOX/CFPA claims with OSHA on the same day he filed his Dodd-Frank claims with the Court.  Moreover, because Plaintiff was required to exhaust his administrative remedies on the SOX/CFPA claims, he could not have filed those claims in court before he filed the Dodd-Frank claim.  In any event, adopting Defendants' argument would impose an election of remedies, requiring Plaintiff to choose between pursuing his Dodd-Frank claims in arbitration and litigating his SOX/CFPA claims in court.  Such a result is directly contrary to the letter and purpose of Dodd-Frank and SOX.

The only SOX case upon which Defendants rely, Neal v. Asta Funding, Inc., CV No. 13-3438 (KM)(MAH), 2014 WL 131770 (D.N.J. Jan. 6, 2014), does not address any of the issues present here, including whether staying a SOX claim pending arbitration would violate the statutory prohibition against mandatory arbitration of SOX claims. Neal, 2014 WL 131770. Rather, in Neal, the parties had been actively engaged in an arbitration for well over one year, without objection, when the plaintiff moved to stay the arbitration so that he could assert his SOX and other claims in court. Id. The court stayed the federal action given the posture of the arbitration without addressing the arbitrability of the SOX claim. Id. Thus, nothing in Neal permits a court to contravene the statutory intent of Dodd-Frank by staying a non-arbitrable SOX claim pending an arbitration that has yet to be commenced.

## POINT III

## DEFENDANTS' MOTION TO DISMISS THE CFPA CLAIM SHOULD BE DENIED.

Defendants' motion to dismiss the CFPA claim pursuant to Fed. R. Civ. P. 12(b)(6)

should be denied. Defendants have not met the "very difficult" (Stulberg Ex. B [Tr.] at 32) burden to show that Plaintiff has failed to allege facts establishing the plausibility of his claim.

To state his claim under 12 U.S.C. § 5567(a)(4), Plaintiff must allege that he is a "covered employee" who was terminated by a "covered person" by reason of the fact that he "objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by," the CFPB. 12 U.S.C. § 5567(a)(4). The Amended Complaint alleges facts establishing each element of this claim.

Contrary to Defendants' assertions, the Amended Complaint does not merely "parrot" the statutory language but is replete with facts establishing the elements of Plaintiff's claim.  As to the first element, a "covered employee" is an "individual performing tasks related to the offering or provision of a consumer financial product or service." 12 U.S.C. § 5567(b).  A "consumer financial product or service" is a "financial product or service that is offered or provided for use by consumers primarily for personal, family or household purposes" and fits at least one of eleven definitions of "financial product or service" in 12 U.S.C. § 5481(15)(A). 12 U.S.C. § 5481(5).  Under 12 U.S.C. § 5481(15)(A)(xi), the catch-all definition of Section 5481(15)(A), a "financial product or service" is any:

> other financial product or service as may be defined by [CFPB], by regulation, for purposes of this title, if the [CFPB] finds that such financial product or service is – (I) entered into or conducted as a subterfuge or with a purpose to evade any federal consumer financial law; or (II) permissible for a bank or financial holding company to offer or to provide under any provision of a Federal law or regulation applicable to a bank or a financial holding company, and has, or likely will have, a material impact on consumers.

12 U.S.C. § 5481(15)(A)(xi)(I), (II).

The Amended Complaint alleges that Defendants offered or provided CMBS', which are

21

fixed income securities collateralized by commercial real estate, to, among other clients, high net worth individuals for personal or family purposes. (Stulberg Ex. A [Am. Compl.] at ¶ 12, 15, 18). The CMBS' offered or provided to Defendants' high net worth clients for those purposes were exempt from securities' registration requirements and had or were likely to have a material impact on consumers. (Id. at ¶ 12, 15, 17-22, 24). Plaintiff researched and wrote reports about the CMBS' that Defendants offered or provided to high net worth individuals and families for individual or family purposes. (Id. at ¶ 15, 17-22). Defendants repeatedly pressured Plaintiff to skew his reports about the CMBS' offered or provided to high net worth individuals (as well as to other clients) so that the firm could manipulate its own trading positions regarding the CMBS. (Id.).

These allegations go well beyond "parroting" the statutory language in alleging that Plaintiff performed tasks regarding CMBS that meet the definition of consumer financial products or services in 12 U.S.C. § 5481(5) and (15)(A)(xi)(I),(II) and that he is a "covered employee" under § 5567(b). See e.g., Nick's Garage, Inc. v. Progressive Casualty Ins., CV No. 12-777, 2013 WL 718457 (N.D.N.Y. Feb 27, 2013)(rejecting contention that complaint "parroted" statutory language). For instance, contrary to Defendants' assertions, the allegations that Defendants were pressuring Plaintiff to skew his reports about products that were not covered by securities registration requirements and that the firm was offering to high net worth individual clients in order to improve the firm's own trading position demonstrate, by definition, the actual or likely "material impact" of CMBS' on consumers. (Stulberg Ex. A [Am. Compl.] at ¶ 12, 15, 18-22) Defendants' assertions that Plaintiff must identify the high net worth individual clients referenced in the Amended Complaint or the specific family or personal purposes for which the products were offered to those individuals are incorrect. While that level of granular

22

detail may be required in discovery, it is not required in order to defeat a motion to dismiss. See Arista Records, LLC v. DOE 3, 604 F.3d 110 (2d Cir. 201). Thus, Defendants' hyper-technical focus on the "or" in the allegation that high net worth clients used the CMBS' for personal "or" family use is entirely inappropriate.

Moreover, the plain language of § 5481(15)(A)(xi) does not, contrary to Defendants' motion, require Plaintiff to identify an existing regulation defining a financial product or service under § 5481(15)(A)(xi)(I), (II), in order to allege that he is a "covered employee," so long as he alleges facts showing that he performed tasks regarding products that are within the jurisdiction of the CFPB to define. The plain language of the phrase, "as may be defined by [the CFPB]…," in § 5481(15)(A)(xi)(I), (II) means, "as the CFPB 'is permitted to' define" by regulation. See The American Heritage College Dictionary 839 (3d Eds. 1993)(defining "may" as "to be allowed or permitted to."); Puello v. Bureau of Citizenship and Immigration Servs., 511 F.3d 324 (2d Cir. 2007)(statutory interpretation starts with common meaning of words). Thus, Section 15(A)(ix) includes such "financial product or service" that the CFPB is permitted to define.

This reading of Section 15(A)(xi) is consistent with other provisions of the CFPA. 12 U.S.C. § 5517(a) provides that the CFPB "may not exercise any rulemaking, supervisory, enforcement or other authority with respect to a person who is a merchant retailer, or seller of any nonfinancial good or service…" 12 U.S.C. § 5517(a)(1), (a)((2)(A). In that provision, "may not exercise" means, "is not permitted to exercise." To give the same effect to the same language in Section 15(A)(xi)(I)(II), "may" must mean "can" or is permitted to."

Defendants' interpretation of "as may be defined," in § 5481(15)(A)(xi), to mean "as is or has been defined," contradicts the plain language of the statute. Moreover, where Congress has intended to refer to an already-enacted definitional regulation, Congress has explicitly done so

23

with the past-tense phrase, "as defined by…" or "as determined by."[5]  By not using the terms, as

"is defined" or "defined" in Section 15(A)(xi), and by instead using the term, "as may be

defined," Congress meant, "as permitted to define."[6]

　　　In asserting that Plaintiff's interpretation will lead to a slippery slope, Defendants

misconstrue Plaintiff's argument.  Plaintiff does not contend that "as may be defined" means "as

might be defined."  Rather, Plaintiff contends that "as may be defined" means "as within the

CFPB's jurisdiction to define." As there are clear parameters of the CFPB's jurisdiction (see 12

U.S.C. §§ 5511-5538) – indeed, Defendants have argued here that CMBS' are outside that

jurisdiction –, Defendants' conclusory argument that, under Plaintiff's interpretation, virtually

anything would be a consumer financial product or service, fails.[7]

---

[5] See 7 U.S.C. § 913 ("'farm' means a farm, as defined by the Bureau of the Census"); 49 U.S.C. § 5303(e)(2)(B)("Each metropolitan planning area …may encompass the entire metropolitan statistical area or consolidated metropolitan statistical area, as defined by the Bureau of the Census") ; 49 U.S.C. § 47124 ("The Secretary of Transportation shall ensure that an agreement under this subchapter with a qualified entity (as determined by the Secretary)…" and that "The Secretary shall establish a program to contract for air traffic control services at nonapproach control towers, as defined by the Secretary,….").

[6] Defendants' cited cases, Nat'l Cable v. Telecommunications Ass'n, 545 U.S. 967 (2005) and Hamburg-American Line v. United States, 291 U.S. 420 (1934), are inapposite as they did not address the meaning "may be."

[7] The fact that the Securities and Exchange Commission ("SEC") regulates CMBS' does not exempt those "financial products" from CFPA coverage.  Only one of the eleven discrete definitions of "financial products and services in Section 5481(15)(A) explicitly excludes SEC-regulated acts when performed by SEC-regulated persons. That exclusion does not apply to § 5481(15)(A)(xi). While 12 U.S.C. § 5517(i)(l) preserves the SEC's authority to adopt rules, initiate enforcement proceedings and take other actions as to persons regulated by the SEC, it only limits the CFPB's *enforcement* powers regarding such persons *vis a vis* the SEC and expressly contemplates that products and services may fall within the jurisdiction of both by the SEC and the CFPB, and Section 5517(i)(2) provides that, "notwithstanding [§ 5517(i)(1),] the [SEC] shall consult and coordinate … with the [CFPB] with respect to any rule…*regarding an investment product or service that is the same type of product as,…a consumer financial product or service* that is *subject to the jurisdiction under this title or any other law*…."  (Emphasis added.). 12 U.S.C. § 5567(a)(4) covers protected activity regarding acts "reasonably believed to be in violation of any law, rule, order, standard, or prohibition subject to the jurisdiction of, *or* enforceable by the Bureau." "Or" means that the CFPA explicitly covers protected activity related to acts under the jurisdiction of, but not enforceable by, the CFPB.  The legislative history cited by Defendants is consistent with Plaintiff's argument.

As to "covered persons" (persons offering or providing a "consumer financial product or service," 12 U.S.C. § 5481(6)), Plaintiff establishes that Defendants offered or provided "consumer financial products" as defined in 12 U.S.C. § 5481(A)(15)(A)(xi), as described above, establish that Defendants are "covered persons."

As to a reasonable belief,  Plaintiff alleges many examples in which Defendants pressured him to produce skewed reports about the CMBS' offered by the firm to high net worth individuals in order to improve the firms' own financial positions.  (Stulberg Ex. A [Am. Compl.] at ¶ 12, 15, 17-22, 24).  The Amended Complaint alleges that Plaintiff reasonably believed such acts to violate a law within the CFPB's jurisdiction, namely,12 U.S.C. § 5536, which prohibits, inter alia, "deceptive, unfair, or abusive" acts by covered persons, and therefore objected to and refused to participate in those acts.[8]  (Id. at ¶ 24). The allegations describing Plaintiff's objections and Defendants' acts show that Plaintiff believed that Defendants' acts were deceptive, unfair and/or abusive and that such belief was reasonable. (Id. at ¶¶ 17-22, 24). As Defendants concede that Plaintiff has satisfied the other elements of his CFPA claim, the motion must be denied.

For the foregoing reasons, Defendants' motion should be entirely denied.

Dated: July 24, 2014
      New York, New York

BROACH & STULBERG, LLP
Attorneys for Plaintiff

By:_____
      Robert B. Stulberg
      Amy F. Shulman
One Penn Plaza, Ste. 2016
New York, New York 10119
(212) 268-1000

---

[8] 12 U.S.C. § 5536 prohibits a "covered person" from offering or providing to a consumer a financial product or service not in conformance with Federal consumer financial law, committing any act or omission that violates a Federal consumer financial law; or engaging in "in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(A), (B).