UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TREVOR MURRAY,

                Plaintiff,                 14 CV 927 (KPF)

     V.

UBS SECURITIES, LLC and UBS AG,

                Defendants.
------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN

## OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE

BROACH & STULBERG, LLP
*Attorneys for Plaintiff*
One Penn Plaza, Suite 2601
New York, New York 10119
(212) 268-1000
rstulberg@brostul.com

HERBST LAW PLLC
*Attorneys for Plaintiff*
420 Lexington Avenue, Suite 300
New York, New York 10170
(646) 543-2354
rherbst@herbstlawny.com

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

LEGAL STANDARD ..........................................................................................3

ARGUMENT........................................................................................................3

PExPOINT I   DEFENDANTS' MOTIONS TO EXCLUDE EVIDENCE
AND ARGUMENT CONCERNING PLAINTIFF'S
POTENTIAL REMEDIES — INCLUDING
REINSTATEMENT, FRONT PAY AND PUNITIVE
DAMAGES— MUST BE DENIED AS THAT
EVIDENCE IS RELEVANT TO PLAINTIFF'S
CLAIMS AND MUST BE ADMITTED ...................................3

A. The Remedies Sought by Plaintiff Are All Available
under SOX and thus Defendants' Motions to
Exclude Evidence Concerning Those
Remedies Are Improper.........................................................5

1. Evidence Concerning the Feasibility of
Reinstatement is Relevant to Plaintiff's
Remedies Claims and Should Be Admitted...........7

2. Evidence Concerning Plaintiff's Entitlement
to Front Pay is Relevant to His Remedies
Claims and Should Be Admitted...........................9

a. Front Pay is Legally Available to
SOX Plaintiffs.................................................10

b. Front Pay Includes All Elements of
Prospective Compensation, Including
Future Raises and Bonuses ..............................12

1. Defendants' Contention That Plaintiff's
Claim for Front Pay is "Unduly Speculative"
Is Inaccurate and Raises Issues of Fact for
Resolution at Trial, Not On a
Motion In Limine .........................................12

i.   Factual Disputes Concerning the
Plaintiff's Work History and Its
Significance to a Front Pay
Calculation ......................................13

ii.   Factual Disputes Concerning
      Plaintiff's Credentials and Prospects
      for Obtaining Comparable Alternative
      Employment......................................14

iii.  Factual Disputes Concerning UBS'
      Viability and the Availability
      of Alternative Positions
      for Plaintiff....................................15

iv.   Factual Disputes Concerning
      Prospective Raises and Bonuses....17

2. Plaintiff May Seek More Than Four Years
   of Front Pay as a Matter of Law,
   Notwithstanding His Age and
   Credentials......................................18

B.  Evidence Concerning Plaintiff's Entitlement to
    Punitive Damages Is Relevant Should be Admitted..........21

C.  A Jury Should Hear All Evidence Relating to
    Remedies and May Issue a Binding Verdict as
    to the remedies to Be Afforded Plaintiff..........................24

POINT II   UBS'S OSHA POSITION STATEMENT IS RELEVANT
           TO CLAIMS AND DEFENSES AND SHOULD
           BE ADMITTED AS A NON-HEARSAY ADMISSION
           AGAINST PARTY INTEREST.................................................27

POINT III  DEFENDANTS' MOTION TO EXCLUDE PURPORTEDLY
           INFLAMMATORY REFERENCES IS TOO SWEEPING
           IN SCOPE AND LACKS SUFFICIENT SPECIFICITY
           TO BE GRANTED IN LIMINE, AND SEEKS TO
           EXCLUDE RELEVANT EVIDENCE IMPLICATING
           SOX'S CORE REMEDIAL CONCERNS.............................29

CONCLUSION.......................................................................................31

# TABLE OF AUTHORITIES

**Federal Cases**

*Barati v. Metro-North R.R. Comuter R.R.* Co, 939 F.Supp.2d 143 (D. Conn. 2013)....................26

*Beckett v. Atlas Air, Inc,* 968 F.Supp. 814 (E.D.N.Y. 1997) .....................................................23, 24

*Blodgett v. Siemens Indus., Inc.*, 13 CV 3194,
2016 WL 42003490 (E.D.N.Y. Aug. 9, 2016) ..........................................................................16

*Bonura v. Chase Manhattan Bank, NA,*
629 F.Supp. 353 (S.D.N.Y. 1986) ............................................................................................20

*Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.,*
2002 WL 1059117 (S.D.N.Y. 2002)........................................................................................20

*Broadnax v. City of New York*, 141 Fed. Appx. 18 (2d Cir. 2005).........................................18

*Broadnax v., City of New York*, 415 F.3d 265 (2d Cir. 2005) ................................................26

*Chauffeurs, Teamsters and Helpers v. Terry*, 494 U.S. 558 (1990) .....................................25

*Chisolm v. Memorial Sloan-Kettering Cancer Ctr.*, 824 F.Supp2d 573 (S.D.N.Y. 2011)...........20

*Curns v. Wal-Mart Stores, Inc.*, 439 Fed. Appx. 51 (2d Cir. 2011) .......................................28

*Curtis v. Loether*, 415 U.S. 189 (1974) ...................................................................................25

*Deltek, Inc. v. Department of Labor, Admin. Review Bd.,*
649 Fed. Appx. 320 (4th Cir. 2016)..........................................................................7, 10, 11, 12

*Design Strategies, Inc. v. Davis*, 367 F.Supp.2d 630 (S.D.N.Y. 2005)........................................25

*Dominic v. Consolidated Edison Co.*, 822 F.2d 1249 (2d Cir. 1987)............................................26

*Donlin v. Philips Lighting North America Corp.,*
2007 WL 1238541 (M.D. Pa. April 26, 2007)..........................................................................18

*Donlin v. Philips Lighting North America Corp.*, 581 F.23d 73 (3d Cir. 2009) ..............12, 13, 18

*Gold Cross Ems., Inc. v. The Children's Hospital of Alabama*,
309 F.R.D. 699 (S.D. Ga. 2015) ................................................................................4

*Guyden v. Aetna, Inc.*, 544 F.3d 376 (2d Cir. 2008)...................................................6

*Halliburton, Inc. v. Administrative Review Bd.*, 771 F.3d 254 (5th Cir. 2014)...................7, 21

*Hemphill v. Celanese Corp.*, 2009 WL 2949757 (N.D. Tex. Sept. 14, 2009).........................11, 23

*Hill v. Airborne Freight Corp.*, 2003 WL 366641 (E.D.N.Y. 2003)...............................20

*Howell v. New Haven Bd. Of Educ.*, 2005 WL 2179582 (D. Conn. 2005) ......................20

*Jones v. SouthPeak Interactive Corp. of Delaware*,
986 F.Supp2d 680 (E.D. Va. 2013), *aff'd*, 777 F.3d 658 (4th Cir. 2105)................10, 13

*Lawson v. FMR LLC*, 134 S.Ct. 1158, 1161 (2014) .................................................5

*Leshinsky v. Telvent GIT, S.A.*, 873 F.Supp2d 582 (S.D.N.Y. 2012)...............................24

*Mahony v. KeySpan Corp.*, 04 CV 554 (SJ),
2007 WL 805813 (E.D.N.Y. 2007) ........................................................6, 16, 22

*Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120 (2d Cir. 2005).................................28

*McCorhill Pub., Inc.*, 90 B.R. 633 (S.D.N.Y. 1988) .............................................26

*Meyer Intellectual Props. Ltd v. Bodum, Inc.*,
690 F.3d 1354 (Fed. Cir. 2012) ..........................................................................4

*Mid-America Tablewares, Inc. v. Mogi Trading Co.*,
100 F.3d 1353 (7th Cir. 1996) ............................................................................4

*Murray v. TXU Corp.*, 2005 WL 1356444 (N.D. Tex. 2005).................................23

*National Union Fire Ins. Co. v. L.E. Myers Co. Group*,
937 F.Supp. 276 (S.D.N.Y. 1996) ..................................................................2, 29

*Okeke v. New York Presbyterian Hosp.*,
2017 WL 2484200 (S.D.N.Y. 2017).................................................................3

*Oliver v. Cole Gift Ctrs., Inc.*, 2000 WL 435436 (D. Conn. Feb. 17, 2000) ..................8

*Padilla v. Metro–North Commuter R.R.*, 92 F.3d 117 (2d Cir.1996).....................10, 18

*Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534 (2d Cir. 1992)..................................28

*Perez v. Progenics Pharmaceuticals, Inc.*,
204 F.Supp.3d 528 (2016) ....................................................................7, 8, 9, 10, 11, 12, 17, 19, 26

*Peterson v. Corrections Corp. of America*,
2015 WL 5672026 (N.D. Fla. 2015).........................................................................................4

*Press v. Concord Mortg. Corp.*, 2009 WL 6758998 (S.D.N.Y. 2009)........................................20

*Project Vote/Voting for Am. v. Long.*, 682 F.3d 331 (4th Cir. 2012) ........................................21

*Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170 (2d Cir. 1996) ...................................8, 9, 11

*Rhinehimer v. U.S. Bancorp Invs., Inc.*, 2013 WL 9235344 (E.D. Ky. 2013) ............................23

*Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F.Supp.2d 141 (S.D.N.Y. 2013)...............22

*Schmidt v. Levi Strauss & Co.*, 621 F.Supp.2d 796 (N.D. Cal. 2008)........................................27

*Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169 (2d Cir.2011) ...............................................7

*Sharkey v. J.P. Morgan Chase & Co.*,
2017 WL 374735 (S.D.N.Y. Jan. 26, 2017) ...........................................................10, 12, 17, 26

*Shorter v. Hartford Fin Servs. Grp., Inc.*,
2005 WL 2234507 (D. Conn. May 31, 2005)..........................................................................20

*Skidmore v. ACI Worldwide, Inc.*, 2010 WL 2900113 (D. Neb. 2010)........................................27

*Storm v. ITW Inset Molded Prods.*, 400 F.Supp.2d 443 (D. Conn. 2005)..................................22

*Thomas v. iStar Financial, Inc.*, 508 F.Supp.2d 252, 258 (S.D.N.Y. 2007) ..............................20

*Thomas v. Metropolitan District Comm'n*, 2004 WL 2549728.................................................28

*Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1989) ...............................................18

*United States v. Canada*, 110 F.3d 260 (5th Cir. 1997) .........................................................21

*United States v. Pacelli*, 491 F.2d 1108 (2d Cir. 1974)..........................................................28

*United States v. Paredes*, 176 F.Supp.2d 179 (S.D.N.Y.2001) ................................................3

*Van Asdale v. Int'l Game Tech.*, 2010 WL 1490349 (D.Nev. Apr.13, 2010) ................................ 27

*Vera v. Alstom Power, Inc.*, 189 F.Supp.3d 360 (D. Conn. 2016) ................................................ 12

*Wadler v. Bio-rad Laboratories, inc.*, 2017 WL 1910057 (N.D. Cal. 2017) ............................... 23

*Walton v. Nova Information Sys.*, 514 F.Supp.2d 1031 (E.D. Tenn. 2007) ........................... 23, 27

*Wechsler v. Hunt Health Sys., Ltd.*, 381 F.Supp.2d 135 (S.D.N.Y. 2003) ................................... 3

*Whittlesey v. Union Carbide Corp.*, 742 F.2d 724 (1984) ................................ 8, 9, 10, 11, 13

*Whittlesey v. Union Carbide, Inc.*, 1983 WL 652 (S.D.N.Y. Oct. 12, 1983) ............................... 19

*Xu-Shen Zhou v. State Univ. of N.Y. Inst. Of Tech.*,
4 F.SUpp.3d 404 (N.D.N.Y. 2014) ............................................................................................. 20

## Federal Statutes

Fed. R. Civ. P. 39(c)(2) ............................................................................................................... 27

Fed. R. Civ. P. 801(d)(2) ........................................................................................................ 2, 28

Fed. R. Evid. 401 ........................................................................................................................... 3

Fed. R. Evid. 402 ........................................................................................................................... 3

15 U.S.C. § 78u-6 et seq. ............................................................................................................ 22

18 U.S.C. § 1514A(b)(1)(B) .................................................................................................. 7, 25

18 U.S.C. § 1514A(b)(2)(E) ....................................................................................................... 25

18 U.S.C. § 1514A(c)(1) ........................................................................................................ 6, 10

18 U.S.C. § 1514A(c)(2) ............................................................................................................... 6

29 U.S.C. § 626(b) ...................................................................................................................... 27

42 U.S.C. § 200e-5(g) ................................................................................................................. 26

iv

**Miscellaneous**

*Sylvester v. Parexel Int'l LLC*, ARB Case No. 07-123 (May 25, 2011) ...........................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TREVOR MURRAY,

                    Plaintiff,                  14 CV 927 (KPF)

         V.

UBS SECURITIES, LLC and UBS AG,

                    Defendants.
-----------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE[1]

### INTRODUCTION

Plaintiff Trevor Murray ("Plaintiff" or "Mr. Murray") hereby submits this Memorandum of Law in opposition to *Motions in Limine* filed by UBS Securities, LLC and UBS AG ("UBS or Defendants") to: (1) exclude argument and evidence on reinstatement (Dkt. # 185; Memorandum of Law Filed Under Seal); (2) exclude argument and evidence relating to certain claims for monetary damages (Dkt. # 184; Memorandum of Law filed Under Seal); (3) exclude Defendants' OSHA position statement (Dkt. # 179 and #180); and (4) exclude references to purportedly "inflammatory" subjects such as UBS' status as a "Wall Street bank," the role that certain Mortgage Backed Securities played in the 2008-09 financial crisis, and other miscellaneous topics UBS alleges to be inadmissible, inflammatory, and unfairly prejudicial (Dkt. # 181 and #182).

---

[1] Pursuant to this Court's November 7, 2017 Order, the Plaintiff submits this Memorandum of Law in opposition to Defendants' four motions in limine filed on November 6, 2017. Accordingly, it complies with this Court's page limitation for briefs filed in opposition to motions.

Defendants' Motions in Limine must be denied.  Defendants' motions to exclude evidence relating to reinstatement, front pay (including prospective promotions, pay increases and bonuses) and punitive damages based on their purported unavailability must be denied as an improper attempt to use *motions in limine* to dismiss claims and obtain resolution of disputed facts before trial.  These remedies are available as a matter of law, and Defendants' conclusory and speculative assertions regarding disputed facts have no bearing on a *motion in limine*. Evidence probative of factual disputes regarding Plaintiff's entitlement to reinstatement, monetary damages, and punitive damages must be admitted.

Defendants' motion to exclude their November 5, 2012 position statement in the Occupational Safety and Health Administration ("OSHA") proceeding must be denied because that document is directly relevant to Plaintiff's claims and is admissible as a non-hearsay party admission against interest under Fed. R. Civ. P. 801(d)(2).

Finally, Defendants' motion to exclude evidence regarding UBS's status as an investment bank and other miscellaneous references must be denied.  Among other reasons, Defendants' status as an investment bank subject to SOX and securities regulations, the structure and responsibilities of the relevant divisions, units, and personnel at issue, and Plaintiff's career and credentials in investment banking, and his inability to find comparable work in investment banking since his termination are all critical issues in this case, and Plaintiff is entitled to introduce evidence as to all of these topics.  Moreover, Defendants' *motion in limine* seeking to exclude reference to investment banking/Wall Street and other related topics "lacks the necessary specificity with respect to the evidence to be excluded" and is "too sweeping in scope to be decided *in limine*." *National Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F.Supp. 276, 287 (S.D.N.Y. 1996).

2

## LEGAL STANDARD

Pursuant to Fed. R. Evid. 402, all relevant evidence is admissible.  See Fed. R. Evid. 402.

"Relevant evidence" means evidence having "any tendency to make the existence of any fact that

is of consequence to the determination of the action more or less probable than it would be

without the evidence.'" Fed. R. Evid. 401.  "Evidence should be excluded on a *motion in limine*

only when the evidence is clearly inadmissible on all potential grounds." *United States v.*

*Paredes*, 176 F.Supp.2d 179, 181 (S.D.N.Y.2001).   Defendants' motions must be denied

because the evidence that they seek to exclude is admissible.

## ARGUMENT

## POINT I

### DEFENDANTS' MOTIONS TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING PLAINTIFF'S POTENTIAL REMEDIES — INCLUDING REINSTATEMENT, FRONT PAY AND PUNITIVE DAMAGES— MUST BE DENIED AS THAT EVIDENCE IS RELEVANT TO PLAINTIFF'S CLAIMS AND MUST BE ADMITTED

Defendants' motion in limine to exclude evidence concerning Plaintiff's damages,

including reinstatement, front pay and punitive damages, must be denied.

A *motion in limine* is an *evidentiary* motion, and its only purpose is to determine whether

challenged evidence is *admissible*. *See Okeke v. New York Presbyterian Hosp.*, 2017 WL

2484200, at *1 (S.D.N.Y. 2017) (citation omitted) ("The purpose of a *motion in limine* is to

allow the trial court to rule in advance of trial on the admissibility and relevance of certain

forecasted evidence, not to rule on the merits of a claim or defense.  It is not a substitute for a

summary judgment motion").   Parties may not use *motions in limine* to dismiss claims, disguise

motions for summary judgment, or otherwise obtain resolution of disputed facts before

admissible evidence has been presented at trial. *Wechsler v. Hunt Health Sys., Ltd.*, 381

3

F.Supp.2d 135, 140 (S.D.N.Y. 2003) (the purpose of a *motion in limine* is to determine whether challenged evidence may be presented to the trier of fact; it is only after admissibility is decided that the trier of fact considers the weight and sufficiency of the evidence); *Gold Cross Ems., Inc. v. The Children's Hospital of Alabama*, 309 F.R.D. 699, 702 (S.D. Ga. 2015) ("[T]he Federal Rules of Civil Procedure contain multiple rules allowing parties to dismiss claims; there is no need to disguise a motion for summary judgment in the clothing of a *motion in limine*").

Thus, where parties attempt to use *motion in limine* to exclude evidence relating to claims for monetary damages or other remedies based on their purported unavailability, courts have denied the motions as an inappropriate effort to dismiss claims. *See Peterson v. Corrections Corp. of America*, 2015 WL 5672026, at * 2 (N.D. Fla. 2015) (denying a *motion in limine* seeking to exclude evidence relating to punitive damages based on their purported unavailability, because the "request is not an evidentiary *motion in limine* . . . [but] rather . . . a fact-dependent motion for summary judgment on the issue of punitive damages"); *Gold Cross Ems., Inc.*, 309 F.R.D. at 702 (denying *motions in limine* seeking to exclude evidence relating to claims for attorney's fees and expenses, because the request goes to the merits of the claims, rather than the admissibility of evidence); *see also Meyer Intellectual Props. Ltd v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012) ("Because we conclude that it was procedurally improper for the court to dispose of [defendant's] inequitable conduct defense on *a motion in limine*, we reverse the courts' decision and remand for further proceedings"); *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (finding that while argument regarding the sufficiency of the evidence "might be a proper argument for summary judgment or judgment as a matter of law, it is not a proper basis for a motion to exclude evidence prior to trial.")

4

Defendants' motions to exclude evidence relating to reinstatement, front pay (including prospective promotions, pay increases and bonuses) and punitive damages based on their purported unavailability should be dismissed as an inappropriate effort to use *motions in limine* to dismiss claims and obtain resolution of disputed facts before trial. These remedies are available as a matter of law, and while Defendants expend much energy urging the Court to adopt their version of disputed facts, the accuracy of Defendants' account of disputed facts has no bearing on a *motion in limine*. Evidence probative of factual disputes on which Plaintiff's entitlement to reinstatement and monetary and punitive damages turns should be admitted. These disputed factual issues include, as to reinstatement and punitive damages: (1) the availability of an equivalent job to which Plaintiff can be reinstated; (2) whether the relationship between the parties is irreparably damaged; (3) the length of time Plaintiff likely would have remained employed at UBS or in comparable alternative employment but for the Defendants' wrongful conduct; and (4) the amount and type of relief necessary to make Plaintiff whole. Moreover, Plaintiff is entitled to a binding jury verdict on these claims, as well as claims for back pay.

### A. The Remedies Sought by Plaintiff Are All Available under SOX and thus Defendants' Motions to Exclude Evidence Concerning Those Remedies Are Improper.

The Sarbanes-Oxley Act of 2002 ("SOX") is a remedial statute enacted after the Enron scandal to "restore trust in the financial markets." *Lawson v. FMR LLC*, 134 S.Ct. 1158, 1161 (2014) Congress intended that SOX would "prevent and punish corporate and criminal fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions." *Id.* at 1162 (2014) (Congress was particularly concerned by "abundant evidence," that "Enron had succeeded in perpetuating its massive shareholder fraud in

large part due to a 'corporate code of silence,'" in which whistleblowers were discouraged from

reporting fraudulent behavior, and punished when they did) (citing S.Rep. No. 107–146, p. 2

(2002)); *see also Sylvester v. Parexel Int'l LLC*, ARB Case No. 07-123, p.8 (May 25, 2011)

(SOX's "whistleblower protections were included in response to 'a culture, supported by law,

that discourage(s) employees from reporting fraudulent behavior not only to the proper

authorities… but even internally.  This 'corporate code of silence' not only hampers

investigations, but also creates a climate where ongoing wrongdoing can occur with virtual

impunity.' S. Rep. No. 107-146, at 5 (2002)).

In order to effectuate its remedial purposes, SOX contains a robust remedies provision

intended to "provide a strong compensatory mechanism for employees subjected to adverse

employment action as a result of their whistleblowing conduct." *Guyden v. Aetna, Inc.*, 544 F.3d

376, 384 (2d Cir. 2008).  A whistleblower prevailing in an action under SOX "shall be entitled to

all relief necessary to make the employee whole."  18 U.S.C. § 1514A(c)(1).  The Act

enumerates a "non-exhaustive" list of some categories of damages that are available to prevailing

plaintiffs as "Compensatory damages":

> Compensatory damages. Relief for any action under paragraph (1)
> shall include—
>
>     (A) reinstatement with the same seniority status that the
>         employee would have had, but for the discrimination;
>
>     (B) the amount of back pay, with interest; and
>
>     (C) compensation for any special damages sustained as a result of the
>         discrimination, including litigation costs, expert witness fees, and
>         reasonable attorney fees.

18 U.S.C. § 1514A(c)(2)(A)-(C); *see Mahony v. KeySpan Corp.*, 2007 WL 805813, at *7

(E.D.N.Y. 2007) (finding that § 1514A(c)(2)(C) provides "an illustrative list of the types of

special damages that may be recovered rather than an exhaustive list"); *see also Halliburton, Inc. v. Administrative Review Bd.*, 771 F.3d 254, 263 (5th Cir. 2014) ("we read the word 'include' in § 1514A(c)(2) . . . to indicate that the three forms of relief listed as included (reinstatement, back pay, and certain 'special damages') are non-exhaustive. . . . If we were to hold otherwise, that is, to hold that SOX affords nothing beyond the three forms of relief enumerated in § 1514A(c)(2), we would in effect be reading § 1514A(c)(1) out of the statute"). SOX further confirms that a whistleblower alleging discharge may seek both legal and equitable relief. *See* 18 U.S.C. § 1514A(b)(1)(B) ("A person who alleges discharge . . . may seek relief . . . by . . . bringing an action at law or equity"); *Halliburton, Inc.*, 771 F.3d at 265 (SOX plainly affords at least some damages, that is legal relief, in addition to equitable remedies").

### 1. Evidence Concerning the Feasibility of Reinstatement is Relevant to Plaintiff's Remedies Claims and Should Be Admitted

SOX explicitly provides for reinstatement as one of "[c]ompensatory damages" remedies available to a prevailing whistleblower. Indeed, this Circuit "favors reinstatement as a remedy in employment cases generally." *See Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 193 (2d Cir.2011); *see also Deltek, Inc. v. Department of Labor, Admin. Review Bd.*, 649 Fed. Appx. 320, 333 (4th Cir. 2016) ("reinstatement rather than front pay is the presumptive and preferred remedy for unlawful discharge in [SOX] whistleblower cases") (internal quotations omitted).

In deciding whether to grant reinstatement to a prevailing SOX plaintiff, the district court considers whether reinstatement is "feasible." *Perez v. Progenics Pharmaceuticals, Inc.*, 204 F.Supp.3d 528, 550-51 (2016). This analysis takes into account a variety of fact-specific considerations, including whether: (1) the Plaintiff's position still exists; (2) the Plaintiff's skills make him a match for a comparable alternative job with the employer; and (3) there is such a degree of animosity between the Plaintiff and Defendant that reinstatement is impossible. *Id.*

(finding that reinstatement is not a feasible remedy for a SOX plaintiff because "manifest hostility exists" between the plaintiff and the defendant); *see also Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 182 (2d Cir. 1996) (refusing to order reinstatement for a Title VII plaintiff "because the antagonism between the parties would make reinstatement inappropriate"); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (1984) (refusing to order reinstatement for a Title VII plaintiff where the employer-employee relationship is "irreparably damaged by animosity associated with the litigation").

Defendants do not dispute that SOX provides for reinstatement as a remedy. Rather, they assert that reinstatement is "not available at all in this case because the position no longer exists and the parties' relationship is 'irreparably damaged.'" Def. Mem. of Law In Supp. Of Mot. In Lim. To Exclude Arg. And Evid. On Reinstatement ("Reinstatement Mem.") at 1. Based on this assertion, they claim that evidence relating to reinstatement is irrelevant, and thus, inadmissible. *See* Reinstatement Mem. at 1, 3-5.

First, insofar as the Defendants contend that reinstatement is unavailable because the specific Commercial Backed Mortgage Security Strategist position which Plaintiff held before discharge no longer exists, they misunderstand the law. *See* Reinstatement Mem. at 3. An employee seeking reinstatement need not be reinstated to *the exact* position which he occupied before the unlawful termination. Rather, the reinstatement analysis considers whether there is *any* comparable position available. *See Whittlesey*, 742 F.2d at 728 (reinstatement may be infeasible if there is "no position" available, not the exact position); *Perez*, 204 F.Supp.3d at 550 (considering competing evidence as to whether there were other positions for which plaintiff "would be a match"); *Oliver v. Cole Gift Ctrs., Inc.*, 2000 WL 435436, at *6 (D. Conn. Feb. 17,

2000) (considering availability of "equivalent positions" in making reinstatement determination). Thus, if there is a comparable position available, reinstatement may be feasible.

More importantly, however, the availability of a comparable position to which the Plaintiff might be reinstated is a disputed factual question, as is the question of whether the parties' relationship is so "irreparably damaged" that reinstatement is impossible. These issues, on which the Defendants base their request for exclusion, are not appropriate for resolution in this evidentiary *motion in limine*. Indeed, as discussed in Plaintiff's memorandum in opposition to Defendants' motion for summary judgment and Plaintiff's Local Civil Rule 56.1 Counter-Statement of Facts, Plaintiff has repeatedly contended in this case that Defendants attempted to fill Plaintiff's former position very shortly after they unlawfully terminated him.

In addition, insofar as courts must first find that reinstatement is impossible before entertaining a claim for front pay, Defendants' improper attempt to exclude evidence relating to the feasibility of reinstatement improperly threatens Plaintiff's available front pay claim. *See, e.g., Perez*, 204 F.Supp.3d at 551 (the court will analyze whether front pay is appropriate after determining that reinstatement is not feasible); *Reed*, 95 F.3d at 1182 (front pay is awarded where reinstatement is appropriate and the plaintiff has been unable to find another job); *Whittlesey*, 742 F.2d at 728 (front pay may be necessary if reinstatement is denied).

### 2. Evidence Concerning Plaintiff's Entitlement to Front Pay Is Relevant to his Remedies' Claims and Should Be Admitted

Defendants move to exclude all evidence concerning Plaintiff's entitlement to more than four years of front pay, and any evidence of prospective raises or bonuses to be included in a front pay award. The basis for their motion is their assertion that front pay beyond four years, and lost compensation in the form of prospective wages and bonuses, are "legally unavailable." *See* Defendants' Memorandum of Law Relating to Monetary Damages ("Damages Mem.") at 1,

6, 8-18.  But as is true of their motion in limine seeking to exclude evidence relating to reinstatement, Defendants conflate arguments as to weight and sufficiency with arguments as to admissibility.  Whether Plaintiff is entitled to front pay beyond four years, and how that front pay is calculated, turns on disputed issues of fact, which must be resolved by a factfinder at trial, on a full evidentiary record.  *See Padilla v. Metro–North Commuter R.R.*, 92 F.3d 117, 125–26 (2d Cir.1996) ("A front pay award serves a necessary role in making victims of discrimination whole in cases where *the factfinder can reasonably predict* that the plaintiff has no reasonable prospect of obtaining comparable alternative employment") (emphasis added); *Whittlesey*, 742 F.2d at 728 (*the factfinder* determines what constitutes a reasonable front pay award if reinstatement is inappropriate) (emphasis added).

### a.    Front Pay is Legally Available to SOX Plaintiffs

Although SOX does not expressly mention front pay as one of the enumerated compensatory remedies available to a prevailing whistleblower under the Act, given the remedial purpose of the Act and the Congressional imperative that a prevailing whistleblower "shall be entitled to all relief necessary to make the employee whole," 18 U.S.C. § 1514A(c)(1), courts in this jurisdiction, and elsewhere, routinely have found that front pay is legally available to prevailing SOX whistleblowers.  *See Sharkey v. J.P. Morgan Chase & Co.*, 2017 WL 374735, at * 3 (S.D.N.Y. Jan. 26, 2017) (recognizing the availability of front pay as a remedy in SOX cases); *Perez*, 204 F.Supp.3d at 551 (awarding a SOX plaintiff front pay to make him "whole" where reinstatement is not feasible); *see also Deltek, Inc.,* 649 Fed. Appx. 320, 333 (4th Cir. 2016) (front pay is available to SOX plaintiffs); *Jones v. SouthPeak Interactive Corp. of*

*Delaware*, 986 F.Supp.2d 680, 683 (E.D. Va. 2013) (same)[2]. Indeed, the purpose of a front pay

award is "to place the complainant in the identical financial position the she would have

occupied had she remained employed or been reinstated." *See Deltek, Inc.,* 649 Fed. Appx. at

333.

  A trier of fact may order front pay upon a finding that reinstatement is not appropriate,

and "[t]he plaintiff has no reasonable prospect of obtaining comparable alternative employment."

*Perez*, 204 F.Supp.3d at 551 (quoting Reed, 204 F.Supp.3d at 551. In calculating the amount of

front pay necessary to make a plaintiff whole, a trier of fact must take into account the

compensation necessary to place the plaintiff in the position he would have occupied absent the

discharge, and "'assume, absent evidence to the contrary, that the illegally discharged employee

would have continued working for the employer until he or she reached normal retirement age.'"

*Perez*, 204 F.Supp.3d at 551 (quoting *Whittlesey*, 742 F.2d at 727). These questions require a

factfinder to determine what is reasonable under the circumstances, and thus, to resolve often

disputed issues of fact as to an employee's work and life expectancy, mitigation efforts,

prospects for obtaining other comparable employment, and calculation of expected future

compensation. *Id.; see also Reed*, 95 F.3d at 1182. If the trier of fact concludes that "Plaintiff

has made a good-faith effort to mitigate his damages . . . and that his prospects for future

employment are unpromising in part due to defendant's violations of his rights," then an award

of front pay is appropriate, and the factfinder must resolve disputed issues of fact to determine a

reasonable calculation for lost future earnings. *See Perez*, 204 F.Supp.3d at 551.

---

[2] Defendants' reliance on an unpublished decision from the United States District Court for the
Northern District of Texas, *Hemphill v. Celanese Corp.*, 2009 WL 2949757, at * 5 (N.D. Tex.
Sept. 14, 2009), is misplaced. That decision is contrary to the decisions of this district, the Fourth
Circuit Court of Appeals, and the language of SOX.

b.   **Front Pay Includes All Elements of Prospective Compensation, Including Future Raises and Bonuses**

Since front pay is a "make whole" remedy, designed to place the complainant in the identical financial position he would have been in had he not been discharged, *see Deltek, Inc.*, 649 Fed. Appx. at 333, the calculation of a plaintiff's front pay, or for that matter, his backpay, necessarily includes any raises or bonuses that he would have received had he not been discharged. *See Perez*, 204 F.Supp.3d at 552 (a front pay award takes into account "expected earnings," and thus, may factor in "raises commensurate with previous pay increases"); *see also Sharkey*, 2017 WL 374735 at * 3 ("speculative bonuses, benefits, or salary increases" are relevant to a calculation of lost compensation, and a SOX plaintiff "may make any claims for back pay and may try to convince the jury that she is deserving of these additional categories of back pay"); *see also Vera v. Alstom Power, Inc.*, 189 F.Supp.3d 360, 377 (D. Conn. 2016) (a back pay award should consist of "lost salary, including anticipated raises, and fringe benefits") (quoting *Saulpaugh v. Monroe Comm. Hosp.*, 4 F.3d 134, 145 (2d Cir 1993).

1.   **Defendants' Contention That Plaintiff's Claim for Front Pay is "Unduly Speculative" Is Inaccurate and Raises Issues of Fact for Resolution at Trial, Not on a Motion In Limine**

Defendants' seek to exclude argument and evidence for more than four years of front pay and contend that "there is no credible basis for establishing that Plaintiff would have received any bonus or raise had he remained at UBS" and, thus, inclusion of prospective bonuses and raises in a calculation of lost future compensation is "unduly speculative." Damages Mem. At 8-9, 15-16. Each of these arguments, however, turns on disputed factual questions.

First, as a matter of law, a front pay award "necessarily implicates a prediction about the future," and therefore, courts "will not refuse to award front pay merely because some prediction is necessary." *Donlin v. Philips Lighting North America Corp.*, 581 F.23d 73, 87 (3d Cir. 2009);

*Whittlesey*, 742 F.3d at 728 (the fact that an award of future damages carries some risk of uncertainty is not a basis for precluding a front pay award); *see also Deltek, Inc.*, 649 Fed. Appx. at 334 (as is always the case when calculating front pay in a SOX case, some speculation about future earnings is necessary); *Jones*, 986 F.Supp.2d at 686 (the calculation of front pay is "an inherently speculative venture," and an appropriate calculation requires consideration of an evidentiary record).

The calculation of appropriate front pay is necessarily fact-specific. "Indeed, in one case, a front-pay award of X years may be appropriate, while on different facts, a front-pay award for that same term of years would be inappropriate." *Donlin*, 581 F.3d at 88. It is for the trier of fact to weigh the evidence and make a determination based on facts in the record. *Id.*; *Whittlesey*, 742 F.3d at 728. Here, the Defendants ask the Court to preempt this process by making premature factual determinations as to what measure of front pay is reasonable under the circumstances. A *motion in limine* is not an appropriate vehicle for such a request.

The factual assertions on which the Defendants base their argument for capping front pay at four years will be contradicted at trial, and illustrate the many factual disputes which must be resolved by a trier of fact before a determination can be made as to the appropriate measure of front pay necessary to make the Plaintiff whole.

### i.   Factual Disputes Concerning the Plaintiff's Work History and Its Significance to a Front Pay Calculation

For example, Defendants claim that Plaintiff should be precluded from seeking more than four years of front pay because "it is unreasonable to assume that he would have kept his job at UBS for more than a few years." Damages Mem. at 8, 13-14. If permitted to introduce evidence at trial relating to front pay, however, the Plaintiff would demonstrate that, contrary to the

Defendants' suggestion that the Plaintiff work history suggests transience and instability, it actually proves that, prior to his discharge for blowing the whistle on UBS, he was a star on the rise, very well-regarded in his field, and actively and regularly sought out by major financial institutions.

Plaintiff would testify to the following facts: He worked at ███████████ after graduate school and left only because he was recruited to a better position at ███████ He left ██████████ when he was recruited by UBS. When he was laid off by UBS, he promptly found a new position at CapRok Capital. Soon thereafter, UBS recruited him again, to serve in their expanding CMBS business. Plaintiff anticipated remaining at UBS for the rest of his career, and had to seek new employment only after UBS discharged him for whistleblower activity. Pl. Depo. Tr., 45-56. To the extent that Defendants cite Plaintiff's work at ████████ ████ and ████████████ to argue that he would not have remained at UBS, he held these jobs *after* UBS discharged him. Neither job was a comparable alternative to his work at UBS, and entailed substantially diminished compensation and professional responsibility. Thus, insofar as the Defendants argue that front pay is unduly speculative beyond four years because the Plaintiff changed jobs frequently, those facts are disputed, and Plaintiff should be permitted to present evidence at trial contradicting Defendants' defense.

### ii.   Factual Disputes Concerning Plaintiff's Credentials and Prospects for Obtaining Comparable Alternative Employment

Defendants claim that it is unreasonable to conclude that Plaintiff has "no reasonable prospect" of finding comparable alternative employment, and thus, front pay beyond four years is unduly speculative, because "he has already obtained two separate jobs in finance since leaving UBS," is only 46 years old, and is and is otherwise well-credentialed. Damages Mem. at 10. At trial, however, Plaintiff will present evidence establishing that the two jobs he has held in

14

finance since UBS terminated him are not comparable to his prior employment with UBS. *See,* Dkt. #. 127 at Ex. 120; Dkt. # 147 at 32-33. Indeed, in denying Defendants' Motion for Summary Judgment, the Court has already found that there are issues to be tried to the jury concerning the comparability of Plaintiff's post-termination employment. Dkt. # 147 at 32 -33.

Plaintiff will also show that, in contrast to the range of professional opportunities available to him before he became a whistleblower, his career options in the financial services industry have evaporated since he became a known whistleblower. As detailed above, top financial institutions regularly recruited Plaintiff before his discharge from UBS, and each new position reflected steady career progression. Plaintiff's career path, now, however, has reached a dead end. Any prospective employer who performs an internet search for Plaintiff's name learns immediately of Plaintiff's whistleblowing, and that he has sued UBS. Thus, Plaintiff's age and the fact that he is well-credentialed do not overcome the negative impact that his unlawful termination and resultant lawsuit have had on his career.

### iii.   Factual Disputes Concerning UBS' Viability and the Availability of Alternative Positions for Plaintiff

Defendants argue that that it is unreasonable to assume that Plaintiff would have remained at UBS for long, because "the frequency of job shifts in the financial industry, and the likelihood of restructuring and layoffs" would have eliminated his job anyway. Damages Mem. at 8. They claim that UBS, and its Fixed Income division, have experienced reduced headcount since Plaintiff's termination, and that this precludes awarding front pay beyond four years.

First, Defendants' assertions, on their face, are speculative, conclusory, and unmoored from any substantiated connection to Plaintiff's employment. For that reason alone, they should be rejected.

Second, as the Plaintiff has argued in his own *motion in limine* seeking to exclude evidence concerning unrelated reductions in force, reductions in force or lay-offs that are not related to a plaintiff's termination are not relevant. *Blodgett v. Siemens Indus., Inc.*, 13 CV 3194, 2016 WL 42003490 (E.D.N.Y. Aug. 9, 2016); *see also Mahony v. Keyspan Corp.,* 04 CV 554 (SJ), 2007 WL 805813, *7 (E.D.N.Y. Mar. 12, 2007)(denying summary judgment in a SOX case where the defendant made generalized assertions of a company-wide downsizing, without any indicia of the relevance to the plaintiff's position). Here, Defendants argue that there were reductions in force in 2012 and 2013 "in the Investment bank as a whole, and in the FICC in particular." Damages Mem. at 12. Lay-offs that occurred after February 6, 2012, however, are, by definition, not related to Plaintiff's termination because Plaintiff already had been terminated by the time such lay-offs occurred. Id. Such lay-offs are thus not relevant or probative of (a) whether Plaintiff's protected activity was a contributing factor in his termination, (b) whether Defendants can show by clear and convincing evidence that they would have terminated Plaintiff's employment on February 6, 2012 in the absence of that protected activity, or (c) whether Defendants would have terminated Plaintiff at some subsequent time for reasons other than his whistleblowing in an unrelated reduction in force.[3]

Moreover, Plaintiff will present evidence at trial contradicting UBS' suggestion that its business has contracted. Damages Mem. at 11-13. In fact, as Plaintiff would show, UBS is

---

[3] Moreover, Defendants' attempts to rely on purported post-2013 events must be rejected. First, during discovery, Defendants refused to produce discovery in this action for the period beyond 2013. Having done so, Defendants cannot now rely on post-2013 events in support of any of their arguments. Indeed, even when Plaintiff asked Defendants whether they would supplement their discovery requests, Defendants contended that they had no supplementary materials. Second, Defendants' mischaracterize that post-2013 information. Among other things, contrary to Defendants' assertions, as of October 2015, there were ▮▮▮▮▮ persons working in the Real Estate Finance Group on CMBS ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 129-1 at ¶ 666).

doing well financially, and the CBMS unit in which the Plaintiff worked still exists.  Defendants'

conclusory reliance on the purportedly "fickle" nature of the financial services industry to avoid

paying front pay is non-specific to either UBS, or any position the Plaintiff would hold at UBS

but for his discharge.  Damages Mem. at 11-12.  Defendants' argument, if accepted, would

essentially mean that no person who worked in the financial services industry could pursue a

claim for front-pay at all or for more than four years.  That absurd proposition is contrary to the

purpose of SOX, which seeks to make whole victims of retaliation who work for employers in

the financial services industry and are covered by SOX.  Accordingly, Plaintiff should be entitled

to present evidence rebutting Defendants' assertion that his front pay should be limited to four

years.

       **iv.**      **Factual Disputes Concerning Prospective Raises and Bonuses**

UBS argues that Plaintiff should be precluded from presenting evidence concerning

prospective bonuses and raises because "there is no credible basis for establishing that Plaintiff

would have received any bonus or raise had he remained at UBS."  Damages Mem. at 15-18.

Defendants' basis for this claim is their representation that bonuses and raises are

"discretionary."  Damages Mem. at 16-17.  This argument should be soundly rejected.

First, the question of how bonuses and raises are paid is appropriately the subject for factual

determination on a record.  Similarly, whether bonuses and raises are discretionary is a different

question from whether Plaintiff would have received bonuses and raises had he remained at

UBS.  This, too, can only be determined based on an evidentiary record.   Any bonus or raise that

the Plaintiff would have received is a component of his future compensation, and thus, relevant

to an assessment of front pay. *See Sharkey*, 2017 WL 374735, at *3; *Perez*, 204 F.Supp.3d at

552.   The Plaintiff should be entitled to present evidence establishing that he would have received bonuses and raises had he remained at UBS.

### 2.   Plaintiff May Seek More Than Four Years of Front Pay as a Matter of Law, Notwithstanding His Age and Credentials

Contrary to Defendants' argument, while the amount of front pay to which Plaintiff is entitled is reserved for fact-finding at trial, as a matter of law, the Plaintiff may seek more than four years of front pay, and his age and career background do not preclude him from seeking such an award.   Indeed, if the factfinder determines that a plaintiff will be unable to find work at a salary level commensurate with his or her prior employment, it may award front pay well in excess of twenty years, through retirement, in order to make the plaintiff whole, notwithstanding that the plaintiff is in his forties at the time of trial.   *See Broadnax v. City of New York*, 141 Fed. Appx. 18, 22-23 (2d Cir. 2005) (awarding a 42-year old firefighter front pay through retirement where the factfinder concluded that she would not be able to "find work at a salary level commensurate with her pre-termination salary"); *see Padilla v. Metro-North Commuter R.R.*, 92 F.3d 117, 125-26 (2d Cir. 1996) (awarding a train dispatcher in his forties well in excess of twenty years of front pay where "the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable employment," and where such an award is necessary to effectuate a make whole remedy); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir. 1989) (affirming 17 years of front pay, through retirement, for a 48 year old salesman where the jury weighed "possible future earnings from other employment, and expected worklife"); *see also Donlin*, 581 F.3d at 88 (affirming a front pay award of ten years, despite the fact that the employee was 40 years old at the time of trial and had been hired as a temporary employee); *Donlin v. Philips Lighting North America Corp.*, 2007 WL 1238541, at * 2 (M.D. Pa. April 26, 2007).   Defendants dismiss *Broadnax* and *Padilla*, arguing that the

18

plaintiffs in those cases had "minimal education and non-transferable skills." Damages Mem. at
14. But the relevant factor for consideration at trial is not whether the plaintiff is well-educated
and has transferable skills, but whether the plaintiff cannot find comparable alternative work.
Certainly, the salesman in *Tyler* had transferable skills, but this did not prevent the Court from
affirming 17 years of front pay.

In any event, courts have awarded front pay through retirement even where a plaintiff is
highly educated and well-credentialed. In *Perez,* for example, the court found that a front pay
award of more than 8 years through retirement, including prospective pay increases, was
reasonable. *Perez*, 204 F.Supp.3d at 551-52. The fact that the plaintiff had a Ph.D. and was
highly qualified, with outstanding professional credentials, did not dissuade the court from
authorizing this award. *Id.* at 535. Similarly, the Court in *Whittlesey* approved a front pay award
of five years, through age 70, despite the fact that the plaintiff was the defendant's Chief Labor
Counsel and enjoyed a "good reputation and high standing in his area of expertise." 742 F.2d at
729; *Whittlesey v. Union Carbide, Inc.,* 1983 WL 652, at *1 (S.D.N.Y. Oct. 12, 1983).

Thus, it is for the factfinder to determine whether Plaintiff's front pay claim is
reasonable. The Plaintiff is entitled to present evidence at trial demonstrating that he will be
unable to find comparable alternative employment, and that his lost compensation includes
future pay raises and bonuses. None of the cases on which Defendants rely involved a decision
to preclude or limit an award of front pay at the *motion in limine stage*. Nor are any of the
circumstances present in the cases cited by Defendants to limit front pay to four years — a
history of inappropriate workplace behavior; poor job performance; success in finding
comparable work or work with better advancement opportunities; or the plaintiff's establishment

of his own successful business — present here.[4]  Damages Mem. at 10-11.  Similarly, unlike

cases where there is no record evidence to support a claim for extended front pay, the Plaintiff

here will present such evidence at trial, as set forth above.  *Press v. Concord Mortg. Corp.*, 2009

WL 6758998, at * 2 (S.D.N.Y. 2009) (limiting front pay where plaintiff presented "no evidence

whatsoever" of future job prospects); *Howell v. New Haven Bd. Of Educ.,* 2005 WL 2179582, at

* 8 (limiting front pay where plaintiff's evidence is "clearly deficient").  Finally, Defendant cites

*Shorter v. Hartford Fin Servs. Grp., Inc.*, 2005 WL 2234507 at *4 n.10 (D. Conn. May 31,

2005), for the proposition that a court will reject an award of back pay for more than 20 years as

"far too speculative."  Damages Mem. at 11.  That case involved a high school graduate who had

worked for the same employer for 12 years.  The court, in fact, held that an award of front pay

was "particularly appropriate," and awarded six years of front pay.  The Court limited the award

to six years because the plaintiff "would be obtaining a college degree," after which he

presumably would be able to obtain comparable employment.

---

[4] *See, e.g., Chisolm v. Memorial Sloan-Kettering Cancer Ctr.*, 824 F.Supp2d 573, 577 (S.D.N.Y. 2011) (concluding that employee likely would not have remained with employer through retirement and thus limiting front pay where plaintiff had demonstrated "inappropriate workplace demeanor" and "erratic" behavior that caused "friction" with other employees and conflict with management); *Thomas v. iStar Financial, Inc.*, 508 F.Supp.2d 252, 258 (S.D.N.Y. 2007) (limiting front pay where plaintiff's documented record of poor job performance suggested his duration with the employer would be limited); *Hill v. Airborne Freight Corp.*, 2003 WL 366641, at *5 (E.D.N.Y. 2003) (limiting front pay where plaintiffs had found other work at commensurate salary and with greater advancement opportunities, and were entitled to substantial punitive damages); *Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.*, 2002 WL 1059117, at *11 (S.D.N.Y. 2002) (limiting front pay where plaintiff already had demonstrated a capacity to find comparable alternative employment); *Bonura v. Chase Manhattan Bank, NA*, 629 F.Supp. 353, 362 n.3 (S.D.N.Y. 1986) (limiting front pay where one plaintiff had established a successful and growing consulting business and another had found comparable work); *see also Xu-Shen Zhou v. State Univ. of N.Y. Inst. Of Tech*, 4 F.SUpp.3d 404, 422 (N.D.N.Y. 2014) (finding, without analysis, that plaintiff had reasonable prospect of obtaining comparable employment).

Given that the Plaintiff's entitlement to front pay, and the measure of front pay to be awarded, are highly fact specific, there is no basis to exclude any evidence relating to these issues now.  The Plaintiff's evidence concerning front pay, and all the categories of compensation that are included in front pay, should be admitted.

### B.    Evidence Concerning Plaintiff's Entitlement to Punitive Damages Is Relevant and Should be Admitted

The list of potential "compensatory damages" in SOX is non-exhaustive, and thus, the failure to identify a particular category of damages does not mean that they are unavailable.  *See supra* at 5-6; *Mahoney*, 2007 WL 805813 at * 7 (the remedies identified in § 1514A(c)(2) "illustrative" of the damages available under SOX, not "exhaustive"); *see Halliburton, Inc.*, 771 F.3d at 263 (same).  SOX explicitly states that a prevailing whistleblower is entitled to "*special damages* sustained as a result of the discrimination, *including* litigation costs, expert witness fees, and reasonable attorney fees."  § 1514A(c)(2)(C) (emphasis added).   By using the word "including," Congress indicated, unambiguously, that there shall be additional remedies that are not identified in the items listed.  *See United States v. Canada*, 110 F.3d 260, 263 (5th Cir. 1997) (construing the word "includes" in another statute to "unambiguously indicate" a scope that is "inclusive" of the items listed but not "exclusive"); *see also Project Vote/Voting for Am. v. Long.*, 682 F.3d 331, 337 (4th Cir. 2012) (same).

In determining which damages are to be included as "special damages," courts should interpret the statute broadly, guided by the statute's broad remedial scope, and the clear Congressional mandate to protect and encourage whistleblowers:

> Given that SOX is a statute to promote corporate ethics by protecting whistleblowers from retaliation, it is reasonable to construe the statute broadly.  *See* Cong. Rec. S1725-01, S1725, 2003 WL 193278 (Jan. 29, 2003) ("The law was intentionally written to sweep broadly, protecting any employee of a publicly

> traded company who took such reasonable action to try to protect
> investors and the market").

*Mahony*, 2007 WL 805813 at * 5.

In *Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F.Supp.2d 141, 149 (S.D.N.Y.

2013), the District Court, in assessing the availability of punitive damages under the Dodd-Frank

Act, 15 U.S.C. § 78u-6 et seq., observed that courts have found punitive damages available under

other statutes, even when not provided for by the statute, where the statute provides for "special

damages" or "legal relief that the Court deems appropriate." *Id.* at 149.

The Fifth Circuit, in a SOX case, took note of "the common-law background to SOX's

anti-retaliation claim," and analogized SOX claims to common law claims for wrongful

discharge.  The Court found that "[t]his common law backdrop would suggest that, when

Congress created SOX's statutory anti-retaliation right and specified that recovery thereunder

includes 'all relief necessary to make the employee whole," it intended to encompass within the

statute's broad ambit such damages as are often available at common law for analogous claims."

Common law wrongful discharge claims typically permit claims for punitive damages.  *See, e.g.,*

*Storm v. ITW Inset Molded Prods.*, 400 F.Supp.2d 443, 445 (D. Conn. 2005) (punitive damages

available for wrongful discharge under Connecticut common law).   Moreover, courts in this

Circuit have found punitive damages available under federal statutes involving wrongful or

retaliatory discharge when the wrongful discharge claim is implied:

> In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 66,
> 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992), the Supreme Court
> instructed that, with regard to implied statutory rights of action,
> "we presume the availability of all remedies unless Congress has
> expressly indicated otherwise."  Following this directive, a number
> of courts have found punitive damages available in actions for
> wrongful or retaliatory discharge under other statutes. *See Reich v.*
> *Cambridgeport Air Sys., Inc.,* 26 F.3d 1187 (1st Cir.1994)
> (Occupational Safety and Health Act of 1970); *Oldroyd v. Elmira*

22

> *Sav. Bank*, 956 F.Supp. 393, 400–02 (W.D.N.Y.1997) (Financial
> Institutions Reform, Recovery, and Enforcement Act); *DeLeo v.
> City of Stamford*, \*825 919 F.Supp. 70, 72–74 (D.Conn.1995)
> (Rehabilitation Act of 1973, as amended).

*Beckett v. Atlas Air, Inc,* 968 F.Supp. 814, 825 (E.D.N.Y. 1997) (finding punitive damages

available under the Railway Labor Act).

   For the foregoing reasons, this Court should find punitive damages available under SOX.

There is no binding precedent in this Circuit, and the defendants have cited to no decision from

any other Circuit Court of Appeals, addressing the availability of punitive damages under SOX.

Defendants cite only a smattering of District Court cases, mostly unpublished decisions, which

find that punitive damages are unavailable because they are not explicitly identified in the non-

exhaustive list of possible remedies in § 1514A(c)(2).[5] *See Hemphill*, 2009 WL 2949759, at * 5

(punitive damages unavailable because they are not identified in the list in § 1514A(c)(2);

*Walton v. Nova Information Sys.*, 514 F.Supp.2d 1031, 1035 (E.D. Tenn. 2007) (same); *Murray

v. TXU Corp.*, 2005 WL 1356444, at \*4 (N.D. Tex. 2005) (same); *Rhinehimer v. U.S. Bancorp

Invs., Inc.*, 2013 WL 9235344 E.D. Ky. 2013) (citing a jury charge, with no analysis).

   None of the decisions cited by Defendants, however, engage in any analysis, with the

exception of *Murray,* which briefly notes in *dicta,* that the original draft of the SOX remedies

provision included a provision for punitive damages. *See Murray,* 2005 WL 1356444, at \*4

(citing 148 Cong. Rec. S1789-90 (2002)).  But this passing reference to an isolated draft of a

statute hardly amounts to an analysis of Congressional intent, particularly in light of the

---

[5] Defendants cite *Wadler v. Bio-rad Laboratories, Inc.*, 2017 WL 1910057, at \*5 (N.D. Cal. 2017) for the proposition that punitive damages are unavailable under SOX, but that case makes no such determination, instead, assessing the availability of punitive damages under California common law.

overarching purpose of the statute, and the inherent availability of punitive damages as "special

damages," and under the common law.

This Court is not bound by any decision concerning the availability of punitive damages

under SOX.  In determining the availability of punitive damages under SOX, the Court should be

guided by the powerful fact that "[w]histleblower protection formed a key component of the

legislation":

> Congress enacted the Sarbanes–Oxley Act of 2002 ... in response
> to an acute crisis: Revelations of mass corporate fraud, most
> vividly in connection with the Enron Corporation, threatened to
> destroy investors' faith in the American financial markets and, in
> so doing, to jeopardize those markets and the American economy.
> Congress recognized that the problem was an intractable one, and
> that a number of strong enforcement tools would be necessary—
> from new regulations and reporting requirements, to expanded
> oversight, to new criminal provisions. Congress also recognized
> that for any of these tools to work, the law had to protect
> whistleblowers from retaliation, because "often, in complex fraud
> prosecutions, ... insiders are the only firsthand witnesses to the
> fraud." S.Rep. No. 107–146, at 10 (2002). Congress therefore
> made whistleblower protection central to the Act.... [emphasis
> supplied]

*Leshinsky v. Telvent GIT, S.A.*, 873 F.Supp2d 582, 605 (S.D.N.Y. 2012) (quoting *Bechtel v.*

*Competitive Technologies, Inc.*, 448 F.3d 469, 484 (2d Cir.2006) (Straub, J., dissenting).

In light of the legislative history as a whole, and the availability of punitive damages as

"special damages" and under common law wrongful termination theory, the Court should find

that punitive damages are available under SOX.  Accordingly, Plaintiff's evidence as to punitive

damages should be admitted.

### C. A Jury Should Hear All Evidence Relating to Remedies and May Issue a Binding Verdict as to the Remedies  To Be Afforded Plaintiff

The Seventh Amendment to the United States Constitution guarantees the right to trial by

jury where legal, as opposed to equitable, rights and remedies are at issue. *Beckett*, 9698 F.Supp.

at 825.  In determining whether an action is legal or equitable, "the Court must 'resolve any

doubts in favor of the right to a jury trial.'"  *Design Strategies, Inc. v. Davis*, 367 F.Supp.2d 630,

636 (S.D.N.Y. 2005) (quoting *Lee Pharmaceuticals v. Mishler*, 526 F.2d 1115, 1117 (2d

Cir.1975)).  "The Seventh Amendment . . . applies to actions enforcing statutory rights, and

requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in

an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194

(1974).  "Generally, an action for money damages was 'the traditional form of relief offered in

the courts of law,'" and as such, claims for compensatory monetary relief ordinarily are

considered legal in nature.  *Chauffeurs, Teamsters and Helpers v. Terry*, 494 U.S. 558, 570

(1990) (quoting *Curtis*, 415 U.S. at 196).   The exception to this rule is if monetary damages are

restitutionary, rather than compensatory in nature, for example, in an action to disgorge unjust

profits. *Id.*

SOX explicitly makes clear that it provides for "legal" relief, and contemplates that

plaintiffs should have a right to try their claims, including claims for remedies, before a jury.  In

a section addressing "Enforcement Action," SOX provides that a person alleging discriminatory

discharge under the Act may seek relief by "bringing an action at law or equity."

§ 514A(b)(1)(B).  In a subsection addressing "Procedure," SOX contains a provision entitled

"Jury Trial" which provides that "[a] party to an action brought under paragraph (1)(B) *shall be*

*entitled to trial by jury.*"  § 1514A(b)(2)(E) (emphasis added).  If there is any doubt as to whether

this right to jury trial extends to claims for remedies, SOX provides, in its "Remedies" section,

that the "make whole" relief to which a prevailing employee shall be entitled includes

"Compensatory damages," a category that includes reinstatement, back pay and special damages.

*See* § 1514A(c)(2).

Given that SOX explicitly provides that reinstatement and back pay are "compensatory damages," and that courts in this Circuit and elsewhere have found an entitlement under SOX to "front pay" in compensation for lost future earnings, there should be little doubt that a SOX plaintiff is entitled to a jury trial on claims for reinstatement, back pay and front pay.  Insofar as a SOX plaintiff's claim for punitive damages derives from the provision for "special damages," or from common law, this claim, too, is compensatory and should be tried by a jury. *In re McCorhill Pub., Inc.*, 90 B.R. 633, 635 (S.D.N.Y. 1988) (ordinarily, an action based on a claim for money damages at common law is considered a legal action triable by jury.)  Indeed, courts in the Second Circuit considering damages claims under SOX have uniformly agreed that SOX damages are compensatory, not equitable. *See Sharkey*, 2017 WL 374735 at * 3 (the jury will decide the proper amount of "compensatory back pay"); *Perez*, 204 F.Supp.3d at 549 (finding that "[t]he jury's compensatory damages award of $1,662,951"covered "the time period from the day after Plaintiff's termination . . . to . . . the date the judgment will be entered"); *Barati v. Metro-North R.R. Comuter R.R.* Co, 939 F.Supp.2d 143, 151 (D. Conn. 2013) (SOX compensatory damages include "reinstatement, back pay and special damages").

Notwithstanding the clear language of SOX and the prevailing case law, Defendants argue that reinstatement, back pay and front pay are equitable remedies that may be awarded in the courts' discretion, and for which a SOX plaintiff is not entitled to a jury trial.  Reinstatement Mem. at 2-3; Damages Mem. at 3-5.  Defendants, however, cite no authority in this Circuit in which a court reached this conclusion in a SOX case.  Instead, they rely on cases decided under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. *Id.* But this reliance is misplaced.  Congress explicitly characterized Title VII remedies as equitable, rather than legal. *See* 42 U.S.C. § 200e-5(g); *see, e.g., Broadnax c, City of New York*, 415 F.3d

265, 271 (2d Cir. 2005) (back pay and front pay have historically been recognized as equitable relief under Title VII).  Under ADEA, only back pay is considered legal relief, while other remedies are equitable.  *See* 29 U.S.C. § 626(b); *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1257-59 (2d Cir. 1987).  Cases decided under different statutes are not relevant to determining whether the remedies Plaintiff seeks here are available under SOX.

Insofar as Defendants cite cases from other jurisdictions decided under SOX for the proposition that SOX remedies are equitable, rather than legal, these decisions fail to address the plain language of the statute, or note, inaccurately, that the statute does not provide for a jury trial.  *See, e.g., Skidmore v. ACI Worldwide, Inc.*, 2010 WL 2900113, at *2 (D. Neb. 2010); *Van Asdale v. Int'l Game Tech.*, 2010 WL 1490349 at *5 (D.Nev. Apr.13, 2010) (same); *Walton*, 514 F.Supp.2d at 1034 (same); *Schmidt v. Levi Strauss & Co.*, 621 F.Supp.2d 796, 805-06 (N.D. Cal. 2008).  This Court is not bound by these decisions.

Finally, even if the Court should find, notwithstanding the authority to the contrary, that some of the relief afforded under SOX is equitable, Plaintiff should still be entitled to present evidence to the jury as to claims for such relief.  The Defendants have consented to an advisory jury trial on back pay and front pay.  Damages Mem. at 4.  The Court could try the remaining issue of reinstatement with an advisory jury *sua sponte*.  *See* Fed. R. Civ. P. 39(c)(2).


## POINT 11

### UBS'S OSHA POSITION STATEMENT IS RELEVANT TO CLAIMS AND DEFENSES AND SHOULD BE ADMITTED AS A NON-HEARSAY ADMISSION AGAINST PARTY INTEREST

On November 5, 2012, UBS submitted a position statement, by its counsel, Gibson Dunn, to the Occupational Safety and Health Administration in the Plaintiff's administrative proceeding

arising from the events that are the subject of this litigation ("Position Statement").  The document, drafted in the form of a letter, is signed by Eugene Scalia, a Partner at Gibson Dunn, and counsel of record for UBS in this action.  The Position Statement contains an extended factual discussion reflecting UBS's investigation of the underlying events which give rise to the claims and defenses in this litigation, and UBS's perspective on how these facts interact with SOX.  As such, the Position Statement is clearly relevant to claims and defenses in this case.

Insofar as the Position Statement contains purported hearsay, the document nonetheless may be admitted in its entirety as containing party admissions under Fed. R. Evid. 801(d)(2). The Position Statement was signed by the defendants' lawyer, on stationery from the defendants' lawyers' law firm.  In this respect, it is self-authenticating as a statement offered against an opposing party "made by a person whom the party authorized to make a statement on the subject," Rule 801(d)(2)(C), or "made by the party's agent . . . on a matter within the scope of that relationship and while it existed," Rule 801(d)(2)(D).

Defendants assert that the Position Statement cannot be admitted because Plaintiff will not be able to establish the required foundation to qualify as non-hearsay under Rule 801(d)(2). *See. e.g., Curns v. Wal-Mart Stores, Inc.*, 439 Fed. Appx. 51, 53 (2d Cir. 2011).  First, this argument is premature and inappropriate for a motion in limine.  The cases that defendants cite in support of their proposition did not involve motions in limine, *see, e.g., Curns; Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120 (2d Cir. 2005), or a circumstance where the plaintiff had an opportunity, at a pre-trial hearing, to call witnesses and otherwise establish a foundation for admission of the document, *Thomas v. Metropolitan District Comm'n*, 2004 WL 2549728 at * 1.

Further, agency may be inferred by surrounding circumstances.  *See United States v. Pacelli*, 491 F.2d 1108, 1117 (2d Cir. 1974); *see also Pappas v. Middle Earth Condominium*

*Ass'n*, 963 F.2d 534, 538 (2d Cir. 1992) (the foundational predicate for admission under Rule 801(d)(2) may be established by circumstantial evidence).  Thus, the Plaintiff could establish a foundation for admission of the Position Statement even without a witness.  But Plaintiff should also have the opportunity, if necessary, to call a witness at trial for this purpose.  In any event, there is no basis to preclude Plaintiff from introducing this evidence now, before he has had an opportunity to lay a foundation for its admission.

Insofar as Defendants challenge admission based on purported confusion that may result if the document is admitted, this argument ignores that the document is a party admission.  If Defendants' earlier statements create confusion — because, for example, their explanation of events then varies from their explanation now — then this, by definition, is relevant to claims and defenses.  Whether or not there are other documents which the Defendants may consider "more reliable" is of no significance, and in fact, underscores the rationale for admitting the document.

Finally, Defendant's Position Statement is not a legal brief.  It is a statement made by Defendants as to their investigation of events at a critical time following Plaintiff's discharge. Plaintiff should be permitted to introduce this document at trial.

## POINT III

### DEFENDANTS' MOTION TO EXCLUDE PURPORTEDLY INFLAMMATORY REFERENCES IS TOO SWEEPING IN SCOPE AND LACKS SUFFICIENT SPECIFICITY TO BE GRANTED IN LIMINE, AND SEEKS TO EXCLUDE RELEVANT EVIDENCE IMPLICATING SOX'S CORE REMEDIAL CONCERNS

A motion in limine must be denied if it "lacks the necessary specificity with respect to the evidence to be excluded" and is "too sweeping in scope to be decided in limine." *National Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F.Supp. 276, 287 (S.D.N.Y. 1996).  Parties

may not "employ their in limine motions as preemptive weapons with which they endeavor to strike, in shotgun fashion, at whole topics and sources of prospective evidence that each side anticipates the other may contemplate introducing at some point during the course of the trial, out of context and before any specific objection against its proper backdrop is raised." *MF Glob. Holdings Ltd., v. PricewaterhouseCoopers* LLP, 232 F.Supp.3d 558, 570 (S.D.N.Y. 2017).

Here, Defendants may not exclude whole categories of potential evidence relating to their status as an investment bank, and involvement in global finance. Nor may they preclude factual terms that, by themselves, are not inflammatory in nature. *See Aristocrat Leisure Ltd. V. Deutsche Bank Tr. Co. Ams.,* 2009 WL 3111766, at * 7 (S.D.N.Y. 2009) ( refusing to preclude references to "hedge funds" and "short-selling" because they are factual terms that are not inflammatory in nature). Here, references to "Wall Street bank," "foreign bank" and the like are no more than factual terms, which accurately describe UBS and its activities. Similarly, reference to the name of the layoff, "Project Doral," is also a factual term. Moreover, courts will not preclude purportedly pejorative terms if they bear on the issues to be tried. *Id.* ("The Court declines to speculate on all other possible terms that the parties may use during trial and whether such terms would be inflammatory. Instead, the Court cautions the parties against using inflammatory terms and making derogatory statements that do not bear on the issues being tried").

The Court here, should take the same approach, and decline to exclude, in shotgun style, categories of evidence, or factual terms, which are not, of themselves, pejorative. Moreover, the description of Defendants as a "foreign bank," "non-American bank," "Swiss bank," "European bank, or "Wall Street bank" are relevant to issues to be tried: the Plaintiff alleges that he has been punished for whistleblowing under SOX, and must be free to discuss his career in

30

investment banking, and how he has been damaged by the fact that he can no longer find work at a comparable investment bank. For instance, his work at his first post-termination finance job was not in the firm's investment banking department, which is one of the reasons the position was not comparable. UBS's status as an investment bank is also at the core of its obligations under SOX. The Plaintiff's whistleblower activity necessarily requires discussion of the UBS's CMBS unit and Plaintiff's functions in that unit. Given that the very purpose of SOX is to protect investors and prevent financial fraud, Plaintiff should not be precluded, certainly in such broad, preemptive fashion, from addressing these issues.

The purpose of SOX is to avoid a financial crisis. When a banking employee engages in whistleblowing activity, the wrongful conduct he reports, and his rationale for reporting it, necessarily implicate SOX's concern with avoiding financial crisis. Thus, it is inappropriate, in a motion in limine, to preclude categorically all reference to a past financial crisis, and possible links with CMBS activity, when Plaintiff's whistleblowing was motivated by a concern with protecting investors.

To the extent that Defendants seek to exclude allegations, investigations, legal proceedings or claims against or involving UBS that are "unrelated to this case," the question is premature and lacks the specificity necessary for ruling in limine. Whether an investigation or legal proceeding relates to this case necessarily turns on its specific circumstances. Where Defendants do not identify any evidence which they claim to be "unrelated," none can be precluded.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants' Motions in Limine should be denied.

Dated: November 13, 2017
New York, New York

BROACH & STULBERG, LLP
*Attorneys for Plaintiff*

By: _____  11-14-17
        Robert B. Stulberg
        Amy F. Shulman
One Penn Plaza, Suite 2601
New York, New York 10119
(212) 268-1000
rstulberg@brostul.com


HERBST LAW PLLC
*Attorneys for Plaintiff*
By: Robert L. Herbst
420 Lexington Avenue, Suite 300
New York, New York 10170
(646) 543-2354
rherbst@herbstlawny.com

32