# EXHIBIT B

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    TREVOR MURRAY,

4                     Plaintiff,

5            v.                          14 Civ. 927 (KPF)

6    UBS SECURITIES LLC, ET AL.,
                                         Conference
7
                     Defendants.
8    ------------------------------x
9                                        New York, N.Y.
                                         December 10, 2025
10                                       12:00 p.m.

11   Before:

12                   HON. KATHERINE POLK FAILLA,

13                                       District Judge

14                          APPEARANCES

15   HERBST LAW PLLC
          Attorney for Plaintiff
16   BY:  ROBERT L. HERBST
          - and -
17   STULBERG & WALSH LLP
          Attorneys for Plaintiff
18   BY:  ROBERT B. STULBERG
          SOFIA JOHNSON
19
     GIBSON DUNN & CRUTCHER LLP
20        Attorneys for Defendants
     BY:  DANIEL P. CHUNG
21        ANNA M. McKENZIE

22

23

24

25
```

```
 1              (In open court; case called)

 2              MR. HERBST:  Good afternoon, your Honor.  Very good to

 3    see you again.

 4              THE COURT:  It's been awhile, sir, yes.

 5              MR. HERBST:  I must say, I wish it were under other

 6    circumstances.

 7              THE COURT:  Fair enough.

 8              MR. HERBST:  Bob Herbst, Robert Stulberg for plaintiff

 9    and Sofia Johnson, who is not yet admitted to the bar, but is

10    working on the case with us and is in Mr. Stulberg's firm.

11              THE COURT:  I see.  Ms. Johnson, good morning to you.

12    You are not yet admitted to the Southern District or to the New

13    York Bar?

14              MS. JOHNSON:  I am admitted to the New York Bar, but

15    not the Southern District.

16              THE COURT:  Is it your colleague's plans to let you

17    talk today?

18              MS. JOHNSON:  I don't believe so.

19              THE COURT:  Because I will admit you *pro hac vice* with

20    no objections from the defense to allow you to speak today if

21    that might be of use to you.

22              MR. HERBST:  If your Honor would consider that, we

23    would move for that admission.

24              THE COURT:  It is done.  Thank you to all of you.

25              To my friends at the back table.
```

 1              MR. CHUNG:  Good afternoon, your Honor.

 2              It's good to see you.  Dan Chung and Anna McKenzie,

 3  Gibson Dunn & Crutcher for UBS Securities and UBS AG.

 4              THE COURT:  Good afternoon to you both.

 5              I think it's been since the trial, so welcome to both

 6  of you, and thank you.  Here we are friends.

 7              And there are others in the courtroom, who I am sure

 8  are just interested participants.

 9              I know better than to ask if this case can settle, so

10  I'm not going to.  And the question is when are we rescheduling

11  this trial and what is this trial going to look like?  Let me

12  give you some insights into the first question first.

13              For reasons that I can't figure out, the trials that

14  I've had recently have all been multi-week, nearly a month,

15  trials, and as a result, I had one over the summer that went

16  four or five weeks.  I have one in late January that will take

17  up almost the entirety of February.  I have one in April that

18  will probably be five weeks.  It's a narcotics case, a

19  multi-defendant narcotics case that will take April into May.

20              So what I was going to suggest to you, and I don't

21  know if this works with your schedule, was the first week in

22  June.  I don't know -- you will tell me what your calendars

23  are, but I am just saying to you, given that our last trial was

24  three weeks' long, and given that I don't know if it's going to

25  be any shorter — we will talk about that momentarily — I don't

1     really have a place for you in my trial calendar until then.

2         If you were thinking something more of a July, okay,

3     or an August, I'm just warning you on the juries you're going

4     to get if you want an August trial date.  Or September we can

5     talk about that too.

6         Mr. Herbst, do you have a thought?

7         MR. HERBST:  I have a thought listening to what your

8     Honor said -- first of all, I think the case will be shorter.

9         THE COURT:  We'll find out momentarily, yes.

10         MR. HERBST:  And I was thinking would sometime in

11     March between those two cases that you have, is that a

12     possibility?

13         THE COURT:  The problem is that I have some

14     obligations, court obligations, in March that may make it very

15     complicated.  That's the issue that I have.

16         Are you booked up in June, sir?  Is that the issue?

17         MR. HERBST:  No, I'm not booked up.

18         THE COURT:  Okay.  You just want the sooner.

19         MR. HERBST:  Yeah.  But I did talk to Mr. Chung about

20     trial schedules, and I thought maybe sometime in March might

21     work, but if your Honor is unable to do it ...

22         THE COURT:  Right.  I think -- one moment.  Off the

23     record, please.

24         (Off the record)

25         THE COURT:  I think we can now go back on the record,

1    and we can talk about why you think this trial is going to be

2    shorter.

3              Let me just ask a couple of questions about that, sir.

4              Your view, as I understand it, is that we're only

5    addressing the issue of causation; that we're not addressing

6    the issue of whistleblower status, UBS' knowledge, the adverse

7    employment action, and I was understanding that, okay, and

8    thanks to the Second Circuit, who I know better than to

9    criticize, we have to redo causation.  It wasn't as obvious to

10   me that that also foreclosed UBS from presenting their shifting

11   burdens' case.

12             So may I hear from you on that?

13             MR. HERBST:  Yes.  There is a line of cases on waiver,

14   your Honor, that we actually had not yet briefed for you, and

15   the principle is this:  When a case -- when an issue like that

16   one, and, indeed, it applies to the first three issues as well,

17   prior to causation, when that issue is not -- is no longer in

18   the case because it is not raised on appeal, then on remand for

19   a new trial, that issue is not tried.  And there are a bunch of

20   cases that we could cite to your Honor.  We could put it in a

21   quick letter tomorrow for your Honor, but the essential

22   principle is that on appeal in this case, UBS challenged only

23   the sufficiency of the evidence on causation, and the jury

24   instructions on causation.  The Second Circuit Court of Appeals

25   rejected the sufficiency argument and accepted only the jury

1    instruction deficiency on contributing factor.

2            Under these cases, the issue of whether the complaints

3    were made, which was an issue in the first trial, whether those

4    complaints constituted protected activity, which was disputed

5    in the first trial, who the decision-makers were, everything up

6    to causation, not having been raised on appeal are waived and

7    essentially became law of the case.

8            And the cases that are most clear on this are in the

9    Sixth Circuit, the Seventh Circuit and Tenth Circuit, and there

10   is a case actually by Justice Gorsuch when he sat on the

11   circuit court in the Tenth Circuit.  It was the *Cook* case.  And

12   the cases in the -- there's a case in the Seventh Circuit

13   called *Bradley v. Vill. of Univ. Park,* **59 F.4th 887.  This has**

14   **the same effect, there is a Sixth Circuit** *JGR Inc. v.*

15   *Thomasville Furniture Ind.,* **550 F.3d 529 (6th Circuit).**

16   **There's a Tenth Circuit case,** ***Dow Chemical Corp. v. Weevil-Cide***

17   ***Co., Inc.*  The holdings are all the same.  A question not**

18   **timely raised at a first trial may not be raised at a second**

19   **trial.  And in terms of** *Cook*, defendant's non-jurisdictional

20   arguments may not be asserted on remand if they're not raised

21   on appeal.  None of these issues are jurisdictional, your

22   Honor.

23           So in our view, the contributing factor is all that is

24   remaining to be tried, and you can actually see that in our

25   view from the way the Court of Appeals in Murray II, the most

1   recent decision of the majority, handled it, because they

2   didn't remand for a new trial.  They remanded for proceedings

3   consistent with this.

4          THE COURT:  Sure, they did, but they also said my

5   instructions were wrong.  I guess -- certainly, I'll let UBS

6   defend themselves, and I'll hear from them in just a moment,

7   but it would seem to me that their thought was that I was wrong

8   from the start.  They didn't have to get to the shifting of

9   burdens because I was wrong -- and, again, let's be clear, I

10  wasn't wrong, whatever they said.  But we're past that point.

11         But, I mean, I think they're going to say they went

12  with my big, obvious error and not an error that was dependent

13  on finding that something else wasn't an error, if that makes

14  any sense.

15         MR. HERBST:  Well, except they themselves pointed out

16  that the issue on the step-two burden shift --

17         THE COURT:  Yes, thank you.  We'll call it that.

18         MR. HERBST:  -- that issue was separate and distinct

19  because it had different burdens of proof.  Let me see if I can

20  find the language.  Yes, here the issue -- at step two, the

21  jury didn't find clear and convincing evidence that UBS would

22  have terminated Murray regardless of his whistleblowing, but

23  that does not mean at step one the jury found by preponderance

24  of the evidence the whistleblowing was a contributing factor in

25  Murray's termination.

1         By the way, is your Honor familiar with the *Ziparo*

2  case that came down late last month?

3         THE COURT:  Yes.

4         MR. HERBST:  That case too actually points out the

5  distinct and separate nature of the step-two issue because it

6  says at page 52:  In any event, an employer's legitimate

7  non-retaliatory reason for the adverse action is with rare

8  exception not to be considered at the initial causation stage.

9         So they're pointing out very directly how separate

10  that issue is.  But your Honor doesn't have to get into that

11  question specifically because that issue is gone.  That

12  step-two issue is gone from this case, because --

13         THE COURT:  You said gone, and then earlier you said

14  waived.

15         MR. HERBST:  Waived.

16         THE COURT:  I'm one of those people who distinguishes

17  waiver from forfeiture of an issue.  You're saying it's waived

18  such that the jury would never be instructed on it?

19         MR. HERBST:  Correct.  And it's forfeited because

20  there is language -- some of the cases talk about forfeit and

21  waiver almost in identical terms.

22         THE COURT:  I see.  But is your argument to me that if

23  the jury were to find that Mr. Murray met his burden on the

24  four elements, that the issue of the step-two has been resolved

25  and is law of the case, or that UBS has waived its right to

1    make a step-two challenge?

2            MR. HERBST:  Both.

3            THE COURT:  Wow.  Okay.  I'm listening to you.  With a

4    little bit of -- I mean, I'm taking you very seriously, of

5    course.  I just want to make sure I understand this.  I don't

6    think I understood from your letters that you were taking a

7    waiver position as distinguished from a law-of-the-case

8    position.

9            MR. HERBST:  And I apologize for that because I went

10   actually after -- when your Honor scheduled this conference,

11   not having really thought seriously about these issues for

12   months, I went back and I looked at what we wrote, and I

13   noticed that we didn't -- we hadn't addressed it, very

14   honestly, so -- but the thought did occur to us as a team, and

15   we did over the last few days look into it.

16           THE COURT:  I see.

17           MR. HERBST:  And this is -- we think it's dispositive.

18   There are other -- you know, the issues, we're not retreating

19   from the other arguments we made in the letters, but I think

20   the easiest way to resolve that the scope of the retrial should

21   be only on contributing factor is on the waiver forfeiture

22   issue.

23           THE COURT:  How does that look in practice?  Because

24   one of the questions that I had for the parties was the degree

25   to which the quantum of evidence would really change.  I

1    imagine that UBS is going to tell me that in order to

2    demonstrate why it terminated Mr. Murray's employment, it's

3    going to need all of the evidence that it needed from the first

4    trial.

5            There needs to be a certain measure of evidence

6    brought in just to orient the jury to what happened, or were

7    you thinking that I'd be instructing them at the outset that in

8    a prior proceeding it was determined one, two, and three, and

9    that that we're only left with four?

10           MR. HERBST:  I would say this -- the way I would

11   suggest handling it --

12           THE COURT:  Of course.  That's what I'm asking.  Yes.

13           MR. HERBST:  I would tell the jury that the issues --

14   and this is what *Akermanis* I think dictates, the Second Circuit

15   decision that Judge Scheindlin used in I think *Liriano*.

16           THE COURT:  *Liriano*, yes.

17           MR. HERBST:  To say that the first three issues in

18   Murray's claim, whether he made complaints, whether the

19   complaints were protected activity, whether UBS had knowledge

20   of the protected activity through Mr. Shumacher, the supervisor

21   to whom Mr. Murray made those complaints, have been resolved.

22   In other words, the first three elements of the claim have been

23   resolved.  And the issue for your determination, ladies and

24   gentlemen, is whether the protected activity was a contributing

25   factor in the termination.  I don't think it is necessary to

 1    even mention to the jury the second step because I think it's

 2    out of the case.  Now --

 3                THE COURT:  One moment please, sir.  Thank you.

 4                But in order to have the jury have a sufficient basis

 5    or have enough of an evidentiary record to make that

 6    determination, you're still going to have to put in what the

 7    complaints were and to whom they were made, and where

 8    Mr. Murray worked and what happened and how he was isolated

 9    from that Miami conference, wherever the conference was, and

10    how he was ultimately terminated.  So I'm just not sure I'm

11    seeing the savings in trial time that you were suggesting by

12    your earlier points.

13                MR. HERBST:  Well --

14                THE COURT:  The charge will be shorter, but I don't

15    know that the evidence is that much smaller.

16                MR. HERBST:  Well, if your Honor remembers, there was

17    a significant amount of time spent on the damages issues in the

18    case.

19                THE COURT:  Yes.

20                MR. HERBST:  There were two experts --

21                THE COURT:  Oh, yes.

22                MR. HERBST:  -- which would not be called.

23                THE COURT:  Oh, you know, you're -- excuse me, sir,

24    and I don't mean to interrupt you, but this is a really

25    important clarifying point are for me.  Is your position that

1    if the jury found causation, we'd revert to the damages number

2    that was assessed by the prior jury, and we wouldn't be

3    assessing another damages -- there wouldn't be another request?

4    I ask because you did cross-appeal me for back pay, front pay

5    and other things.

6              MR. HERBST:  Right.  And the cross-appeal is still

7    alive.  The cross-appeal is alive.

8              THE COURT:  Good Lord.  How?

9              MR. HERBST:  How?

10             THE COURT:  Yeah.

11             MR. HERBST:  Because the Court of Appeals has never

12   ruled on it.

13             THE COURT:  Well, yes, but I would have thought it was

14   vitiated by the fact that they want me to do a new trial, which

15   you say they don't want me to do a new trial.

16             But please answer my question.  if the jury finds --

17   finds a contributing fact --

18             MR. HERBST:  Right.

19             THE COURT:  -- what's next?  Then you go back up on

20   appeal for the damages amount?

21             MR. HERBST:  Unless, your Honor, I think your Honor

22   would have the ability to -- because this is an unusual case --

23             THE COURT:  Yes.

24             MR. HERBST:  -- in that your Honor made all of the

25   damages rulings.  The jury did not make any rulings.

```
 1              THE COURT:  No, they gave me an indicative ruling.
 2   They didn't realize it was indicative.
 3              MR. HERBST:  On back pay.
 4              THE COURT:  Yes.  Well, they also said no front pay.
 5              MR. HERBST:  They did, but in our view, your Honor
 6   instructed that under some circumstances reinstatement was a
 7   possible remedy.
 8              THE COURT:  Yes.
 9              MR. HERBST:  But your Honor of course didn't present
10   reinstatement to the jury.  I think it is quite possible that
11   the jury thought that, you know, that there might be
12   reinstatement so they might not award front pay.
13              THE COURT:  No.  The jury was quite clear -- if you
14   traced out the number, they believed he was going to be
15   terminated four months later.  They gave him the pay for a
16   period of time, which in my mind was four months, it could be a
17   little bit more, but they were confident he was going to be
18   terminated in the next round of whatever UBS' terminations
19   were.  They never thought he was going to be reinstated.
20              MR. HERBST:  I know that your Honor had that view.
21              THE COURT:  I spoke to the jury who told me that view.
22              MR. HERBST:  Oh, right.  This might be an argument in
23   the future for not having the judicial fact-finder speak to the
24   jury, I don't know.
25              THE COURT:  I'm not worried about it.
```

1          MR. HERBST:  Either are we, because we would like to

2    get this case resolved.

3          So what we have been thinking, you know, and obviously

4    want to hear your Honor's views about what the scope of the

5    liability issues were, but we were thinking that if the jury

6    found for us on contributing factor, that, you know, your Honor

7    would in effect restore the damages awards that the first jury

8    made.

9          We would ask your Honor to -- based on the arguments

10   we made in the Court of Appeals and on cross-appeal to consider

11   them.  We would not require any jury to put on these issues,

12   and if your Honor adhered to your original rulings, that we

13   would then have the ability, if we couldn't settle the case at

14   that point, to take our cross-appeal.

15         So that was what our thinking was.  And in terms of

16   the question that your Honor asked, which is what evidence

17   would come in, right, I think that was an issue that your Honor

18   raised.

19         THE COURT:  It is.

20         MR. HERBST:  And our thought was that UBS would be

21   permitted to introduce whatever elements -- whatever evidence

22   was relevant on the issue of contributing factor.  If they want

23   to introduce their financial issues, they would be able to do

24   that.

25         I don't think they would be able to argue to the jury,

1    for example, that Mr. Murray made it all up.  Remember, you let

2    that argument in terms of the protected activity.  The argument

3    was that there were no complaints, Mr. Shumacher heard no

4    complaints.  They wouldn't be able to argue that Mr. Shumacher

5    was a decision-maker, you know, the issues relating to the

6    three earlier claims, but -- elements, rather, of the claim --

7    of Mr. Murray's burdens.

8            But on the issue of contributing factor, they would be

9    free to offer evidence, and we would be free to object if we

10   didn't think it was relevant, and your Honor would rule.  And I

11   think that's what Judge Scheindlin did in *Liriano*.  She said if

12   there's evidence that is -- you know, was also relevant to

13   issues that were already resolved but are relevant to, in this

14   case, the contributing factor issue, that that evidence would

15   go in.  So that's essentially how we were thinking that your

16   Honor would conduct a trial.

17           And in light of, you know, Judge Pérez and her

18   colleagues, excuse me, Judge Pérez, have answered a number of

19   questions for us on this retrial in terms of causation.

20   They've defined it.  They have ruled that temporal proximity

21   alone is the kind of circumstantial evidence that can

22   justify -- that can support a contributing factor finding, and

23   they virtually I think directed district judges in these AIR 21

24   cases, of which SOX is one, that the jury should be instructed

25   on temporal proximity.  I recall, I think correctly, that your

 1   Honor declined to instruct on temporal proximity the last time.

 2          So those are two, I think very, very helpful --

 3   because one of the things that the majority in our Murray II

 4   decision left was a lot of ambiguity about what the definition

 5   of contributing factor is.  Judges Sacks and Pérez, and I can't

 6   remember who else was on the panel.

 7          THE COURT:  Judges Park and Menashi?

 8          MR. HERBST:  **And in *Ziparo*.**

 9          THE COURT:  Excuse me, yes, *Ziparo*.

10          MR. HERBST:  *Ziparo*, that unanimous panel decision

11   resolved issues which Murray II did not in a way.  You know,

12   they kept in in combination, you know, with other factors so --

13   and we can -- we will obviously be submitting a revised

14   instruction on contributing factor, but that's removed a lot of

15   the uncertainty in terms of how contributing factor is going to

16   be defined henceforth in the Second Circuit.  And I think

17   probably around the country.

18          So, those are our views on why the case should -- the

19   trial should only involve contributing factor, and why it would

20   be shorter.

21          THE COURT:  Yes.  And I was glib a moment ago.  Let me

22   be less glib now.  Is your thought if the jury were to rule in

23   your favor that you would not ask them for a different damages

24   award, but you would simply come back to me and ask me to

25   revisit my damages awards from the first go-round?

1          MR. HERBST:  Yes.

2          THE COURT:  I understand that better, and I appreciate

3   the clarification.

4          Would you and your colleagues want to submit something

5   in brief in writing or do you just want me to work from the

6   cites that you gave me in this conversation?  I'm fine either

7   way, and I'll explain just so that no one is under any

8   misapprehensions.  My very thoughtful deputy advised me in the

9   course of our discussions that I am actually out of commission

10  for the first half of the month of March because I have Part

11  One duty, and I therefore can't have a trial when I'm doing

12  that; ergo, it's looking like June, and that's not great for

13  any of us, but I want you to have my full attention.

14         And the only benefit of that other than certainty of

15  date is that we can have a little bit more discussion about the

16  scope of this trial, and I can get a little bit more of your

17  sense.  So if you'd like some time to submit something, I'll

18  certainly given you that time.

19         MR. HERBST:  I want to give you the cite for the *Cook*

20  case which I neglected.

21         THE COURT:  Go ahead.

22         MR. HERBST:  790 F.3d 1088, that's a second Tenth

23  Circuit case in 2015.

24         So I think I've given you the cites on the other four

25  cases that I cited, but if your Honor, you know, would like --

```
 1              THE COURT:  To be candid, sir, I'm more interested in
 2    the waiver issue that you just raised today.
 3              MR. HERBST:  I'm sorry?
 4              THE COURT:  I'm more interested in the waiver issue
 5    that you're just raising today.  I do think I would like to
 6    heard from you, and I imagine UBS wants to be heard on the
 7    issue as well.
 8              MR. HERBST:  So we'll submit something.
 9              THE COURT:  Fair enough.
10              Ms. Johnson, since you're going to be tasked with
11    this, is a week enough time?  I don't know what your schedule
12    is like.
13              MS. JOHNSON:  A week is enough time.
14              THE COURT:  Fair enough.
15              Mr. Chung, is it you or Ms. McKenzie to whom I should
16    refer my questions?
17              MR. CHUNG:  I'm going to cede the floor to Ms.
18    McKenzie who will handle the scope issue, your Honor.
19              THE COURT:  Welcome back.
20              I had a sense from the two letters that I received
21    from plaintiff's counsel about their ideas regarding scope.
22    Obviously, the waiver issue is something I'm just hearing
23    today, and so I'm reacting on the fly, as perhaps you are.
24              As I recall your letter to me, the first part of it
25    was that we should see what happens with respect to the Supreme
```

1    Court, and now we have.  And so I would like to know whether

2    you have different or the same thoughts about the scope of

3    retrial than are expressed in your letter.

4         MS. McKENZIE:  Your Honor, our thoughts about retrial

5    are sketched out in our letter, and I would like to discuss

6    them with you in more detail.

7         THE COURT:  Please.

8         MS. McKENZIE:  We do still believe that a full retrial

9    on the merits of plaintiff's whistleblowing retaliation claim

10   is necessary here because the contributing factor element on

11   which the first jury, we now know from the Second Circuit, was

12   erroneously instructed on, is inextricably intertwined with

13   both the other step-one elements of the SOX burden-shifting

14   framework and with step-two of that burden shifting framework.

15   And that framework was designed to answer the single, elusive

16   factual question, to use the Supreme Court's words, of whether

17   UBS terminated Mr. Murray's employment because of protected

18   whistleblowing activity.

19        THE COURT:  I'm going to ask you to pause for a moment

20   please.  I do understand your argument about how it might be

21   intertwined with step one.  I'm not so sure I understand how it

22   gets intertwined.  I think what you're saying is my problematic

23   jury instruction affected both steps.  I don't see why.  Step

24   two was you were going to do it anyway, which is a very

25   different thing than contributing factor.  So why is it -- I

1 might have views that step two and step one can't be separated

2 in the manner that plaintiff's counsel suggests, absent waiver,

3 but I do want to understand why you believe that that jury

4 instruction impacted at all step two.

5          MS. McKENZIE:  It impacted it in terms of what is

6 needed for the retrial, and your Honor hit on these points

7 earlier.  Instructing a jury that another proceeding has found

8 that step two has already been satisfied would cause

9 uncertainty and confusion because they're both elements that

10 deal with causation, right?  We have in step one asking whether

11 Mr. Murray by a preponderance of the evidence showed that his

12 protected activity contributed to the termination decision, and

13 then at step two you have the causation question of whether UBS

14 would have terminated the employment absent the protected

15 activity, albeit under a different burden of proof, but the

16 jury consisting of lay people may very well be confused about

17 what exactly was found at step two.  And, therefore, we do

18 think it would be highly prejudicial to instruct the jury that

19 in another proceeding it was already found that step two had

20 been satisfied.

21          THE COURT:  Let's please pause for a moment.  We're

22 agreeing, are we not, that plaintiff has posited two theories

23 under which step two doesn't make it to the jury.  The first is

24 this concept of law of the case that was previously decided by

25 the prior jury and can be separable and distinct.  I know you

1     disagree with that, but that's one thing.

2          The second, and the one that's causing me to think

3     more because I just hadn't thought of it before now, is this

4     idea that UBS has waived the step two.  So you understand -- so

5     what I'm hearing you say now that it's prejudicial, that to me

6     sounds more like it's for the law of the case idea, the idea

7     that it could be extricated from the trial.  And I presume that

8     either today or perhaps in a responsive letter within a few

9     days of -- a week of receiving counsel's letter, that's what

10    you're going to tell me that no, no, there's been no waiver.

11    Yes?

12         MS. McKENZIE:  Yes, your Honor.  Of course, I haven't

13    had a chance to review the cases Mr. Herbst cited this morning.

14    They weren't in his letter.  But I would note my reaction

15    thinking, as I was listening to his argument is that UBS

16    challenged the finding of liability against it as a whole, and

17    that step two would not have even been reached were it not for

18    the error in step one.  So, therefore, by challenging the step

19    one finding, it, therefore, had no need to separately and

20    independently make a challenge to step two.

21         THE COURT:  I am just going to ask you to pause for a

22    moment there, please, and I want to push back just a little

23    bit.

24         The argument that you're now making is having

25    challenged liability, we were challenging all components of

1    liability.  But in point of fact, your arguments to the Second

2    Circuit were regarding the sufficiency of evidence and then

3    regarding the components of the actual claim whether or not

4    animus had to be demonstrated as a component of the claim.

5        Now, you then had as, not a fallback position, but as

6    a secondary argument, the idea that the jury was -- even if I'm

7    right on the law, the jury was still instructed improperly on

8    the correct law, and that is one that ended up winning.

9        I don't know why you wouldn't have put all of your

10   arguments into the appellate brief.  I mean, whatever mistakes

11   I made, you know, you couldn't be sure -- and, in fact, it

12   happened that your first argument ended up not winning.  Your

13   second one did.  So I'm not sure why you don't have your third

14   argument in there as well.

15       MS. McKENZIE:  I think that the retaliatory intent

16   part is important because the Supreme Court made clear that the

17   entire burden shifting framework is designed to get at

18   retaliatory intent, and that step two is part of that inquiry.

19       THE COURT:  By which you mean that one of the reasons

20   the Supreme Court gave in its *Murray* decision for not requiring

21   animus was that the protections you had were in that step two.

22       MS. McKENZIE:  Correct, your Honor.

23       THE COURT:  All right.  But, again, you did not

24   specifically challenge step two on appeal, correct?

25       MS. McKENZIE:  Correct.

1          THE COURT:  And even when it came back from the

2     Supreme Court, you did not then add to your supplemental

3     briefing that, by the way, Failla also messed up on step two.

4          MS. McKENZIE:  That is correct.

5          THE COURT:  I'm not sure -- candidly, I'm not sure I

6     misinstructed -- I don't believe anyone has found that I

7     misinstructed the jury on step two.

8          MS. McKENZIE:  Right.  Of course, they wouldn't have

9     reached step two had they not found for plaintiff on step one.

10          THE COURT:  Correct.

11          MS. McKENZIE:  And so, again, with the Court's

12     indulgence, we would appreciate the opportunity to review the

13     waiver cases --

14          THE COURT:  Absolutely.  I want everyone's best

15     thinking on this.  That's why we're going to take the time it

16     takes to do that.

17          Since you were prepared to discuss step two as law of

18     the case, I didn't want to derail you, and I want to get all of

19     your arguments on that.

20          MS. McKENZIE:  Thank you, your Honor.

21          I don't think that plaintiff seriously contests that

22     it would be prejudicial to tell a jury that a prior proceeding

23     found that UBS failed to carry its burden on step two.  It

24     recognized -- Mr. Murray's attorneys recognized in the letter

25     they submitted to the Court that UBS' concerns are

1    understandable in that regard, and so they suggest, instead,

2    that the Court simply remain silent with respect to step two.

3    And we think that would be error for a couple of reasons.

4            One, again, the burden-shifting framework is a

5    two-part test all designed to get to the same question:  Was

6    Mr. Murray's employment terminated because of his protected

7    activity and, therefore, only discussing part of that test

8    would not fairly and accurately represent the law.

9            And, second, it would pose significant practical

10   problems in terms of responding to questions from the jury.  As

11   your Honor will recall, the jury, the first go-round had very

12   probative, interesting questions that they came and brought to

13   the Court, which the parties discussed at length in terms of

14   how to respond to with regard to contributing factor, what it

15   meant to tend to affect who at UBS had to have knowledge of the

16   protected activity.

17           So I could very well envision a world in which the

18   jury had a question about how to consider the evidence that UBS

19   is presenting about why it terminated Mr. Murray's employment

20   and how it should rule on the contributing factor element if it

21   found that UBS would have taken the same action regardless of

22   the protected activity, and it's very difficult to answer

23   questions of that nature without delving into step two and

24   explaining that those inquiries are dealt within a different

25   part of the test.  So I don't think remaining silent on step

1    two is, practically speaking, a good option and would likely

2    lead to issues on appeal.

3            THE COURT:  And what you're not saying is a third

4    Murray trial.

5            MS. McKENZIE:  I'll have quite a few more gray hairs

6    by then, your Honor.

7            THE COURT:  Let me let you continue with your

8    arguments, please.

9            MS. McKENZIE:  Just briefly on step one, and I think

10   your Honor already appreciates this:  Of course, the

11   contributing factor element is bound up in the other elements

12   of the step-one analysis.  So, for example, the protected

13   activity in terms of thinking of what jury instruction under

14   plaintiff's suggested approach would be offered, it's difficult

15   to envision what that would look like based on the very sparse

16   verdict form that we had from the jury in which they were asked

17   only whether Mr. Murray had proved by a preponderance of the

18   evidence all four elements of his claim.  We don't have

19   specifics about those elements, and so Mr. Herbst's letter has

20   a lot of specifics about what he thinks the jury must have

21   found, but I don't think -- you know, I think he's glossing

22   over a lot of important conflicting evidence.

23           THE COURT:  I guess I do want to probe that with you a

24   little bit.  I told the jury it had to find four things:

25   According to the Second Circuit and the Supreme Court, I

1    correctly instructed them on three of the things.  They found

2    all four things.  Why do you believe that the erroneous

3    instruction on the fourth element infects the jury's findings

4    on the first three?

5         MS. McKENZIE:  The jury is going to need to take into

6    account what that protected activity was, and who had knowledge

7    of it in order to decide whether it was a contributing factor

8    in the termination decision.  So, for example, there were

9    multiple instances in which Mr. Murray says that he reported to

10   Mr. Shumacher instances of conduct he believed was illegal and

11   led to unlawful influencing of his reports.  Those happened on

12   a couple different occasions.  He was discussing different

13   types of conduct.  And the jury will need -- the second jury

14   will need to know which of those constituted protected

15   activity, but we don't know the answer to that question because

16   of the way that the jury form -- the general nature of the jury

17   verdict form.  So we wouldn't be able to settle on what to

18   instruct the jury to take into account in terms of its

19   protected activity, which is why it needs to be tried again.

20        THE COURT:  When you say it needs to be tried again,

21   you mean damages too, correct?

22        MS. McKENZIE:  No, I think the damages issue is a

23   separable, distinct issue that does not need to be retried,

24   unlike the merits where all the elements are bound up and

25   intertwined and inextricably intertwined with each other.  The

1   damages verdict was reached by the jury on an advisory

2   capacity, and then by you based on evidence of events that

3   occurred after the termination.  And so that part of the trial

4   can be separated and would not need to be retried.

5           THE COURT:  Are both sides in agreement on this?

6           Mr. Herbst, let me please ask the question this way:

7   If I disagree with you and order a plenary retrial, will that

8   extend to damages as well?

9           MR. HERBST:  Your Honor, if you do that, we would like

10  the opportunity to reconsider.

11          THE COURT:  Reconsider what?

12          MR. HERBST:  Whether damages should also be retried.

13          THE COURT:  I see.  Thank you.

14          MR. HERBST:  But, tentatively, as I said, we were of

15  the view that even though -- you know, even though the damages

16  issues are still in the case because we raised them on appeal,

17  it was our sense that because your Honor was the

18  decision-maker, that your Honor could reconsider the arguments

19  we made on appeal, and it might change your Honor's view, but

20  the jury does not need to be burdened with evidence about

21  damages.

22          THE COURT:  All right.  Let me say this:  To be candid

23  and transparent, as I try to be, I have not thought many times

24  since the Murray trial about instances in which I am taking the

25  jury's verdict as advisory.  I just haven't had other cases in

1    which this has come up.

2          So if since Murray I, Murray prime, that law has

3    changed, we'll all have to figure that out.  I think I still

4    retain those rights, but we shall see.

5          There are several things I'm learning today.  One of

6    them is this idea of waiver.  The other is the notion that

7    there remains a live Murray appeal that wasn't obviated by the

8    decision.  That's news, and it's a shame because really, I hate

9    the notion -- I knew that whatever I did was going to get

10   appealed, but I didn't realize the baggage of the prior

11   procedural history of the case still has to be resolved.

12         All right.  Ms. McKenzie, I'll let you continue.

13         MS. McKENZIE:  One final point to make, your Honor.

14   It would not be error to retry the whole issue of the merits,

15   but it would potentially be error to limit it to the

16   contributing factor element and, therefore, the proposal that

17   plaintiff has offered the Court has no upsides and only

18   downsides, and we would ask the Court to allow UBS to retry the

19   full merits of the case.

20         THE COURT:  But just going back to the point you made

21   a moment ago, I think I understood you to be saying that

22   because the jury was not given, if you will, a special verdict

23   form where they had to identify what the protected activity

24   was, this conversation with Mr. Shumacher and not some other,

25   you're suggesting that we can't be sure what they found to be

 1   the protected activity that was known to UBS, and, therefore,

 2   you can't know -- isolating the question of contribution, what

 3   was the contributing factor, you don't know because you don't

 4   know what the protected activity was.  That's what I'm

 5   understanding you to be saying, correct?

 6            MS. McKENZIE:  Yes, your Honor.

 7            THE COURT:  But doesn't that also influence the

 8   damages decision?  Perhaps not.  But depending on what they

 9   found to be protected activity and what they, therefore, found

10   to have been a contributing factor to Mr. Murray's termination,

11   if indeed a future jury were to find that, I would think might

12   result in the jury having a different view as to damages, in

13   particular, the punitive damages.  Or perhaps not.  Perhaps

14   they're going to have a different view about all of the

15   damages, and I get that it's advisory to me, but I took very

16   seriously the jury's -- what I was able to calculate from their

17   compensatory award, which is how I figured it out, and then to

18   go from there and to figure out the punitive.  I'm just

19   thinking out loud for a moment.

20            MS. McKENZIE:  Your Honor, I don't think there was any

21   testimony by Mr. Murray that would suggest that his emotional

22   distress damages depended on one particular act of protected

23   activity as opposed to another.  They both occurred within a

24   few months of each other, according to his testimony.  And so,

25   really, the emotional distress damages about which we heard

1   from experts, it was really focused on his mental state after

2   the termination and the damage that he incurred following the

3   termination because of the termination decision rather than

4   being tied to a particular act of protected activity.

5           THE COURT:  Okay.  And let me try and add to that, and

6   you can disagree with me if you do.  To the extent that the

7   punitive damages -- there were punitive, yes?  No.  It was

8   emotional distress.  I see.  So, therefore, whether it was

9   termination for one comment or ten comments, you say doesn't

10  matter.  His emotional state was what it was.

11          MS. McKENZIE:  Yes.

12          THE COURT:  His compensatory and his non-economic

13  compensatory remained the same.  I do understand that, and I

14  appreciate this opportunity to clarify that.  I had punitive in

15  my head for a moment, and I will just take that out of my head.

16          All right.  What will else do you want me to know?

17          MS. McKENZIE:  I think it's worth the Court's

18  consideration of the implications for an appeal if the Court

19  were allowed -- of an appeal and how it would play out if the

20  Court were to allow the jury's decision, non-protected

21  activity, and knowledge to -- the step-one question, those two

22  answers were given yes by the jury.  We know they had to find

23  all four elements in the abstract.  But the evidence is going

24  to be presented to the Court again anew for the reasons that we

25  discussed or UBS' decision, all of this evidence will need to

1  be presented to the jury so they can properly consider the

2  contributing factor element.  And so the evidence may come in

3  differently the second time, and so we would end up with a

4  record from a first trial where, you know, there's evidence

5  that are supports certain instances of protected activity, but

6  perhaps in the second trial that evidence comes in differently

7  or doesn't come in, and that will create some real headaches, I

8  think, for the Second Circuit if this case were to end up there

9  again.

10        THE COURT:  I'm assuming given that we're having this

11  will conversation that no one is interested in a bench trial.

12  Hearing nothing, that's fine.  I'm here for it, but if you

13  don't want to have it, that's fine by me.

14        Again, I'll ask you, Ms. McKenzie, because you have

15  very long institutional knowledge involving this case, this

16  isn't going to settle, is it?

17        MS. McKENZIE:  I'll let Mr. Chung speak on that.

18        THE COURT:  I'm not putting my finger on the scales on

19  that one.  I just want to know because I'm setting up my

20  summer.

21        MR. CHUNG:  We understand, your Honor.  And so with a

22  view toward settlement possibly being mentioned today, I did

23  reach out to Mr. Herbst yesterday just to raise the option

24  where we start a discussion.  UBS is open to discussions, and I

25  understand that Mr. Herbst has to or will discuss it with his

1   client.  So we've just started that discussion, your Honor, is

2   what I'm saying.

3          THE COURT:  Of course.  Can we go off the record for a

4   moment?

5          (Discussion off the record)

6          THE COURT:  Let's go back on the record, please.

7          I do appreciate what you've just said to me.  Let us

8   then start talking about a June trial date because my deputy

9   reminds me of my own schedule.  Memorial Day, I'm told, is I

10  think the 25th of May.  The next Monday is June 1.  I believe I

11  can do June 1.  I can set that down as a trial date.  If you'd

12  rather, the 8th is going to -- depending on the length of the

13  trial, that may complicate some things, so do you want me to

14  put it down for June 1 just to have it on my calendar?

15         MR. HERBST:  I think that's fine.

16         MR. CHUNG:  Yes, your Honor.

17         MR. HERBST:  In terms of -- I just want to advise the

18  Court too.  Our trial team is in formation or, you know,

19  re-formation, so we're not exactly sure who is going to sit at

20  the table in terms of -- but we're going to resolve that as

21  quickly as we can.

22         THE COURT:  I presume you're there, sir.

23         MR. HERBST:  I will be there, as long as the Almighty

24  still permits.

25         THE COURT:  He will.

1          MR. HERBST:  I may need some additional

2    accommodations, your Honor, that I didn't need back then, but

3    we'll see.

4          THE COURT:  Just to complicate your lives a little bit

5    more, my law clerk advises me that I have a criminal law

6    committee conference in Washington later that week.

7          MR. HERBST:  So why don't you make it June 8?

8          THE COURT:  Yes.  That complicates later that month.

9    But let's do that, and I'll figure out my later that month.  I

10   have something on the 25th that I'd like to be around for, but

11   I may not be.  So we shall see.

12         Okay.  I'll hear from Ms. Johnson I did get the name

13   right.  I'll hear from you in a week.  I'll hear from the back

14   table a week after that.  You'll tell me when it's appropriate

15   to tell me about whether I can be useful in settlement

16   discussions, and then let's imagine that we are going to begin

17   on the 8th.  Four weeks prior, I will get whatever additional

18   in limine motions, voir dire questions, and the all-important

19   jury charge.  Three weeks in advance we will have the

20   oppositions thereto.  And two weeks in advance, so that would

21   be -- it would be probably the 27th of May, two weeks in

22   advance would be Memorial Day.  Let's imagine the 27th,

23   May 27th at 11:00 a.m. we'll have the final pretrial

24   conference.

25         MR. HERBST:  At 11:00 a.m.?

 1           THE COURT:  Yes, please.  I have no idea how long it

 2   will take.  If I do it too late in the day, who knows?

 3           Other things, Mr. Herbst, we should be talking about?

 4           MR. HERBST:  No, your Honor, I don't think so, but I

 5   did, you know, I just wanted to ask --

 6           THE COURT:  Please.

 7           MR. HERBST:  -- because I recall back quite awhile ago

 8   that Judge Sand -- you remember Judge Sand.

 9           THE COURT:  I do.

10           MR. HERBST:  He was not averse to conducting a

11   settlement in a case he was going to try.  I just wondered

12   whether -- I haven't talked to Dan about this, but if we ask,

13   is that something you would consider?

14           THE COURT:  Yes.  If you asked, yes.  And I think

15   that's very interesting.  I promise you that I will be very

16   openminded about it.  But I also -- you also know that I have

17   in all 13 years I've been a Judge, I've had Trevor Murray in my

18   life.

19           MR. HERBST:  Judge, you can imagine how we feel, and

20   how Mr. Stulberg feels.

21           THE COURT:  He's had him even before then.

22           MR. HERBST:  Because he's four or five years before

23   me.

24           THE COURT:  Exactly.  So, yes, I understand why you

25   would want me to do your settlement conference and why you

1  wouldn't want me, and you're both right.  But if that is

2  something that you wanted to do, yes, I would make myself

3  available, and I would be ready for it.  I leave that to you

4  all.

5           All right.  Ms. Johnson, while you're here, is there

6  anything that you'd like to tell me so you can at least get on

7  the record in this conference

8           MS. JOHNSON:  Just to clarify for your Honor that

9  would be a week from today's date, next Wednesday?

10          THE COURT:  Yes, please.

11          MS. JOHNSON:  And in a standard letter motion.

12          THE COURT:  Yes, please.

13          MS. JOHNSON:  Thank you, your Honor.

14          THE COURT:  And it would be addressing anything you

15 want.  I think these cases we were discussing today and the

16 waiver issue and anything else that may have come up in your

17 travels.  If you want to talk about that recent *Ziparo*

18 decision, that's fine too.

19          Ms. McKenzie, I thank you for your patience.  Is there

20 anything else you'd like to bring to my attention today?

21          MS. McKENZIE:  No, your Honor.  Our letter will be due

22 Christmas Eve.  Is that right?

23          THE COURT:  I'm sorry.  Is it Christmas Eve?  It is.

24 That's horrible.  Is there a better time for you to do it, I

25 mean, within reason?  I'm sure your friends at the front table

 1   would give you some time so you don't ruin your Christmas

 2   dinner.  If you want more time, if Ms. Johnson also wants more

 3   time, I would listen as well.

 4          MS. McKENZIE:  I wonder if it would be easier to give

 5   her two weeks and us two weeks?

 6          THE COURT:  That's fine.

 7          MS. JOHNSON:  That's fine with us your Honor.

 8          THE COURT:  Tis the season.

 9          MS. McKENZIE:  Thank you, your Honor.

10          THE COURT:  Ms. Johnson, your letter is due to me -- I

11   lost the calendar -- the 17th, please.  I'm sorry, yours is due

12   the 24th, but get it to me before the 24th, no later than the

13   24th.  And then the 7th for your letter.

14          MS. McKENZIE:  Thank you, your Honor.

15          THE COURT:  I'm not expecting a reply.  I mean,

16   something strange could happen, but I'm not expecting a reply.

17   Okay.

18          Ms. McKenzie, thank you for bringing Christmas to our

19   attention.

20          MS. McKENZIE:  We were here at Christmastime last time

21   this went through, your Honor.

22          THE COURT:  I remember fondly.  Thank you.

23          Anything else we should talk about.

24          MR. HERBST:  Thanks very much.

25          THE COURT:  Thank you very much for coming in today

1    and being so prepared.  I'll hear from you soon, and I'll

2    decide as soon as I can.

3              (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25