

Sofia K. Johnson  
Associate  
sjohnson@stulbergwalsh.com

T 212.268.1000  
F 212.947.6010  
C 347.229.7901  
www.stulbergwalsh.com

14 Wall Street, Suite 5G  
New York, New York 10005

December 24, 2025

<u>**VIA ECF and E-MAIL**</u>

The Honorable Katherine Polk Failla  
United States District Judge  
Southern District of New York  
Thurgood Marshall U.S. Courthouse, 40 Foley Square  
New York, New York 10007  
Failla_NYSDChambers@nysd.uscourts.gov

      RE:    *Murray v. UBS Securities, LLC,* No. 14-CV-927 (KPF)

Dear Judge Failla:

      We represent Plaintiff Trevor Murray ("Plaintiff" or "Murray"). We write pursuant to Your Honor's December 10, 2025 direction to submit a supplemental letter in support of Plaintiff's position that the retrial of liability in this action should be limited to the sole question of whether Plaintiff's protected activity was a contributing factor in his termination, and inviting Plaintiff to address any other pertinent issues regarding the retrial.

      For three reasons, Plaintiff submits that the retrial of liability should be limited to the sole question of whether his protected activity was a contributing factor in his termination:

      First, by not challenging the jury's findings that (1) Murray engaged in protected activity, (2) UBS knew of Murray's protected activity, (3) Murray's termination was an unfavorable personnel action, and (4) Defendants UBS Securities, LLC and UBS AG ("Defendants" or "UBS") would not have terminated Murray in the absence of his protected activity, UBS has both waived and forfeited any challenges to those four findings in subsequent proceedings.

      Second, even if those four findings had not been waived and forfeited, retrial of those issues would still not be warranted since they are not "so interwoven with that of [the contributing factor question] that the [latter] cannot be submitted to the jury independently of the [former] without confusion and uncertainty[.]" *Gasoline Prods. Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).

      Third, the Second Circuit's recent decision in *Ziparo v. CSX Transp., Inc.*, ___ F.4th ___, 2025 WL 3275465 (2d Cir. Nov. 25, 2025), (1) confirms that contributing factor and the affirmative defense are separate and distinct issues which should be tried separately, (2) resolves the question of how contributing factor should be presented and defined for the jury in the charge, and (3) effectively mandates that the contributing factor charge include an instruction on temporal proximity.

**Background**

        This case went to trial in 2017.  At the conclusion of the trial, Your Honor instructed the jury that

> in order to prove his claim under Section 1514A of the Sarbanes-Oxley Act, a plaintiff must prove each of the following four elements by a preponderance of the elements: First, that plaintiff engaged in activity protected by Sarbanes-Oxley; Second, that UBS knew that plaintiff engaged in the protected activity; Third, that plaintiff suffered an adverse employment action – here, the termination of his employment at UBS; and Fourth, that plaintiff's protected activity was a contributing factor in the termination of his employment.

Trial Tr. 2349:20-2350:5, ECF No. 274.  Your Honor then listed individually for the jury the factual requirements for each element, based on the evidence offered at trial.  *See id.* 2350:7-2353:6 (protected activity); 2353:7-11 (knowledge of protected activity); 2353:12-14 (adverse employment action); 2353:15-25 (contributing factor).  Your Honor instructed the jury that their "verdict must be for the defendants" if Murray had "failed to satisfy his burden with respect to any one or more of these elements[.]"  *Id.* 2355:9-11.

        Your Honor gave additional instructions for the jury if they found that Murray had "satisfied his burden with respect to all four elements of his claim[.]"  *Id.* 2355:12-13.  Specifically, Your Honor told the jury to "proceed to consider whether defendants have demonstrated, by clear and convincing evidence, that UBS would have terminated plaintiff's employment even if he had not engaged in protected activity."  *Id.* 2355:14-17.  Your Honor listed separate factual requirements for the jury regarding UBS's burden of proof and the evidence that UBS would need to satisfy that burden.  *See id.* 2354:1-2355:3.

        The jury found that Murray had met his burden on all four elements of his *prima facie* claim of retaliation under Sarbanes-Oxley Act ("SOX"), and that UBS had failed to meet its burden of proving its affirmative defense.  *See* jury verdict, ECF No. 250.

        In post-trial motion practice in this Court, UBS unsuccessfully challenged the jury's verdict as to each disputed element of Murray's *prima facie* retaliation claim[1] and as to UBS's affirmative defense.  In its renewed motion for judgment as a matter of law, UBS argued that at trial, Murray had "failed to produce evidence sufficient for a reasonabl[e] jury to conclude that he engaged in protected activity, that UBS had knowledge of his protected activity, or that his protected activity was a contributing factor in UBS's decision to terminate his employment."  Defs.' Renewed Mot. J. Matter of L. at 4, ECF No. 281.  UBS also argued in this same motion that based on the evidence submitted at trial, "no reasonable jury could conclude that UBS failed to establish by clear and convincing evidence that it would have eliminated Plaintiff's position regardless of any protected activity."  *Id.* at 11.  Your Honor rejected UBS's motion, *see* ECF

---

[1] At trial, Your Honor instructed the jury to find the third element of Murray's claim – that he suffered an adverse employment action – satisfied, as "[t]he parties do not dispute that UBS terminated plaintiff's employment in February 2012."  Trial Tr.  2353:12-14.  UBS did not challenge the third element in its post-trial motions, *see* Defs.' Mot. J. Matter of L. at 17, ECF No. 244; Defs.' Renewed Mot. J. Matter of L. at 4, and does not now dispute that Murray suffered an adverse employment action.

No. 343, stating in an oral opinion that "there is evidence to support the jury's finding as to each of the elements of the Section 1514A offense, principally derived from Murray's testimony." 9.25.2018 Conf. Tr. 8:8-11, ECF No. 346. In this oral opinion, Your Honor gave reasons why the evidence supported the jury's finding as to Murray's protected activity (*see id.* 10:16-13:18), UBS's knowledge of Murray's protected activity (*see id.* 13:19-14:12), and the causal connection between Murray's protected activity and his termination (*see id.* 15:7-19:19). Your Honor also outlined the evidence offered at trial in support of UBS's affirmative defense, *see id.* 19:25-20:3; 20:24-21:6, and found that "there was sufficient evidentiary support for [the jury's] verdict[.]" *Id.* 21:13.

On appeal, UBS opted to raise only two grounds, both solely concerning the contributing factor element. UBS limited its arguments to 1) whether that element required proof of retaliatory intent,[2] and whether such evidence existed; and 2) whether the jury instructions regarding the contributing factor element of Murray's *prima facie* claim were erroneous. *See* UBS Br. at 13-16, No. 20-4202, Dkt. No. 49 (2d Cir. Apr. 5, 2021) (hereinafter "UBS Br."). The Second Circuit agreed with UBS that retaliatory intent was a required element of a *prima facie* SOX retaliation claim, and a new trial was required on that basis alone. *See Murray v. UBS Sec., LLC*, 43 F.4th 254, 262-63 (2d Cir. 2022) ("*Murray I*"). Following unanimous reversal by the United States Supreme Court, *see Murray v. UBS Sec., LLC*, 601 U.S. 23 (2024) ("*Murray*"), UBS argued again on remand that the judgment could not stand, but only because Your Honor's contributing factor jury instruction was incorrect. *See* UBS Suppl. Br. at 10-24, No. 20-4202, Dkt. No. 222 (2d Cir. Apr. 4, 2024). The Second Circuit agreed with UBS, holding that the contributing factor instruction "allowed the jury to hold UBS liable without finding that Murray's whistleblowing contributed to his termination[,]" and remanded the case "for further proceedings consistent with this opinion." *Murray v. UBS Sec., LLC*, 128 F.4th 363, 373 (2d Cir. 2025) ("*Murray II*").

At no time in the lengthy appellate process of this case did UBS raise any issues with the jury's findings on the first three elements of Murray's *prima facie* retaliation case or with the jury's findings on UBS's affirmative defense – not as to the jury instructions on the three elements of Murray's *prima facie* case, not on the sufficiency of the evidence for those three elements and that defense, and not as to any other aspect of the trial or the verdict.

**UBS's Waiver and Forfeiture of Its Right to Seek a Full Retrial on Liability**

Because UBS never appealed the jury's findings with respect to Murray's protected activity, UBS's knowledge of it, adverse employment action and UBS's affirmative defense, UBS has both waived and forfeited its right to have those findings reconsidered on remand.

"[A] decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have

---

[2] Specifically, UBS challenged Your Honor's ruling that a requirement on a plaintiff's part to prove retaliatory intent "overstates the contributing factor standard[.]" UBS Br. at 16. UBS relied in part on the Second Circuit's holding in *Tompkins v. Metro-North Commuter R.R. Co.*, 983 F.3d 74 (2d Cir. 2020), that in order to "establish that retaliation was a contributing factor, an FRSA plaintiff must produce evidence of intentional retaliation prompted by the employee engaging in protected activity." 983 F.3d at 82 (citation & quotation marks omitted). *See* UBS Br. at 18-20.

waived the right to challenge that decision[.]" *Cnty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997). A party's failure to raise an issue that was "ripe for review at the time of an initial appeal but was nonetheless foregone" precludes the litigation of that issue not just in subsequent appeals but also on remand to the district court. *T.W. v. New York State Bd. of Law Examiners*, 110 F.4th 71, 80 (2d Cir. 2024) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002)) (noting that such an issue not raised on appeal "is considered waived and the law of the case doctrine bars the district court on remand and an appellate court in a subsequent appeal from reopening such issues unless the mandate can reasonably be understood as permitting it to do so"). Consequently, courts have precluded issues not raised on appeal from subsequent trial proceedings following a remand. *See JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 531 (6th Cir. 2008) (holding that the plaintiff "waived any right to pursue lost profit damages at [the second] trial because it failed to appeal the lost profits award of zero dollars from the [first] trial"); *Art Midwest Inc. v. Atlantic Ltd. P'ship XII*, 742 F.3d 206, 212 (5th Cir. 2014) (holding that the plaintiffs' "decision not to cross-appeal the jury's fraud findings in the first district court proceeding prevented them from raising the same rejected fraud claims in the second district court proceeding").

Courts of appeals in different circuits differ on whether this abandonment of issues constitutes waiver or forfeiture. *See Cook v. Rockwell Intern. Corp.*, 790 F.3d 1088, 1093 (10th Cir. 2015) (Gorsuch, J.) (noting that "[t]his court has long explained that non-jurisdictional arguments a party forfeits on appeal 'may not be asserted . . . on remand'" (quoting *Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 486 n.4 (10th Cir. 1990)); *Howe v. City of Akron*, 801 F.3d 718, 741-743 (6th Cir. 2015) (holding that a party's "failure to challenge [in a prior appeal] . . . the district court's conclusion that the jury verdict was not against the manifest weight of the evidence" led to a forfeiture of the issue); *Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1138 (7th Cir. 2023) (noting that "any issue that could have been but was not raised on appeal is waived and thus not remanded" and is one of "two major limitations to the scope of a remand"); *Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887, 897 (7th Cir. 2023) (holding that "[w]hen a party explicitly waives an issue, that waiver shapes the law of the case and the scope of any remand" and that "an issue or argument that a party has waived permanently, and not solely for purposes of appeal, is simply not part of a remanded case"). This use of different terms for the same concept is "best understood as another example of the familiar confusion that bundles the consequences of a conscious choice to abandon a position (waiver) together with the consequences of an unreflected failure to think about the procedural need to make a choice (forfeiture)." Wright & Miller, 18B Fed. Prac. & Proc. Jurisd. § 4478.6 (3d ed. 2025) ("Although forfeiture would be a more suitable expression, there should be no differences in consequences.").

The majority of cases within the Second Circuit consider these limitations on the scope of remand to a trial court to be a matter of waiver rather than forfeiture. *See T.W.*, 110 F.4th at 80-81 (collecting cases that discuss waiver of an issue not raised on appeal); *United States v. Ben Zvi*, 242 F.3d 89, 96 (2d Cir. 2001). Whether considered as a matter of waiver or forfeiture, UBS's decision to appeal only the jury's verdict on contributing factor forecloses a retrial of all the other issues they unsuccessfully raised at trial but failed to appeal.

As UBS acknowledged at the December 10, 2025 conference, it elected not to challenge on appeal the jury's findings on Murray's protected activity, UBS's knowledge of Murray's protected activity, and UBS's affirmative defense. *See* 12.10.2025 Conf. Tr. 21:24-23:4, ECF No. 428-2. When Your Honor asked why, UBS said that "step two would not have even been reached were it not for the error in step one. So, therefore, by challenging the step one finding, [UBS], therefore, had no need to separately and independently make a challenge to step two." *Id.* 21:17-20. Thus, UBS's statements at the conference suggest that its decision to limit the scope of its appeal was an intentional matter of litigation strategy. Instead of bringing all issues ripe for appeal to the Second Circuit – and risking an adverse finding on those issues – UBS chose to litigate the issues where it believed it would have the highest chances of success. UBS must face the consequences of its litigation strategy to appeal only two of its post-trial challenges As the Second Circuit has explained, "[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards to the law of the case than one who had argued and lost." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981).

Further, UBS's bald assertion in its opening brief to the Second Circuit in *Murray I* that this "case should be remanded for a limited retrial on the limited issue of liability" did not preserve all liability issues for retrial on remand. UBS Br. at 39. *See Cook*, 790 F.3d at 1093 (noting that the defendants forfeited a legal issue "allude[d] to" in their original appeal but "never develop[ed]"). UBS, on appeal, only discussed excluding damages from a retrial and did not address the scope of a retrial on liability. *See* UBS Br. at 39-42. UBS may not now stretch a general request for a retrial into an argument that its appeal covered all liability issues.

Furthermore, the Second Circuit's mandate cannot "reasonably be understood" as permitting a retrial on the liability issues which UBS has waived. *T.W.*, 110 F.4th at 80. In order to determine "whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270 (2d Cir. 2012) (quoting *Ben Zvi*, 242 F.3d at 95). Here, the letter and spirit of *Murray II's* mandate supports limiting a retrial to the contributing factor issue alone. In *Murray II*, the Second Circuit held that only its concern with the contributing factor jury instruction required vacatur. *See Murray II*, 128 F.4th at 372-73 ("Here, at step two, the jury did not find *clear and convincing* evidence that UBS would have terminated Murray regardless of his whistleblowing. But that does not mean that at step one, the jury found by a *preponderance* of the evidence that whistleblowing was a contributing factor in Murray's termination." (emphasis in original)).

The Second Circuit did not express any concern with the jury's findings on Murray's protected activity, on UBS's knowledge of Murray's protected activity, or on UBS's affirmative defense. Indeed, it left these findings undisturbed. UBS did not challenge these findings in either appeal. Your Honor "therefore should not[] entertain[]" the issues that UBS abandoned on appeal. *Parmalat*, 671 F.3d at 271.

**The Elements of Murray's SOX Claim Are Not Inextricably Interwoven**

Even if UBS had not waived and forfeited its challenges to the jury's verdict on its affirmative defense and on the questions of Murray's protected activity and UBS's knowledge thereof, these issues are not "inextricably interwoven" with contributing factor such that a new

5

trial on all issues is warranted.  *Brooks v. Brattleboro Mem'l Hosp.*, 958 F.2d 525, 531 (2d Cir. 1992).

The jury's findings that Murray engaged in protected activity and that UBS knew of Murray's protected activity are "conceptually distinct" from the question of whether Murray's protected activity was a contributing factor in his termination.  *Crockett v. Long Island R.R.*, 65 F.3d 274, 279 (2d Cir. 1995).  Here, the protected activity elements and the contributing factor element involve conduct that is distinct and severable.

As Your Honor instructed the jury, "[a]s is relevant to this case, an employee engages in protected activity when he reports to a person with supervisory authority over him conduct that the employee believes constitutes a violation of an SEC rule or regulation or of certain federal laws relating to fraud."  Trial Tr. 2350:9-14.  UBS, which did not challenge these jury instructions, argued – at trial and in its motion for judgment as a matter of law – that Murray failed to prove that he had made any complaint of unlawful behavior, and that Murray had failed to prove that any of his beliefs regarding purportedly unlawful conduct were reasonable.  *See* Defs.' Mot. J. Matter of L. at 9-16; Trial Tr. 2223:9-2250:6.  The facts and the evidence on the issues of Murray's protected activity concern only Murray's own conduct and the reasonableness of his own beliefs.[3]

The evidence and arguments offered at trial and the jury instructions concerning UBS's knowledge of Murray's protected activity similarly concern Murray's own actions.  Your Honor instructed the jury that Murray "satisfies [the element of knowledge of protected activity] by proving that he made his report to a person at UBS with supervisory authority over him."  Trial Tr. 2353:9-11.  UBS did not challenge this jury instruction and argued that Murray failed to meet this burden because Murray did not prove that he had engaged in protected activity to begin with, and that if he did, "Mr. Murray did not complain in a way that people would know that he was blowing the whistle[.]"  Trial Tr. 2267:14-15; *see* Defs.' Mot. J. Matter of L. at 16-17.  Thus, as with the first element of Murray's SOX retaliation claim, the second element of that claim is centered around Murray's blowing the whistle, or, as UBS contended, his failure to do so.

In contrast, by UBS's own argument, the evidence concerning the contributing factor element of Murray's claim rests not on Murray's conduct, but on that of UBS.  To support its argument that Murray's protected activity was not a contributing factor in his termination, UBS offered evidence of UBS's reduction in force, Murray's superiors' opinions of Murray, and its purported decision-making process through which Murray's position was eliminated.[4]  *See* Defs.' Renewed Mot. J. Matter of L. at 4-7; Trial Tr. 2252:2-2261:17.  When evaluating

---

[3] UBS's suggestion at the December 10, 2025 conference that the jury on retrial "will need to know which of [the two complaints Murray made to his supervisor, in December 2011 and January 2012,] constituted protected activity" is a red herring.  12.10.2025 Conf. Tr. 26:13-15.  A finding that either complaint constituted protected activity would be sufficient.  Accordingly, we suggest the jury be instructed, *inter alia*, that it was already resolved at the first trial that Murray made his complaints to Schumacher, that those complaints constituted protected activity, and that UBS, through Schumacher, had knowledge of the protected activity.

[4] None of that evidence depends on *which* of Murray's complaints constitutes protected activity.

6

Murray's contributing factor burden in the original trial, UBS asked the jury to only consider UBS's own actions and those of its own witnesses, in stark contrast to UBS's arguments regarding the other disputed elements of Murray's step-one burden.[5]  UBS can fully and fairly re-present its same case on the contributing factor element to the jury without disputing the preceding elements.

UBS's argument that "the general nature of the jury verdict form[,]" *see* 12.10.2025 Conf. Tr. 26:16-17, requires new fact-findings on Murray's *prima facie* retaliation claim fails to consider, as Your Honor instructed, that all four elements of a *prima facie* retaliation claim must be satisfied in order for the jury to find that Murray met his burden.  *See* Trial Tr. 2355:9-11.  As UBS argued at the first trial in this action, if the jury does not find that Murray engaged in protected activity, or that he engaged in protected activity but that UBS did not know of this protected activity, "the case is over and there's nothing else to consider." *Id.* 2267:1-16.  In order for the jury to have reached the contributing factor question, the jury must have first found that Murray engaged in protected activity, about which UBS had knowledge.  The only operative facts presented to the jury on those issues were that Murray made his protected complaints to his supervisor Schumacher in December 2011 and January 2012, that they constituted protected activity, and that UBS, through Schumacher, had knowledge of Murray's protected activity.  Thus, the jury must have found them.

Although UBS argues that "the evidence on which [it] will rely" to support their contributing factor arguments "overlaps to a large degree with the evidence it presents to support its" affirmative defense, ECF No. 418 at 3, SOX's burden-shifting framework divides Murray's contributing factor burden and UBS's affirmative defense such that both must be considered separately, and not together.  The Second Circuit's recent decision in *Ziparo* makes this explicitly clear: "an employer's 'legitimate, non-retaliatory reason for the adverse action . . . is, with rare exception, not to be considered at the initial causation stage.'" *Ziparo*, 2025 WL 3275465, at *17 (citation omitted) (ellipsis in original).  Accordingly, it is now the law in this Circuit that the employee's contributing factor burden is not only distinct and separate from, rather than interwoven with, the employer's step two affirmative defense, but should be tried without considering at step one the employer's purported non-retaliatory reason for the termination.

Furthermore, as described *supra*, the Second Circuit held in *Murray II,* that due to the "different causation standards and burdens of proof at SOX steps one and two[,]" the contributing factor jury instruction required a remand even though "UBS failed to escape liability at step two of SOX's burden-shifting framework." *Murray II*, 128 F.4th at 372-73.  UBS's argument that this framework "was designed to answer the single, elusive factual question" of "whether UBS terminated Mr. Murray's employment because of protected whistleblowing activity" does not acknowledge, as the Second Circuit has done in *Murray II* and *Ziparo*, that this ultimate question of retaliation can be answered by examining each of its component parts separately.  12.10.2025 Conf. Tr. 19:15-18.

---

[5] Your Honor's jury instructions regarding the contributing factor requirement did not mention any conduct from Murray, and UBS's objections to those jury instructions did not question any omission of Murray's own acts.  *See* Trial Tr. 2353:15:21.

7

**The Other Teachings of *Ziparo***

In *Ziparo*, the Second Circuit answered several questions regarding "the 'lenient' and 'broad' contributing-factor causation standard articulated in *Murray*" which it had left unanswered in *Murray II*. *Ziparo*, 2025 WL 3275465, at *2. In order to satisfy the "contributing-factor causation standard," the Second Circuit held, a plaintiff's "protected activity must be a factor that, alone or in combination with other factors, contributed to [the employer]'s adverse actions." *Id.* at *1 (noting that, although *Ziparo* filed a claim under the Federal Railroad Safety Act ("FRSA"), "both the FRSA and SOX incorporate the same burden-shifting framework and contributing factor causation standard").

Further, in words seemingly suitable for a jury charge, *Ziparo* provided a definition of the term at *7:

> [a] "contributing factor" is any factor that, alone or in combination with other factors, contributes in any way to the employer's decision to undertake an adverse employment action against the employee. It is not enough for the factor to be the "sort of behavior that would tend to affect a termination decision." Instead, the factor must have "an *actual* effect that *helps bring about a result*."

*Id.* at *7 (internal citations omitted) (emphasis in original). The Second Circuit also held in *Ziparo* that the contributing factor standard "was intended to overrule caselaw requiring a whistleblower to show that his protected conduct was a significant, motivating, substantial, or predominant factor in a personnel action[.]" *Id.* (citations & quotation marks omitted). As the Second Circuit further elaborated, "[t]his plaintiff-friendly causation burden, as the Supreme Court explained, expresses Congress's policy judgment that 'personnel actions against employees should quite simply not be based on protected whistleblowing activities—not even a little bit.'" *Id.* (quoting *Murray*, 601 U.S. at 36-37).

Accordingly, *Ziparo* has considerably eased the burden of devising an appropriate jury instruction on the contributing-factor standard. Now, in order for Murray to meet that burden, he need only demonstrate that his protected activity "ha[d] a share in bringing about [his termination]; [or to] be partly responsible for [his termination]." *Id.* at *11 (quoting *Murray*, 601 U.S. at 37).

*Ziparo* also overruled prior controlling law which "held that the 'plaintiff must . . . show more than a temporal connection between the protected conduct and the adverse employment action . . . to present a genuine factual issue on retaliation.'" *Id.* at *12 (quoting *Tompkins*, 983 F.3d at 82). The Second Circuit concluded in *Ziparo* that, alone, "sufficiently close temporal proximity may satisfy the plaintiff's contributing factor causation burden[.]" *Id.* (noting that "our caselaw teaches that a period of several weeks to several months may establish the required causal relationship" and that "[w]e have previously held that five months is not too long to find the causal relationship" (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010))).

Although Murray did not depend on temporal proximity alone to meet his contributing factor burden at the first trial, *Ziparo* makes clear that, at the retrial, he will be entitled to a jury

8

instruction that says that the temporal proximity in this case between his protected activity and his termination may alone satisfy his contributing factor burden.

      For the reasons set forth above, we respectfully request that the Court limit the scope of the retrial in this action solely to the contributing factor element. We also respectfully request that, in light of *Ziparo*, the Court instruct the jury that temporal proximity alone may satisfy Murray's contributing factor burden.

                                             Very truly yours,

                                             STULBERG & WALSH, LLP

                                             By: ____/s/ Sofia K. Johnson_____
                                                     Sofia K. Johnson
                                                     *Counsel for Trevor Murray*
                                                     Admitted *Pro Hac Vice*

cc: All Counsel via ECF